# KELLEY DRYE & WARREN LLP
A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

NEIL MERKL
DIRECT LINE: (212) 808-7811
EMAIL: nmerkl@kelleydrye.com

February 17, 2012

**VIA ECF**

Magistrate Judge Lois Bloom
United States District Court for the
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life Insurance Trust v. John Hancock Life Insurance Company*, Docket No. 11-cv-01873 (WFK)(LB)

Dear Magistrate Judge Bloom:

This firm represents the Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock"). We are writing pursuant to this Court's direction and pursuant to Local Rule 37.3(c). The Court granted Plaintiff's request for a 30-day stay of discovery due to her counsel's illness on January 25, 2012 (until February 26, 2012). In anticipation of discovery continuing on February 27, 2012, John Hancock requests (i) leave to take more than ten (10) depositions; (ii) leave to serve a non-party subpoena via Federal Express; and (iii) an order to compel the production of documents pursuant to subpoenas served on non-parties Joel Goldberger, Mordechai Rubin and B&M Resort LLC. Since these matters relate to non-party discovery we believe they can be taken up before expiration of the stay.

## Background

This action was brought by Plaintiff, Shirley Wrubel as Trustee (the "Plaintiff") of the Sara Hollander Irrevocable Life Insurance Trust (the "Trust") to recover $10 million in proceeds from two life insurance policies issued by John Hancock in May and June 2008 (the "Policies"). The Insured died in December 2009, within the two-year contestability period. The Plaintiff filed a death claim under the Policies in October 2010. Based on an investigation conducted by its Investigative Services group, John Hancock concluded that the Insured and the Plaintiff materially misrepresented Ms. Hollander's net worth in the applications they submitted to obtain the Policies (the "Applications"). The Insured and Plaintiff represented that the Insured's net worth was $9 million consisting of, among other things, stocks, bonds, real estate investments, and that she had investment income of $290,000.

**KELLEY DRYE & WARREN LLP**

The Magistrate Judge Lois Bloom
February 17, 2012
Page Two

### Discovery to Date

Plaintiff – the sole trustee and owner of both policies – was deposed on January 11. Plaintiff has not produced any documents showing the Insured had any assets at the time of her death or when she applied for the insurance. There is no estate, no will and no plan to marshall assets. Plaintiff testified the Insured was never employed, did not own real property at the time of her death, did not own any stocks, bonds or a 401k plan, and did not have an annual income of $290,000. At the time of her death the Insured had less than $50,000 in bank accounts and mutual funds. She lived in a rental apartment in Brooklyn, likely on social security. Plaintiff testified she planned to establish a "small estate" for the Insured in order to collect on a $25,000 AIG life insurance policy, but no documents substantiating anything have been produced.

What originally appeared to be a fraud case of overstatement and misrepresentation, however, now appears to be a fraud of much larger dimensions involving third party investors who appear to have purchased interests in the Policies. The Applications asked the Insured to identify the source of the funds from which premiums were to be paid and state whether anyone other than the owner had an interest in the Policies or was funding the premiums. The Plaintiff answered that the premiums would be funded by "income and savings" and stated the insurance was for "estate planning". It turns out she had no income or savings that could have supported payments for more than a month. Roughly $500,000 in premiums were paid by checks drawn on an account in the name of the Trust at JPMorgan Chase Bank, N.A. ("JPMCB"), which in response to John Hancock's subpoena has produced the cancelled checks deposited into the account. The cancelled checks came from various individuals and corporations such as Mr. and Mrs. Brach, B&M Resort LLC, Azras Yisorel, Inc. and Protector Security Associates. (A list is enclosed as Exhibit A.) None of these people have any apparent connection to the Plaintiff or the Insured.

The Trust, therefore, was not the family estate planning trust it was represented to be. The documents produced by JPMCB suggest that the Trust fronted for a syndicate of investors – although Plaintiff denies knowing any thing about this. Had John Hancock known this, this would have been an additional reason it would not have issued the Policies.

