**KELLEY DRYE & WARREN LLP**
A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

NEIL MERKL
DIRECT LINE: (212) 808-7811
EMAIL: nmerkl@kelleydrye.com

March 21, 2012

**VIA ECF**

The Honorable Judge William F. Kuntz, II
United States District Court for the
 Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life Insurance Trust v. John Hancock Life Insurance Company*, Docket No. 11-cv-01873 (WFK)(LB)

Dear Judge Kuntz:

This firm represents defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock"). We write pursuant to Section III.B of Your Honor's Individual Motion Practices to request a conference to address John Hancock's request for leave to amend Defendant's Amended Answer (ECF No. 17) under Rule 15 of the Federal Rules of Civil Procedure (the "Second Amendment"). Plaintiff has declined to consent to the amendment.

The deadline to amend pleadings in Magistrate Judge Bloom's scheduling order was October 17, 2011. Discovery ends on June 1. John Hancock respectfully requests permission to file a Second Amended Answer to supplement the grounds for its existing counterclaims and defenses based on newly discovered facts that John Hancock has obtained in discovery since January. A clean copy of the proposed Second Amendment and a blackline version are included as Exhibits A and B.

**Background**

Plaintiff, Shirley Wrubel as Trustee (the "Plaintiff") of the Sara Hollander Irrevocable Life Insurance Trust (the "Trust") has sued John Hancock to recover $10 million in proceeds from two $5 million John Hancock life insurance policies (the "Policies") issued on the life of her mother, Sara Hollander. Ms. Hollander died in December 2009, less than 2 years after the Policies were issued. The Plaintiff filed a death claim under the Policies in October 2010. John Hancock investigated the claim, and concluded that Ms. Hollander and the Plaintiff materially misrepresented the Insured's annual income and net worth in the Policy applications when they represented that the Insured's net worth was $9 million. The original Answer alleged defenses principally based on this misrepresentation.

**KELLEY DRYE & WARREN** LLP

The Honorable Judge William F. Kuntz, II  March 21, 2012
Page Two

### Good Cause Exists to Allow John Hancock to Amend its Answer

The newly discovered evidence is that Plaintiff and Ms. Hollander made other false statements in the applications in addition to those originally alleged. The Plaintiff represented that the premiums would be funded by "income and savings" and the insurance was for "estate planning". The applications asked Ms. Hollander to identify whether anyone else had an interest in the Policies and if the "Owner, now or in the future, [would be] paying premiums funded by an individual and/or entity other than the proposed Life Insured…" The Insured and Plaintiff answered "No." Had they answered "Yes", they would have been required to then identify how the premiums would be financed.

Plaintiff has not produced any documents showing Ms. Hollander ever had any assets or produced any financial records from the Trust showing how the Policies were paid for. Plaintiff also has failed to timely respond to John Hancock's First Set of Requests to Admit, dated January 9, 2012. Accordingly, Plaintiff is deemed to admit that the Insured did not have assets totaling $9 million when she applied for the Policies. Plaintiff testified on January 11 that there is no estate for Ms. Hollander, no will, and no plan to marshall her mother's assets. Ms. Hollander was never employed, did not own real property at the time of her death, did not own any stocks, bonds or a 401k plan, and did not have an annual income of $200,000. At the time of her death the Insured had less than $25,000 in bank accounts and mutual funds. She lived in a rental apartment in Brooklyn, likely on social security. Plaintiff testified she planned to establish a "small estate" for her mother in order to collect on a $25,000 AIG life insurance policy, but no documents substantiating this have been produced. Ms. Hollander's husband (Plaintiff's father) recently died, and Plaintiff made a small estate filing in Kings County confirming he left less than $25,000.

Plaintiff denied any knowledge of her mother's business affairs or how the insurance was paid for, but testified her mother did some business with a man named Herman Jacobowitz – but she couldn't say what – and that her son-in-law, Mordechai Rubin, who "helped" with the insurance, might know more about how the Policies were paid for.

The planned premiums for each Policy were approximately $250,000 annually. Roughly $500,000 in premium payments were paid by checks drawn on an account in the name of the Trust at JPMorgan Chase Bank, N.A. ("JPMC"). Plaintiff produced no records of this account. John Hancock subpoenaed the Trust's bank records from JPMC. JPMC produced cancelled checks in January (after the Plaintiff's deposition) from deposits made by the Plaintiff. The cancelled checks came from various individuals and corporations such as Granite Equity, B&M Resort LLC, and Protector Security Associates. None of these people have any apparent connection to the Plaintiff or the Insured. After the production from JPMC, Plaintiff's counsel obtained a 30-day stay of discovery. Once the stay was lifted, on February 26, 2012, John Hancock subpoenaed Jacobowitz, Rubin, Joel Goldberger (the broker who sold the Policies) and various third party investors identified by the JPMC checks. On March 9, 2012, Mr. Goldberger testified that he assisted the Plaintiff's son-in-law, Mordechai Rubin, with the arranging and

**KELLEY DRYE & WARREN LLP**

The Honorable Judge William F. Kuntz, II  March 21, 2012
Page Three

finding investors to fund the premiums for the second policy, but disclaimed knowledge of the terms. Mr. Jacobowitz, who had been represented by Plaintiff's counsel, and Mr. Rubin failed to produce documents and failed to appear for scheduled depositions. John Hancock's motion to compel was granted by Judge Kaplan on March 20 the Southern District of New York. Granite Equity and other investors have appeared, retained counsel and are expected to testify in March. On March 19, 2012, John Hancock received a document production from Capital One Bank ("Capital One"). The Capital One production showed the $235,000 premium payment the Trust paid to John Hancock for the first year premium for the 073 Policy was paid by Classon NY Inc., a real estate company controlled by Mr. Jacobowitz.

This newly obtained evidence suggests that the Trust was not the family estate planning trust it was represented to be, and that the policies were purchased as wagering contracts for a syndicate of investors that did not have a lawful insurable interest in the life of Ms. Hollander. Had John Hancock known this, it would not have issued the Policies. Such an arrangement also is void as a matter of public policy under the laws of New Jersey, which governs the Policy. Thus, what originally appeared to be a case of overstatement of the insured's wealth, now appears to be a fraud of much larger dimensions. The new counterclaims proposed by John Hancock incorporate these new facts by pleading the additional specific misrepresentations, the involvement of third party investors and supplementing the existing claims and defenses. Accordingly, John Hancock respectfully requests that it be allowed to amend its Answer, Affirmative Defenses and Counterclaims. Plaintiff will not be prejudiced because: (i) the relief sought by the Answer is not fundamentally changed; (ii) the new facts are directly related to the existing pleading; (iii) discovery is ongoing and plaintiff has not taken any depositions that will have to be retaken; and (iv) the information discovered is largely information that should have been available to the Plaintiff Trustee in the first place.

A pleading may be amended upon a showing of good cause after the time in the original scheduling order be passed. See, Solomon v. Southampton U.F.S.D., No. CV 08-4822 (SFJ)(ARL), 2010 WL 3780696, at *1 (E.D.N.Y. June 24, 2010) (citing, Grochowski v. Phoenix Contr., 318 F.3d 80, 86 (2d Cir. 2003)). Here, as discussed above, good cause exists to grant John Hancock's request to amend its Answer, Affirmative Defenses and Cross-Claims.

Thank you for your consideration of this request.

Respectfully submitted,

/s/ Neil Merkl

Neil Merkl

cc: Magistrate Judge Lois Bloom (via ECF)
David BenHaim, Esq. (via ECF)

NY01/FLANS/1531546.2