

LIPSIUS –BENHAIM
LAW, LLP

80-02 Kew Gardens Road
Kew Gardens, NY 11415
212.981.8440
Facsimile 888.442.0284
www.lipsiuslaw.com

DAVID BENHAIM
Direct Line: 212-981-8446
Email: dbenhaim@lipsiuslaw.com

March 26, 2012

**VIA ECF**

Judge William F. Kuntz, II
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    **Shirley Wrubel v. John Hancock Life Ins. Co.**
            **Docket No. 11-cv-01873 (WFK) (LB)**
            **Our File No. 4206.0002**

Dear Honorable Judge Kuntz:

We represent the plaintiff in the above referenced matter. We write in response to the letter by John Hancock Life Insurance Company ("John Hancock") requesting a conference to address its request to amend the second amended answer and counter-claim. We respectfully request that for the reasons set forth below, the Court entertain a fully briefed motion before deciding whether to allow the third amendment to the answer.

John Hancock makes this application by a presentation of half-truths. The evidence produced is discovery thus far portrays a picture of a Sara Hollander who was secretive in her business affairs but relentless in her pursuit of the "good life[1]." She invested thousands of dollars in cash that, by all accounts, she did not earn or accumulate in any traditional or recorded method, in an investment scheme that yielded no results. She also was involved in a real estate

---

[1] John Hancock's Requests to Admit were served on January 9, 2012. On January 12, 2012 I became injured for which I was hospitalized and was bedridden until January 30, 2012. I did not return to work for a few weeks after that. The Requests were lost in the confusion and were responded to as soon as the error was discovered.

LIPSIUS-BENHAIM LAW, LLP

venture with a Herman Jacobowitz, and through his business, Classon NY, Inc., she paid the premiums on the first policy.

The secretive nature of the inured makes it difficult for even her daughter, the plaintiff, to accurately identify all of Sara Hollander's sources of income[2]. The plaintiff did testify that she knew her mother to be a wealthy woman. Fortunately, others, such as Herman Jacobowitz[3] will be able to disprove John Hancock's allegations. Mr. Jacobowitz was identified as early as the Rule 26 disclosure.

While John Hancock does identify in its third amended answer, 17 legal persons that have contributed to the payment of premiums, the fully briefed motion will shed light on what we already know about these accounts: at least 10 of these accounts were "free loan societies" (in Yiddish, "Gemachs") the type of which the plaintiff identified in her responses to interrogatories as accounts where Sara Hollander contributed her funds. In other words, it is very likely that these accounts held Sara Hollander's own funds and thus, together with the money she was owed through Jacobowitz's Classon NY, Inc., the insured paid for the entirety of the first policy.

With respect to the second policy, Joel Goldberger, the John Hancock insurance broker, testified that after two months of paying premiums on the second policy, Sara Hollander enlisted the assistance of others in paying the premiums. The remaining accounts have been identified with those enlisted to pay premiums two months after the policy was paid for the insured. Thus, there is no good-faith basis to allege that the insured made any misrepresentations concerning the source of the payment of premiums.

---

[2] It appears that the person with whom Sara Hollander confided her business affairs was her granddaughter's husband, Mordechai Rubin, who has not cooperated with plaintiff.
[3] At first, Mr. Jacobowitz was cooperating with plaintiff's counsel. For reasons that are not entirely clear, he is not cooperating any longer.

LIPSIUS-BENHAIM LAW, LLP

A fully briefed motion will also show that even if the insured transferred the policy to investors, the very moment that the policies were placed, it is clear that the insurable interest requirement is still met. See, generally, *Kramer v Phoenix Life Ins. Co.*, 15 N.Y.3d 539 (2010). It is also clear that under New York choice of law principles, since the parties understood that the insured risk was in New York, there is no basis to apply any aspect of New Jersey law, including the New Jersey Fraud Prevention Act, to these transactions. See, e.g., *Johnson v. Metro. Life Ins. Co.*, 24 Misc. 3d 956 (N.Y. Sup. Ct. 2009) ("The court finds that, as with a liability policy, the insured risk in a life insurance policy can be found in the state bearing the greatest relationship with the insured, i.e., the insured's state of residence")

Finally, even if John Hancock's application of the New Jersey Fraud Prevention Act has some basis in law, John Hancock will not be able to show why it waited until now to add such a cause of action as the facts that John Hancock alleges allow it to make such a claim have been known to it from the time this lawsuit was commenced; i.e., that the insured made misrepresentations in the application.

Thus, we respectfully request the opportunity to address the issues raised by the request to amend the answer and counter-claim via a fully briefed motion.

Respectfully yours,

LIPSIUS-BENHAIM LAW, LLP

David BenHaim