### John Hancock Will Need Further Deposition Testimony to Fully Understand The Structure of the Trust and the Insured's Net Worth

Since the Trust has not produced any financial records or bank statements, we have pursued other avenues to get to the bottom of what happened. John Hancock has subpoenaed the depositions of the Insured's alleged business partner, Mr. Herman Jacobowitz; the Plaintiff's son-in-law, Mr. Mordechai Rubin, who the Plaintiff identified in her deposition as someone who helped set up the Trust, and the Sara Hollander Family LLC, the sole beneficiary of the Trust (the "LLC"); Mr. Joel Goldberger, the agent who wrote the Policies; Empire Insurance Brokerage, the agency that sold the Policies; and three parties who submitted checks to the Trust, B&M Resort LLC, Azras Yisorel, Inc. and Protector Services Associates ("Protector Services"). These depositions are currently stayed, but will be taken when the stay is lifted.

**KELLEY DRYE & WARREN** LLP

The Magistrate Judge Lois Bloom
February 17, 2012
Page Three

       In addition, John Hancock seeks leave to take the following additional depositions: (i) Plaintiff's three sisters, whom the Plaintiff identified as having information concerning the Insured's net worth and who also may have knowledge of the third party financing arrangement; and (ii) the entities described in Exhibit A. Accordingly, John Hancock respectfully requests that the Court allow it to take more than the 10 depositions allowed under the Federal Rules of Civil Procedure. A complete list of depositions requested and presently scheduled are included as Exhibit B. My colleague, Sean Flanagan, sent a draft of this letter to Plaintiff's counsel and attempted to contact him to discuss these issues several times over the last two days. Notwithstanding our understanding that Plaintiff's counsel was in the office and back to work, he never contacted us.

**John Hancock Respectfully Requests the Court to Issue an Order Compelling The Production of Documents from Certain Non-Parties and to Serve a Non-Party Subpoena Via Federal Express**

       Prior to the Stay, John Hancock served subpoenas duces tecum on non-parties seeking the production of documents, including Mordechai Rubin, Joel Goldberger, and B&M Resort LLC. None of the three has produced any documents. We have attempted to discuss this matter with the non-parties, pursuant to local rule 37.1, but our efforts have not been successful. We have spoken to Mr. Goldberger twice and he has said he is obtaining counsel but we have not heard from an attorney. Plaintiff's counsel said they might represent Mr. Rubin but has never confirmed it. We have sent Mr. Rubin a letter asking for him or his attorney to contact us, but he has not responded. Finally, we have spoken to B&M Resort and they have refused to produce documents. In fact, they also refused to accept delivery of the witness fee we mailed to them related to the subpoena that was served, via the Secretary of State. Accordingly, John Hancock requests the Court compel these individuals to produce documents that are responsive to the subpoenas issued and a ruling they have waived any objections. (Copies of the subpoenas are enclosed as Exhibit C.)

       Finally, John Hancock has attempted several times to serve non-party Protective Services and Azras Yisorel, Inc., (two of the third party investors) with a subpoena for a deposition and records. These attempts have included sending a process server several times to the business to personally serve the owner. These attempted services occurred in the morning, afternoon and at night. Any attempt to personally serve these parties, however, has been unsuccessful. Either the process server is told that the owner of the company is not there, or no one answers the door when the process server approaches the businesses. It appears, from the actions of these companies, that they are trying to avoid service. Accordingly, John Hancock respectfully requests that it be allowed to effect service through Federal Express.

                                                   Respectfully submitted,

                                                   */s/ Neil Merkl*

                                                   Neil Merkl

cc:    Ira S. Lipsius, Esq. (via ECF)
        David BenHaim, Esq. (via ECF)

**KELLEY DRYE & WARREN** LLP

The Magistrate Judge Lois Bloom
February 17, 2012
Page Four

      Mr. Joel Goldberger (via Federal Express w/encl.)
      Mr. Mordechai Rubin (via Federal Express w/ encl.)
      B&M Resort LLC (via Federal Express w/ encl.)