# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE
TRUST

              Plaintiff,

    v.

JOHN HANCOCK LIFE INSURANCE
COMPANY

              Defendant.

Misc. Case Number: M8-85

**NOTICE OF MOTION TO COMPEL NON-
PARTIES TO COMPLY WITH SUBPOENAS
DUCES TECUM**

# 12 MISC 00077

PLEASE TAKE NOTICE that, upon the accompanying Declaration of Sean R. Flanagan, and the exhibits annexed thereto, the defendant John Hancock Life Insurance Company (U.S.A.), incorrectly identified in the Complaint as John Hancock Life Insurance Company ("John Hancock"), will move before the Honorable Lewis Kaplan of Part 1 of this Court, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, on Tuesday March 20, 2012 at 10:00 a.m., for an order pursuant to Fed. R. Civ. P. 37(a), 45(c)(2)(B) and 45(e) compelling Mr. Herman Jacobowitz, Mr. Mordechai Rubin and B&M Resort LLC to comply with the *subpoenas duces tecum* served upon them on January 6, 2012, January 13, 2012 and January 24, 2012, respectively, commanding production of certain documents necessary for discovery in the above-referenced action and to appear for depositions. John Hancock also requests such other and further relief as the Court deems just and proper.

RECEIVED
MAR 2 8 2012
U.S.D.C. S.D. N.Y.
CASHIERS

Dated: New York, New York
      March 8, 2012

KELLEY DRYE & WARREN LLP

By: _____
      Neil Merkl
      Sean R. Flanagan
101 Park Avenue
New York, New York 10178
(212) 808-7800
(212) 808-7897

*Attorneys for Defendant John Hancock Life
Insurance Company (U.S.A.)*

To:

David Benhaim, Esq.
Lipsius-Benhaim Law LLP
80-02 Kew Gardens Road, Suite
Kew Gardens, New York 11415
*Attorneys for Plaintiff*

Mr. Mordechai Rubin
12 Joshua Court
Monsey, New York 10952

B&M Resort LLC
543 Bendford Avenue, Suite 195
Brooklyn, New York 11211

Mr. Herman Jacobowitz
140 South 8th Street
Brooklyn, New York 11211

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE
TRUST

        Plaintiff,

    v.

JOHN HANCOCK LIFE INSURANCE
COMPANY

        Defendant.

Misc. Case Number: M8-85

12 - misc - 00077

### DECLARATION OF SEAN R. FLANAGAN IN SUPPORT OF JOHN HANCOCK'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITIONS OF NON-PARTIES

I, Sean R. Flanagan, hereby declare:

1.    I am an associate of the law firm Kelley Drye & Warren LLP, the attorneys for defendant John Hancock Life Insurance Company (U.S.A.), incorrectly identified in the Complaint as John Hancock Life Insurance Company ("Defendant" or "John Hancock"), in the above-captioned action. This affidavit is submitted in support of Defendant's motion under Fed. Rule Civ. P. 37(a), 45 (c)(2)(B) and 45 (e) to compel non-parties Mr. Herman Jacobowitz, Mr. Mordechai Rubin and B&M Resort LLC (collectively, the "Non-Parties") to comply with the *subpoenas duces tecums* served on them on January 6, 2012, January 13, 2012 and January 24, 2012, respectively (the "Subpoenas"). I am fully familiar with the facts stated in this affidavit.

## Factual Background

### A.   Plaintiff Files Action Against John Hancock

2.   Plaintiff, Shirley Wrubel ("Plaintiff") as trustee of the Sara Hollander Irrevocable Life Insurance Trust (the "Trust"), brought this action in New York State Court against John Hancock to collect the proceeds of two $5 million life insurance policies, UL 93 745 073 and UL 94 051 075 (collectively, the "Policies"), issued in April and May 2008 and insuring the life of Plaintiff's mother, Sara Hollander (the "Insured"). John Hancock removed the action to the United States District Court for the Eastern District of New York, where this case is currently pending before United States District Court Judge William F. Kuntz.

3.   In the applications for the Policies (the "Applications"), the Insured and Plaintiff represented to John Hancock that the Insured had a net worth of $9 million and that she had investment income of $200,000. In addition, the Plaintiff and the Insured represented that the premiums for the Policies would be paid from the Insured's income and savings. In reliance on these representations, among others, John Hancock issued the Policies.

4.   The Insured died in December 2009, within the two year contestability period proscribed in the Policies. Plaintiff submitted a death claim on the Policies on October 26, 2010. John Hancock, based on an initial investigation, denied the claims on the grounds that the Insured materially misrepresented her net worth and income.

5.   Plaintiff was deposed on January 11, 2012. Attached hereto as Exhibit A is a true and correct copy of excerpts from Plaintiff's deposition. In her deposition, she testified that her mother was never employed, did not own real property at the time of her death, did not own any stocks, bonds or a 401k plan, and did not have an annual investment income of $200,000 or a net worth $9 million. (See, Ex. A at 41-53.) When the Insured died, Plaintiff

2

testified that her mother left no estate and did not leave a will.  (See, Ex. A at 56-57.)  At the time of her death the Insured had less than $25,000 in bank accounts and mutual funds.  (See, Ex. A at 58.)  Plaintiff stated that her mother lived in a rental apartment in Brooklyn, and was likely on social security.  (See, Ex. A at 64-65.)  Plaintiff, to date, has failed to produce any documents substantiating her mother's wealth or income and has not produced any documents concerning the Trust's bank account with JPMorgan Chase Bank ("JPMC") opened by the Plaintiff and used to pay premiums.

6.     In addition, evidence produced by JPMC in response to a subpoena issued by John Hancock, shows that the premiums paid under the Policies were paid by non-parties who were likely investors in the Policies.  If true, this would be contrary to the Plaintiff's and Insured's representations that the premiums were to be paid from the Insured's income and savings.  Had these facts been disclosed to John Hancock at the time the Applications were submitted, John Hancock would not have issued the Policies.

**B.     John Hancock Issues Subpoena to Mr. Rubin**

7.     During her deposition, Plaintiff disclaimed any knowledge of the source of the funds used by the Trust to pay for the premiums owed under the Policies.  (See, Ex. A at 99 - 100.)  The premiums for the Policies totaled over $500,000.  Plaintiff stated that the best person to ask about the source of these funds would be her son-in-law, Mr. Rubin.  (See, Ex. A at 114 - 121.)  She also stated that Mr. Rubin was the person who assisted the Insured with the applications for the Policies.  (See, Ex. A at 114 - 121.)

8.     On January 13, 2012, John Hancock issued a *subpoena duces tecum* to Mr. Rubin (the "Rubin Subpoena") by serving him personally at his residence located in Monsey,

3

New York. Attached hereto as Exhibit B is a true and correct copy of the Rubin Subpoena and accompanying affidavit of service indicating receipt of the subpoena.

9.      The Rubin Subpoena requested the production of documents concerning, among other things, the source of the funds used to pay the premiums paid under the Policies, the Insured's net worth at the time of the Applications, and any documents concerning the Applications themselves.  (See, Ex. B.)  Mr. Rubin was to produce documents by January 27, 2012.  Furthermore, Mr. Rubin, pursuant to the subpoena, was required to appear for a deposition on January 31, 2012.  (See, Ex. B.)

10.     Subsequent to the issuance of the Rubin Subpoena, on January 26, 2012, the Court granted Plaintiff's counsel request for a stay in the discovery of the action for 30-days (the "Stay").  Accordingly, Discovery in this action was stayed until late February 2012.

11.     On January 27, 2012, I sent a letter to Mr. Rubin, adjourning his deposition to February 28, 2012.  Attached hereto as Exhibit C is a true and correct copy of the letter sent to Mr. Rubin, dated January 27, 2012.  In addition, Mr. Rubin, as a non-party, was still required to produce documents notwithstanding the Stay.  Mr. Rubin failed to object to the document requests and failed to produce any documents.

12.     On February 13, 2012, John Hancock issued an amended subpoena to Mr. Rubin (the "Amended Rubin Subpoena"), requiring a production of documents on February 23, 2012 and requiring him to appear for a deposition on February 28, 2012.  Attached hereto as Exhibit D is a true and correct copy of the Amended Rubin Subpoena and accompanying affidavit of service indicating receipt of the subpoena.

13.     Mr. Rubin failed to serve any objection to either the Rubin Subpoena or the Amended Rubin Subpoena and has failed to produce any documents.  On February 22, 2012,

4

I sent Mr. Rubin a letter reminding him that his deposition was going forward on Febraury 28, 2012. Attached hereto as Exhibit E is a letter to Mr. Rubin, dated February 22, 2012. Mr. Rubin did not respond to the letter and failed to appear for his deposition on February 28, 2012, causing John Hancock to incur an estimated $400 in fees for a court reporter's and videographer's time.[1]

**C.    John Hancock Issues Subpoena to B&M Resort**

14.    On November 29, 2011, John Hancock subpoenaed the Trust's bank account records from JPMC (the "JPMC Subpoena"). Attached hereto as Exhibit F is a true and correct copy of the JPMC Subpoena. In response to the JPMC Subpoena, JPMC produced copies of cancelled checks deposited into the Trust's account from various individuals and corporations including, among others, B&M Resort. None of these individuals or corporations have any apparent connection to the Plaintiff or the Insured, but it appears that these funds were the sole source of the premium payments. Thus, these cancelled checks suggest that the Trust fronted for a syndicate of investors contrary to the representations in the Applications that the Policies would be owned by the Trust.

15.    Accordingly, on January 24, 2012, John Hancock issued a subpoena to B&M Resort (the "B&M Resort Subpoena"), seeking, among other things, the production of documents concerning the check submitted by B&M Resort to the Trust by February 9, 2012 and to appear for a deposition on February 14, 2012. Attached hereto as Exhibit G is a true and correct copy of the B&M Subpoena and accompanying affidavit of service indicating receipt of the subpoena.

---

[1]    The costs incurred for the depositions of Mr. Rubin and B&M Resort is estimated because the recording service, David Feldman Worldwide Inc., is unable to provide invoices to these depositions because their billing department has not yet processed these accounts.

16.     On February 10, 2012, I spoke to a representative from B&M Resort and informed him that because of a stay in discovery, B&M Resort's deposition would be adjourned to March 2, 2012.  During this discussion, B&M Resort's representative agreed that March 2, 2012 was okay for him, and he admitted that the cancelled check produced by JPMC was B&M Resort's check.  The representative was not sure, however, why the check would have been sent to the Trust, but he speculated that it might have been part of a "syndicate."  I sent B&M Resort a letter to confirm the adjournment of its deposition.  Attached hereto as Exhibit H is a true and correct copy of a letter to B&M Resort LLC, dated February 10, 2012.

17.     B&M Resort never produced any documents pursuant to the subpoena.  In addition, B&M Resort failed to appear for a deposition on March 2, 2012, causing John Hancock to incur an estimated $200 in fees for a court reporter's time.

**D.     John Hancock Issues Subpoenas to Mr. Jacobowitz**

18.     Plaintiff, in her initial disclosures and in her deposition, stated that the Insured had a business partner, Mr. Jacobowitz.  According to Plaintiff, Mr. Jacobowitz would be better able to discuss the Insured's real estate investments and would be the person who could explain what investments the Insured owned at the time the Applications were submitted.  (See, Ex. A at 82 - 83.)

19.     On January 6, 2012, John Hancock issued a *subpoena duces tecum* to Mr. Jacobowitz (the "Jacobowitz Subpoena") by serving his counsel, Mr. David Benhaim, Esq.  Attached hereto as Exhibit I is a true and correct copy of the Jacobowitz Subpoena.  Mr. Benhaim, who is also Plaintiff's counsel, notified me that he was authorized to accept service on behalf of Mr. Jacobowitz.  Attached hereto as Exhibit J is a true and correct copy of an email from Mr. Benhaim stating that he was authorized to accept the Jacobowitz Subpoena.  According

6

to Mr. Benhaim, he was going to start gathering documents in anticipation of them being responsive to John Hancock's subpoena. (See, Ex. J.)

20.     The Jacobowitz Subpoena requested the production documents concerning, among other things, any real estate investments the Insured had and any documents concerning the Insured's net worth and the payment of premiums. (See, Ex. I.) Mr. Jacobowitz was required to produce documents by January 23, 2012. (See, Ex. I.) In addition, the Jacobowitz Subpoena required Mr. Jacobowitz to appear for a deposition on January 26, 2012. (See, Ex. I.)

21.     On February 10, 2012, I sent a letter to Mr. Benhaim concerning Mr. Jacobowitz's responses under the Jacobowitz Subpoena. Attached hereto as Exhibit K is a true and correct copy of a letter to Mr. Benhaim, dated February 10, 2012. In the February 10, 2012, letter, I advised Mr. Benhaim, that due to the Stay in the action, Mr. Jacobowitz's deposition was adjourned to March 1, 2012. In addition, I requested that Mr. Jacobowitz produce documents responsive to the Jacobowitz Subpoena on February 27, 2012.

22.     On February 23, 2012, I spoke to Mr. Benhaim concerning Mr. Jacobowitz's deposition and was informed that Mr. Jacobowitz would not attend his deposition on March 1. I requested Mr. Benhaim to give me alternative dates for Mr. Jacobowitz's deposition and when he will be producing documents. After several attempts to obtain dates from Mr. Benhaim, during the week of February 27, 2012, John Hancock wrote to United States Magistrate Judge Lois Bloom, requesting the Court's assistance with obtaining dates from Mr. Jacobowitz. Attached hereto as Exhibit L is a true and correct copy of a letter to Magistrate Lois Bloom, dated March 2, 2012.

7

23.    Mr. Benhaim responded to John Hancock's letter by stating that he was unable to contact Mr. Jacobowitz and would get us alternative dates when he speaks to his client. Attached hereto as Exhibit M is a true and correct copy of a letter from Mr. Benhaim to Magistrate Bloom, dated March 5, 2012.

24.    Two days later, on March 7, 2012, Mr. Benhaim informed me that he has been unable to contact Mr. Jacobowitz and has, therefore, withdrawn as Mr. Jacobowitz's counsel. Attached hereto as Exhibit N is a true and correct copy of an email from Mr. Benhaim, dated March 7, 2011.

25.    On March 7, 2012, Judge Bloom issued an order denying John Hancock's request to compel the Non-Parties production of documents and appearance for depositions because the Subpoenas were issued out of the Southern District of New York.  Attached hereto as Exhibit O is a true and correct copy of Magistrate Bloom's Order.

26.    To date, Mr. Jacobowitz has failed to object or produce any documents responsive to the documents requested in the Jacobowitz Subpoena.  Furthermore, Mr. Jacobowitz has failed to provide dates for alternative dates in which he would appear for a deposition.

E.    **John Hancock is Unable to Contact the Non-Parties**

27.    I have attempted several times to contact Mr. Rubin and B&M Resort, but they have been unresponsive to any letters sent to them.  Furthermore, it appears that Mr. Jacobowitz is unresponsive to requests, even from his own counsel, concerning the Jacobowitz Subpoena.

28.    Accordingly, John Hancock respectfully requests that this Court issue an Order compelling Mr. Jacobowitz, Mr. Rubin and B&M Resort to produce documents and

appear for a deposition within the next 10 days from the date of this Court's Order, that they comply with the Defendant's Subpoenas, granting Defendant's request for costs of the Rubin and B&M Resort depositions and granting Defendants such other, further, and different relief as this Court deems necessary and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed:  March 8, 2012

_____
Sean R. Flanagan

9

# EXHIBIT A

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------

SHIRLEY WRUBEL, AS TRUSTEE
OF THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE
TRUST,

        Plaintiff,

    vs.             No. 11-cv-01873
                      (DLI)(LB)

JOHN HANCOCK LIFE INSURANCE
COMPANY,

        Defendant.

------------------------------

      VIDEOTAPED DEPOSITION OF SHIRLEY WRUBEL,

taken by Defendant, pursuant to Notice, at the

offices of Lipsius-Benhaim Law, LLP, 80-02 Kew

Gardens Road, Kew Gardens, New York, on Wednesday,

January 11, 2012, commencing at 10:35 a.m., before

Chandra D. Brown, a Registered Professional Reporter

and Notary Public within and for the State of New

York.

Job No: 23537

**Page 2**

1
2  APPEARANCE OF COUNSEL:
3  FOR PLAINTIFF:
4    LIPSIUS-BENHAIM LAW, LLP
5    14 Penn Plaza, Suite 500
6    New York, New York 10122
7    212-981-8440
8    BY:  DAVID BENHAIM, ESQ.
9      dbenhaim@sfl-legal.com
10
11  FOR DEFENDANT:
12    KELLEY DRYE & WARREN, LLP
13    101 Park Avenue
14    New York, New York 10178
15    212-808-7811
16    BY:  NEIL MERKL, ESQ.
17      nmerkl@kelleydrye.com
18      SEAN R. FLANAGAN, ESQ.
19      sflanagan@kelleydrye.com
20
21
22  ALSO PRESENT:
23    Manuel Abreu, Videographer
24
25

**Page 3**

1
2      F E D E R A L   S T I P U L A T I O N S
3
4      IT IS HEREBY STIPULATED AND AGREED by
5  and between the counsel for the respective parties
6  hereto, that the filing, sealing, and certification
7  of the within deposition shall be and the same are
8  hereby waived;
9
10
11
12      IT IS FURTHER STIPULATED AND AGREED that
13  all objections, except as to the form of the
14  question, shall be reserved to the times of the
15  trial.
16
17
18
19      IT IS FURTHER STIPULATED AND AGREED that
20  the within deposition may be signed before any
21  Notary Public with the same force and effect as if
22  signed and sworn to before this court.
23
24
25

**Page 4**

1                S. Wrubel - 1/11/12
2      THE VIDEOGRAPHER:  This is DVD Number 1 of
3  the video deposition of Shirley Wrubel, in the
4  matter Shirley Wrubel, as Trustee of the Sara
5  Hollander Irrevocable Life Insurance Trust
6  versus John Hancock Life Insurance Company.
7      This deposition is being held at 80-02 Kew
8  Gardens Road, Kew Gardens, New York, on
9  January 11, 2012 at approximately 10:35 a.m.
10      My name is Manuel Abreu, from the firm of
11  David Feldman Worldwide, and I'm the legal
12  video specialist.  The Court Reporter is
13  Chandra Brown, in association with David
14  Feldman Worldwide.
15      Will counsel please introduce themselves?
16      MR. BENHAIM:  David Benhaim, law firm
17  Lipsius-Benhaim Law, and I represent the
18  plaintiff and the deponent.
19      MR. MERKL:  Neil Merkl, with me is my
20  colleague, Sean Flanagan, both from Kelley
21  Drye, and we represent the defendant.
22      THE VIDEOGRAPHER:  Will the Court Reporter
23  please affirm the witness.
24  S H I R L E Y   W R U B E L, who resides at
25      198 Wilson Street, Apartment 3B, Brooklyn, New

**Page 5**

1                S. Wrubel - 1/11/12
2      York, called as a witness, having been first
3      duly affirmed by a Notary Public of the State
4      of New York, was examined and testified as
5      follows:
6  EXAMINATION BY
7  MR. MERKL:
8      Q   Good morning, Mrs. Wrubel.
9      A   Good morning.
10      Q   Would you state and spell your full name,
11  please?
12      A   Shirley Wrubel.  S-H-I-R-L-E-Y;
13  W-R-U-B-E-L.
14      Q   Okay.
15      What is your maiden name?
16      A   Hollander.
17      Q   H-O-L-L --
18      A   -- -A-N-D-E-R.
19      Q   How old are you?
20      A   Fifty.
21      Q   Are you married?
22      A   Yes.
23      Q   How long have you been married?
24      A   Twenty-nine years.
25      Q   Are you living together, as husband and

2 (Pages 2 to 5)

**38**

S. Wrubel - 1/11/12

1

2    Q   That's like over 20 years ago?

3    A   Yeah.

4    Q   Has your husband ever seen it?

5    A   No.

6    Q   When was the last time your mother went to

7 Israel and visited the property?

8      MR. BENHAIM:  Objection.

9    A   I wouldn't know that.

10   Q   More than ten years ago?

11   A   I wouldn't know.

12   Q   Now, who is Jacob Rubo?

13   A   Jacob Rubin.

14   Q   Yeah.

15   A   I don't know of anyone by that.

16   Q   Never heard of that name?

17   A   No.

18   Q   And Rubin Hollander, who is that?

19   A   Rubin Hollander?

20   Q   Right.

21   A   Rubin is my daughter.  She married Rubin.

22 My son-in-law is Rubin.  Hollander is my maiden

23 name.

24   Q   But you don't know a Rubin Hollander?

25   A   No.

**39**

S. Wrubel - 1/11/12

1

2    Q   Mordechai Rubin, which is the address

3 Mordechai Rubin lives at?

4   A   12 Joshua Court.  It's in Munsey.

5   Q   He's your son-in-law?

6   A   Yeah.

7   Q   All right.

8      How well did your children know your

9 mother; very well?

10   A   Yeah.

11   Q   And how often did you see your mother in

12 the past couple years; did you see her

13 regularly?

14   A   Regularly.

15   Q   Once or twice a week?

16   A   More.

17   Q   More.  Okay.

18      And what other friends or relatives would

19 she see regularly; do you recall?

20   A   I mean, my sister saw her also regularly,

21 and her grandchildren came regularly.

22   Q   You visited her at her house at Keep

23 Street?

24   A   Yeah.  I mean, when she -- then my father

25 moved to South 9.  So we visited her there.

**40**

S. Wrubel - 1/11/12

1

2    Q   Who is your father; what's his name?

3   A   Jacob Hollander.

4   Q   Jacob Hollander.

5      And he moved out of the Keep Street

6 apartment?

7   A   Yeah.  He was wheelchair bound, and the

8 Keep Street apartment is three flights up.  So

9 you have to go on a level -- on a street level.

10   Q   So where did he move to?

11   A   South 9.

12   Q   Okay.

13      Did he own that or rent that?

14   A   Rent that.

15   Q   Okay.

16      And when did that happen?

17   A   Approximately five or six years ago.

18   Q   And is your father still living?

19   A   No.

20   Q   When did he die?

21   A   January 7, 2011.

22   Q   About a year ago?

23   A   Just a year.

24   Q   I'm very sorry.

25      What was your father's profession?

**41**

S. Wrubel - 1/11/12

1

2   A   He was a Rabbi.

3   Q   Where was he a Rabbi?

4   A   In the synagogue on the Avenue.

5   Q   And the last 10 years of his life, was he

6 working as a Rabbi?

7   A   No.  Not anymore.  He retired.

8   Q   How long ago had he retired; do you

9 recall?

10   A   It was like 15 years.

11   Q   Fifteen, 1-5, years?

12   A   Fifteen, yeah.

13   Q   So around --

14   A   He started not feeling so well, especially

15 with his mind.

16   Q   His mind started to fail?

17   A   Yeah.

18   Q   So in the early '90s he retired?

19   A   I would say yeah.

20   Q   Okay.

21      Your mother, Mrs. Hollander, did she ever

22 work, or was she a housewife?

23      MR. BENHAIM:  Objection.

24   A   She helped, and she helped sick people,

25 but that's all I recall.

11  (Pages 38 to 41)

42

S. Wrubel - 1/11/12

1  Q  Well, did she ever have a paying job that
2  you know of?
3  A  Not that I know of.
4  Q  In your whole lifetime, you never --
5  A  No.
6  Q  And your father's employment as a Rabbi,
7  do you have any idea what income he was making
8  every year?
9  A  No. I wouldn't know.
10  Q  So if he was making $10,000 a year or
11  $100,000 a year, you have no idea?
12  A  I have no idea.
13  Q  Okay.
14     And did your parents have an accountant?
15  A  That, I don't even know.
16  Q  Did they have a lawyer?
17  A  I don't know.
18  Q  Okay.
19     Did they pay income taxes; do you know?
20  A  No.
21  Q  Do you have any understanding of how they
22  went about paying income taxes?
23  A  No.
24  Q  So you don't even know if they paid income

43

S. Wrubel - 1/11/12

1  taxes?
2  A  I don't know. I don't know about it.
3  Q  What financial records do you have at home
4  from your mother and your father?
5  A  Meaning?
6  Q  Well, did they have checking -- did your
7  mother have a checking account?
8  A  Yeah. She had a lot of bank accounts.
9  Q  She had a lot of bank accounts?
10  A  Yeah.
11  Q  What banks were her bank accounts with?
12  A  I don't know. There were a lot of names
13  and bank books that I found after she passed
14  away.
15  Q  Okay.
16     So you found some bank books after she
17  passed away?
18  A  Yeah.
19  Q  Where are those bank books today?
20  A  I think it's in my house. I think I still
21  have them. But most of them were like old, and
22  they weren't active anymore.
23  Q  Okay.
24     How much money was in these bank accounts

44

S. Wrubel - 1/11/12

1  that you found after she passed away, would you
2  say, altogether?
3  A  They were -- it was a nice amount, but I
4  don't recall.
5  Q  What was it like five or ten thousand
6  dollars?
7  A  More. More.
8  Q  Was it a million dollars?
9  A  No.
10  Q  It wasn't a million dollars?
11     MR. BENHAIM: Objection.
12  A  No.
13  Q  Okay.
14     Was it $100,000 or less in the bank books
15  that you saw?
16  A  Maybe it was $100,000. Might have been.
17  Q  So if you added up all the --
18  A  -- all the accounts, it might have been.
19  Q  Okay.
20     When did you find these bank books?
21  A  After my -- I think it was after my father
22  passed -- no. After my mother passed away.
23  Q  Did you go to her apartment at Keep
24  Street?

45

S. Wrubel - 1/11/12

1  A  Yes.
2  Q  Did you help clean the apartment out?
3  A  Yes.
4  Q  Who helped you to do that?
5  A  My sisters.
6  Q  Did you find besides bank books any other
7  financial information?
8  A  Yeah.
9  Q  What other kinds of financial information?
10  A  She had a life insurance policy.
11  Q  On her own life?
12  A  AIG.
13  Q  Okay.
14     How big was that policy; do you know?
15  A  25,000.
16  Q  Okay.
17     Anything else besides AIG Life Insurance
18  policy?
19  A  She had BlackRock, shares in that.
20  Q  BlackRock shares?
21  A  It's like a stock, mutual fund.
22  Q  How much was that?
23  A  I think it was about 15,000.
24  Q  Fifteen?

12  (Pages 42 to 45)

46

S. Wrubel - 1/11/12

2  A  Yes.
3  Q  Did you find any other stocks or bonds or
4  mutual funds?
5  A  No.
6  Q  Were you able to collect on the
7  25,000-dollar AIG policy?
8  A  I'm still in the middle of doing that.
9  Q  Okay. All right.
10     So back to when you were cleaning out her
11  apartment with your sisters, what other things
12  of a financial nature did you find?
13     Did you find any books or records besides
14  what you just told me about?
15  A  Not on my mother. I found some things in
16  my father's name.
17  Q  What did you find in your father's name?
18  A  He also had a life insurance.
19  Q  Okay.
20     How big was that?
21  A  Also 25.
22  Q  From AIG as well?
23  A  Yeah.
24  Q  Anything else?
25  A  An annuity.

47

S. Wrubel - 1/11/12

2  Q  Who was that from?
3  A  Also AIG.
4  Q  How much was that?
5  A  It -- 47,000.
6  Q  Did he have any stocks or bonds or
7  anything?
8  A  A Dreyfus.
9  Q  How much was that?
10  A  That is like about 5,000.
11  Q  Okay.
12     Did he have any bank accounts or checking
13  accounts?
14  A  No.
15  Q  Okay.
16     As you were looking through their
17  financial records, did you see any records
18  about their real estate in Israel?
19  A  Yeah.
20  Q  Okay.
21  A  That's what I have at home.
22  Q  That's what you have at home?
23  A  Yeah.
24  Q  Okay.
25     And did you find any income tax returns?

48

S. Wrubel - 1/11/12

2  A  No.
3  Q  Now, the money in these bank accounts that
4  you found, and the Dreyfus fund and the
5  BlackRock shares, what happened to all that?
6  A  The BlackRock, I took out money.
7  Q  What did you do with it?
8  A  I -- the check came to me, and that's my
9  personal --
10  Q  Okay.
11  A  Yeah.
12  Q  And then the bank accounts, what happened
13  to all that money?
14  A  The Dime Savings Bank there was $9,000.
15  That, I also took out.
16  Q  Okay.
17  A  And that's all. The other banks there was
18  nothing. I mean the banks weren't even around
19  anymore.
20  Q  Okay.
21     So before, you told me, I thought -- is it
22  fair to say, then, at the time your mother
23  passed and you cleaned out the apartment and
24  you checked all the bank accounts, the only
25  bank account with any money in it at that time

49

S. Wrubel - 1/11/12

2  was Dime?
3  A  Yeah.
4  Q  And that was $9,000?
5  A  Yeah.
6  Q  And you have that?
7  A  Yeah.
8  Q  All right.
9     And then the BlackRock shares you have?
10  A  Yeah.
11  Q  And the Dreyfus, what happened to that?
12  A  Dreyfus, I left there. I put it over on
13  my name.
14  Q  But it's still in Dreyfus in your name?
15  A  Yeah.
16  Q  Okay.
17     Do you know if your sisters took any
18  money?
19  A  They disclaimed.
20  Q  What does that mean?
21  A  They didn't --
22  Q  They said they didn't want it?
23  A  Yeah.
24  Q  All right.
25     Now, in connection with cleaning up the

13  (Pages 46 to 49)

50

S. Wrubel - 1/11/12

2 apartment, did you find any other cash or money
3 of any kind?
4  A  No.
5  Q  So there was no cash laying around?
6  A  There might -- because my nephews, they
7 also cleaned.  I think they did find something.
8  Q  Do you know how much?
9  A  I don't know.  No.
10  Q  Like a few hundred dollars?
11  A  Like small money.
12  Q  Not like thousands of dollars?
13  A  No.
14  Q  All right.
15    I take it you don't have a stockbroker or
16 financial advisor yourself?
17  A  No.
18  Q  Did your mother and father have a
19 stockbroker?
20  A  Not that I know.
21  Q  Did they have a financial advisor?
22  A  I don't know.
23  Q  Did either one of them have a 401K?
24  A  I don't know.
25  Q  Do you know what that is?

51

S. Wrubel - 1/11/12

2  A  No.
3  Q  Did they have an IRA, an Individual
4 Retirement Account; do you know if either one
5 of them had that?
6  A  I don't know.
7  Q  Do either one them have a pension from
8 anywhere?
9  A  Not that I know of.
10  Q  Okay.
11    So is it fair to say, at the time that you
12 cleaned out the apartment and you gathered up
13 all the financial affairs of your mom and the
14 records, the total amount of money and cash you
15 found was less than $100,000?
16  A  Yeah.
17  Q  In fact, less than $50,000?
18    MR. BENHAIM:  Objection.
19  A  Total amount with life insurance?
20  Q  Let's leave the life insurance out of it.
21 All the cash from bank accounts, mutual funds,
22 stocks of any kind.
23  A  Yes, less than 50,000.
24  Q  Okay.  All right.
25    What was your mother's maiden name?

52

S. Wrubel - 1/11/12

2  A  Angelstein.
3  Q  Can you just tell me a little about where
4 she was from?
5  A  She was born in Rumania.  She was like
6 14 years old.  She left through the Holocaust.
7 Afterwards she married, and she came to America
8 like two years later.
9  Q  When was that roughly?
10  A  About '48.
11  Q  Okay.
12    Her husband worked in the electronics
13 store?
14  A  No.
15  Q  I'm confusing --
16  A  That's my husband.
17  Q  That's my mistake.  I apologize.
18    Her husband was a Rabbi?
19  A  Yeah.  Maybe at that time he worked in --
20 when he came, he worked in a factory.
21  Q  Do you know what factory?
22  A  No.
23  Q  Do you know how long he worked in a
24 factory before he become a Rabbi?
25  A  How long, I don't know.

53

S. Wrubel - 1/11/12

2  Q  Other than working --
3  A  When I -- like, as far as I know, he was,
4 like, a Rabbi, like, when I was about 10 years
5 old.
6  Q  So when were you a child, your earliest
7 memory of him is, he is a Rabbi?
8  A  Yeah.
9  Q  You heard in the past he worked in a
10 factory?
11  A  Yeah.
12  Q  All right.
13    Had either of them inherited any wealth or
14 bought any great wealth with them --
15    MR. BENHAIM:  Objection.
16  Q  -- from Europe?
17  A  I don't know.
18  Q  Now, this house you mentioned in Israel,
19 do you know -- any idea how they paid for that
20 or where they got it?
21  A  No.
22  Q  Do you know if someone gave it to them?
23  A  I don't know.
24  Q  Do you know if they bought it?
25  A  I don't know.

14  (Pages 50 to 53)

---

**54**

S. Wrubel - 1/11/12

1
2  Q   Do you know if it was something he planned
3  to purchase but maybe never did purchase it?
4  A   No. I know they did purchase it.
5  Q   Do you know if they owned it outright or
6  if they had a mortgage on it?
7       MR. BENHAIM: Objection.
8  A   That, I don't know.
9  Q   Okay.
10      So they might have owned it, or they might
11 have had a mortgage?
12 A   I don't know.
13      MR. BENHAIM: Objection.
14 Q   Do you know if, at the time they died,
15 either one of them had any loans outstanding
16 for anything?
17 A   No.
18 Q   Okay.
19      So I take it your mother, she came over
20 together with your father from Rumania?
21 A   And my sister was also born there.
22 Q   Okay.
23      And then where did you live when you grew
24 up?
25 A   Where I lived?

---

**55**

S. Wrubel - 1/11/12

1
2  Q   With your parents, where was that?
3  A   On Keep Street.
4  Q   That same building?
5  A   They had lived on South Second Street, and
6  they moved when I was like 2 years old.
7  Q   To Keep Street?
8  A   Yeah.
9  Q   So you and your mother and your father and
10 siblings grew up in that Keep Street address
11 where your mother lived until she passed?
12 A   Yeah.
13 Q   Do you have any idea how much the rent was
14 at Keep Street?
15 A   No.
16 Q   How big is the Keep Street apartment?
17      MR. BENHAIM: Objection.
18 A   It was a four-bedroom.
19 Q   Was it in an attached house, an apartment
20 building?
21      Is it -- what kind of -- how would you
22 describe it?
23 A   It had like a few apartments in the
24 building.
25 Q   As long as you remember you rented it?

---

**56**

S. Wrubel - 1/11/12

1
2  A   Yeah.
3  Q   Okay.
4      Did your mother speak English?
5  A   She spoke some, yeah.
6  Q   Pretty well?
7  A   Not very well.
8  Q   Well, when she discussed the trust and the
9  insurance with you -- remember talking about
10 that?
11 A   Yeah.
12 Q   -- what language were you speaking?
13 A   We always spoke Yiddish.
14 Q   With each other?
15 A   Yeah.
16 Q   Do you know who owns the Keep Street
17 apartment?
18 A   Cohen.
19 Q   Is he any relationship to you at all?
20 A   No.
21 Q   Okay.
22      Now, after your mother passed, was there a
23 will; did you find a will?
24 A   No.
25 Q   She left no will?

---

**57**

S. Wrubel - 1/11/12

1
2  A   No.
3  Q   Did you retain a lawyer to help with the
4  estate?
5  A   No.
6  Q   Is there an executor of the estate?
7  A   I took care of everything.
8  Q   So there is not going to be an estate?
9  A   No.
10 Q   Okay.
11      Is it fair to say that, at the time your
12 mother passed, she did not have $9 million?
13      MR. BENHAIM: Objection.
14 A   No.
15 Q   She did not?
16 A   No.
17 Q   She did not have $5 million?
18 A   Not that I know.
19 Q   She did not have $1 million?
20 A   No.
21 Q   Okay.
22      Do you remember at the time in 2008, when
23 you bought the insurance, at that time, is it
24 also true your mother did not have $9 million?
25 A   At that time, she probably did.

---

15 (Pages 54 to 57)

| | 58 | | 60 |
|---|---|---|---|
| | S. Wrubel - 1/11/12 | | S. Wrubel - 1/11/12 |

**Page 58**

S. Wrubel - 1/11/12

1
2   Q   Why do you say that she probably did?
3   A   Because, like I said, I always knew she
4   was well off. She -- I knew she was involved
5   in real estate and all the charities she did,
6   the gifting. Whatever. All these made me -- I
7   always felt that she had a lot of money.
8   Q   Okay.
9       Well, what documents or records can you
10  tell me about that showed that she had
11  $9 million in 2008, when she bought --
12      MR. BENHAIM:  Objection.
13  Q   -- the insurance?
14  A   I never asked her for records. I never
15  asked. I didn't see anything.
16  Q   Well, is it fair to say that you yourself
17  never saw any bank statements indicating that
18  she had a million dollars or more?
19  A   Yeah.
20  Q   And you never saw any stocks certificates
21  or mutual fund receipts showing she had a
22  million dollars or more?
23  A   Yeah.
24  Q   And you yourself have never seen any deeds
25  of any real property showing millions of

**Page 59**

S. Wrubel - 1/11/12

1
2   dollars in real property?
3   A   Correct.
4   Q   You have not?
5   A   No, I haven't seen.
6   Q   So this feeling that she had $9 million
7   when she bought the policy, where does that
8   come from?
9       MR. BENHAIM:  Objection.
10  A   Like I said before, from my mother
11  herself.
12  Q   Okay. All right.
13      Well, when she passed and you went and you
14  cleaned the apartment and you settled her
15  affairs, did you handle her funeral expenses?
16  A   No.
17  Q   Who paid for those?
18  A   My brother-in-law took care of it.
19  Q   Did you find $9 million?
20  A   No.
21  Q   What happened to it, if she had it?
22  A   I don't know.
23  Q   No idea?
24  A   I didn't know at that time that she didn't
25  have it, but --

**Page 60**

S. Wrubel - 1/11/12

1
2   Q   You mean - I guess maybe my question
3   wasn't precise.
4       Are you saying you used to think she had a
5   lot of money but now you know she did not?
6   A   Yeah.
7   Q   Okay.
8       So sitting here today, with the benefit of
9   going through all her records and seeing what
10  you could see, you now know that in 2008 she
11  did not have $9 million?
12      MR. BENHAIM:  Objection.
13  A   No. Then she did have.
14  Q   Okay.
15      Why do you think she had it then?
16  A   From what she told me, from what she --
17  the way she lived, and I --
18  Q   What about the way she lived suggested
19  that she had all that money?
20  A   All the charities she did and --
21  Q   Again, in the last 10 years, what
22  charities did she give to?
23  A   I don't know the specific names. I don't
24  know, you know -- I wouldn't be able to recall
25  a name, but I know that she was involved with a

**Page 61**

S. Wrubel - 1/11/12

1
2   lot of charity.
3   Q   Well, when you went through her apartment,
4   did you find her checkbooks and things?
5       MR. BENHAIM:  Objection.
6   A   No.
7   Q   Did you find any bank statements?
8       MR. BENHAIM:  Objection.
9   A   No.
10  Q   Did you find any records that she had
11  given anything to charity?
12  A   I didn't find that, no.
13  Q   Okay.
14      Well, if she had $9 million in 2008, what
15  do you believe happened to it?
16  A   I don't know.
17  Q   Are you taking any steps to find it?
18  A   So far not.
19  Q   Do any of your sisters have any knowledge
20  of where the $9 million might be or what might
21  have happened to it?
22  A   Not that I know of.
23  Q   Which one of them should I talk to, in
24  terms of being the most knowledgeable about how
25  much money your mother had?

16  (Pages 58 to 61)

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 500, New York, NY 10123  (212)705-8585

62

S. Wrubel - 1/11/12

1  A  I don't think they know any more than I
2  know.
3  Q  Did your mother have an accountant?
4  MR. BENHAIM: Objection.
5  A  An account?
6  Q  Accountant.
7  A  I don't know.
8  Q  So there is no estate today?
9  MR. BENHAIM: Objection.
10  A  No.
11  Q  Is there any plans to establish an estate
12  for your mother?
13  A  Just small estate.
14  Q  What do you plan to do there?
15  A  The life insurance, the 25,000 life
16  insurance, they want a small estate.
17  Q  I'm sorry. I don't understand what you
18  mean.
19  A  They told me that they need to have a
20  small estate affidavit.
21  Q  I see.
22  Did you do that?
23  A  Yes. It's in middle of -- I went to the
24  court, and they are in the middle of doing it.

63

S. Wrubel - 1/11/12

1  Q  Okay.
2  So there is going to be -- have you signed
3  the small estate affidavit yet?
4  A  Yeah.
5  Q  Was that filed with the court?
6  A  Yeah. I went to the court and I paid the
7  money, and I -- but they have to review it, and
8  they have to send me the certificates.
9  Q  Okay.
10  Did anyone help you with the small estate
11  affidavit?
12  A  No.
13  Q  How did you know that you needed to get
14  one?
15  A  Because the insurance company asked for
16  it.
17  Q  Did they tell you to go get it?
18  A  Yeah.
19  Q  Did they tell you how to go about getting
20  it?
21  A  I think they told me.
22  Q  Okay.
23  An affidavit is something you signed?
24  A  Yeah, I had to sign.

64

S. Wrubel - 1/11/12

1  Q  And what does it say?
2  A  How much my mother had, how much money is
3  in the estate.
4  Q  And how much does that affidavit say is in
5  the estate?
6  A  It would be the BlackRock and the life
7  insurance.
8  Q  Okay.
9  Now, to go back, when you say you thought
10  she had $9 million in 2008, in what form do you
11  think she had it; in bank accounts, in stock?
12  A  Bank accounts. Yeah, stock, real estate.
13  Q  You think she had all those things?
14  A  Yeah.
15  Q  Are there any records today of any of
16  those things?
17  A  I didn't find anything.
18  Q  Okay.
19  Do you know your mother's Social Security
20  number?
21  A  No.
22  Q  Did she have a Social Security number?
23  A  Yeah.
24  Q  Was she living on Social Security?

65

S. Wrubel - 1/11/12

1  A  I don't know.
2  Q  Who helped -- did anyone help take care of
3  her in her later years?
4  A  No. She took care of herself.
5  Q  She was very healthy up until --
6  A  She did have cancer the last half-year,
7  but even then she took care of herself.
8  Q  Okay.
9  You say she gave generous gifts.
10  Can you give me some examples of what you
11  mean by "generous gifts"?
12  MR. BENHAIM: Objection.
13  A  Things.
14  Q  Cars, jewelry, things like that?
15  A  Jewelry.
16  Q  Do you have any of this?
17  A  Yeah.
18  Q  Okay.
19  Did your mother own a car?
20  A  No.
21  Q  Did your father?
22  A  Also not.
23  Q  No?
24  A  No.

17  (Pages 62 to 65)

98

```
 1            S. Wrubel - 1/11/12
 2   reporter.)
 3         MR. MERKL:  Defendant's Exhibit 10 is a
 4   document marked TRUST 001 through TRUST 0171.
 5   These are documents we received in advance of
 6   the deposition from Plaintiff's counsel.  They
 7   include the policy excerpts, among other
 8   things.
 9   BY MR. MERKL:
10     Q  Ms. Wrubel, can you take a look through
11   Exhibit 10, please, and tell me, do you know
12   where those documents came from?
13     A  (Witness views document.)
14         These documents, I don't know.  This is
15   from Jamaica.
16     Q  Yeah.
17         Do you know where they come from?
18     A  Yeah.  This was -- somebody from Jamaica
19   that called my mother, and he told her that she
20   would get a lot of money but she had to pay him
21   certain amount and she did.  She paid him a lot
22   of money.
23     Q  Okay.
24         Other than this particular pile, are these
25   documents you gathered together?
```

99

```
 1            S. Wrubel - 1/11/12
 2         For instance, there is a trust agreement
 3   on top; have you seen that before?
 4     A  This (indicating)?
 5     Q  I'm sorry.
 6         This pile of documents, did you gather
 7   these together for your lawyer?
 8         MR. BENHAIM:  Objection.
 9     A  No.
10     Q  So you don't really know where this
11   particular pile came from?
12     A  No.
13     Q  You may have given some of the documents,
14   but maybe not some of the others?
15         MR. MERKL:  I'll withdraw it.
16     Q  Do you have any documents at home at all
17   that refer to the trust or the LLC?
18     A  No.
19     Q  Do you know where the trust records are,
20   who would have them?
21     A  No.
22     Q  Earlier you talked about making some
23   checks out to pay premiums.
24     A  Yeah.
25     Q  Who do you believe would have those
```

100

```
 1            S. Wrubel - 1/11/12
 2   cancelled checks?
 3     A  Maybe my son-in-law.
 4     Q  Mr. Rubin?
 5     A  Yeah.
 6     Q  Why do you think he might have them?
 7     A  I know he's involved in it and he is
 8   taking care of, you know, everything after my
 9   mother passed away.
10     Q  He is taking care of your mother's affairs
11   after she passed away?
12     A  The insurance.
13     Q  The insurance?
14     A  The insurance, yeah.
15     Q  All right.
16         Did he visit the apartment with you to
17   collect her belongings?
18     A  No.
19     Q  How did your mother pay her bills?
20         Did she have a checkbook?
21     A  She had a checkbook.
22     Q  Did you find the checkbook?
23     A  I think the Dimes checkbook I found there.
24     Q  It was a Dime?
25         She used the Dime Savings account and
```

101

```
 1            S. Wrubel - 1/11/12
 2   checkbook to pay bills.
 3     A  I don't know if she paid bills with that,
 4   but that checkbook I found.
 5     Q  Well, for instance, she had a Con Ed bill,
 6   right?
 7     A  How she paid that, I don't know.
 8         MR. MERKL:  This is what we marked last
 9   time.
10         MR. BENHAIM:  Okay.
11         MR. MERKL:  This is the Trust Agreement.
12   BY MR. MERKL:
13     Q  Take a look at Number 5, Defendant's
14   Exhibit 5, please, Ms. Wrubel.
15         MR. MERKL:  Do you remember, we misplaced
16   the originals?
17         Can you agree this is Exhibit 5?
18         MR. BENHAIM:  You basically just put a new
19   sticker on here?
20         MR. FLANAGAN:  Yes.
21         MR. BENHAIM:  If you would give me just a
22   second, I would bring my collection of
23   exhibits, just to make sure we're looking at
24   the right thing.  I don't remember offhand.
25         MR. MERKL:  Okay.  Terrific.  Thank you.
```

26 (Pages 98 to 101)

114

S. Wrubel - 1/11/12

1  insurances. It did say children beneficiary.
2  Q  No. No. I'm sorry. I was talking about
3  the bank books and things like that, that you
4  found.
5  A  No.
6  Q  That was something --
7  A  Yeah.
8  Q  You and your sisters agreed on that?
9  A  Yeah.
10 Q  That wasn't something your mother planned
11 ahead of time?
12 A  No.
13 Q  So, as far as you know, your mother did
14 not attempt to arrange any kind of estate or
15 anything?
16 A  No.
17 Q  And she didn't set up any estate plan?
18 A  Not that I know.
19 Q  And she didn't have any tax planning?
20 A  I don't know.
21 Q  Did she ever talk with a lawyer about an
22 estate; do you know?
23 A  I don't know.
24 Q  About leaving her money to anyone?

116

S. Wrubel - 1/11/12

1  Q  Did you ever discuss the LLC or the trust
2  with Mr. Rubin?
3  A  I discussed it, no. No, I didn't discuss.
4  Q  Did you ever mention it to him at all?
5     Did he ever say anything about it?
6  A  Yeah. He might have mentioned something.
7  Q  What do you think he mentioned about it?
8  A  I don't recall what he -- I know he -- he
9  knew about it. I knew about it. So we might
10 have just, you know, said something, if I
11 deposited a check or like, you know, these kind
12 of things.
13 Q  Did Mr. Rubin arrange for the payments of
14 the premiums?
15 A  My mother. I know my mother told me to.
16 Q  But did Mr. Rubin help with it?
17 A  That, I don't know.
18 Q  Okay.
19    Now, did Mr. Rubin ever talk to you about
20 the trust?
21 A  Again?
22 Q  Did Mr. Rubin ever talk to you about the
23 trust?
24 A  If he talked to me about the trust, I

115

S. Wrubel - 1/11/12

1  A  I don't know.
2  Q  Did she ever talk to a lawyer about taxes?
3  A  I don't know.
4  Q  Did she ever talk to an accountant about
5  any of these things?
6  A  I don't know.
7  Q  Okay.
8     Now, as far as you know, are you the only
9  member of the Sara Hollander, LLC?
10 A  Yeah.
11 Q  Were there any plans for there ever to be
12 other members?
13 A  Not that I know.
14 Q  Okay.
15    Has there been any -- has anyone talked to
16 you about selling any interest in the Sara
17 Hollander, LLC?
18 A  No.
19 Q  Never heard of that?
20 A  No.
21 Q  Did anyone try and -- did anyone ever
22 discuss with you making other members of the
23 Sara Hollander, LLC?
24 A  No.

117

S. Wrubel - 1/11/12

1  don't recall.
2  Q  Or the LLC; did he talk to you about that?
3  A  No.
4  Q  Did he ever tell you why they did it this
5  way?
6  A  No.
7  Q  Did you ever ask, "Why don't we just have
8  someone in the family be a beneficiary of the
9  insurance, like under the AIG ones; why are we
10 doing it this way?"
11 A  I didn't ask.
12 Q  Did anyone ever tell you that?
13 A  No.
14 Q  Did you ever hear anyone discuss possibly
15 selling either insurance policy?
16 A  I don't know.
17 Q  No one ever mentioned that?
18 A  No.
19 Q  Mr. Rubin didn't say anything about that?
20 A  No.
21 Q  Now, when you first -- when the insurance
22 was first purchased, that first payment, do you
23 know how that was made?
24 A  No.

30  (Pages 114 to 117)

**118**

S. Wrubel - 1/11/12

1
2  Q  Do you know where that money came from for
3  the first payment?
4  A  No.
5  Q  Now, for the trust and LLC, there are
6  supposed to be records kept that they provide
7  for.
8      Did you keep any records for the trust and
9  the LLC?
10  A  No.
11  Q  Do you know if anyone did?
12  A  I don't know.
13  Q  Okay.
14      If you wanted to find out where these
15  checks were that paid the premiums and who, if
16  anybody, managed the affairs of the trust of
17  the LLC, who would you ask?
18  A  My son-in-law.
19  Q  Mr. Rubin?
20  A  Yeah.
21  Q  Now, as trustee, have you ever hired
22  anyone to do any work on behalf of the trust,
23  like an accountant?
24      MR. BENHAIM:  Objection.
25  A  No.

**119**

S. Wrubel - 1/11/12

1
2  Q  You've retained an attorney to represent
3  the trust, right; Mr. Benhaim?
4  A  Yeah.
5  Q  Did you retain Mr. Benhaim or did someone
6  else?
7  A  My son-in-law.
8  Q  Mr. Rubin?
9  A  He took care of it, yeah.
10  Q  You are still the trustee; am I correct?
11  A  Yeah.
12  Q  And there are no other trustees?
13  A  No.
14  Q  And you're still the manager of the LLC,
15  correct?
16  A  Yes.
17  Q  And there are no others?
18  A  No.
19  Q  You're still the sole beneficiary of the
20  LLC?
21  A  Right.
22  Q  And there are no others?
23  A  No.
24  Q  And no one else besides you owns an
25  interest in the LLC; is that correct?

**120**

S. Wrubel - 1/11/12

1
2  A  Yeah.
3  Q  Does the LLC or the trust ever file a tax
4  return?
5  A  I don't know.
6  Q  If you wanted to find out if it did or if
7  it had to, who would you ask?
8  A  Mordechai Rubin.
9  Q  Does either one of them have their own
10  bank account, the trust or the LLC?
11      MR. BENHAIM:  Objection.
12  A  I don't know.
13  Q  As far as you know, both the trust and the
14  LLC still exist, right?
15  A  Yeah.
16  Q  Okay.
17      MR. MERKL:  I'm going to ask the witness
18  to take a look at Exhibit 2, please, that we
19  marked at the prior deposition.
20  A  (Witness views document.)
21  Q  Exhibit 2 is a handwritten application for
22  life insurance on a John Hancock form.
23      Ms. Wrubel, would you turn to the last
24  page of Exhibit 2, please?
25  A  Yeah.

**121**

S. Wrubel - 1/11/12

1
2  Q  And see at the bottom of that page there
3  is some handwriting?
4  A  Yeah.
5  Q  All right.  Okay.
6      On the lower right-hand side, it says:
7  "12th February 2008."
8      Do you see that?
9  A  Yeah.
10  Q  Under that it says:  "Sara Hollander."
11  A  Yeah.
12  Q  Does that resemble your mother's
13  signature?
14  A  Yes.
15  Q  Do you believe that to be her signature?
16  A  Yeah.
17  Q  Okay.
18      Below that it says:  "12th February 2008,
19  Shirley Wrubel."
20  A  Yes.
21  Q  Is that your signature?
22  A  Yeah.
23  Q  So you believe you signed this document?
24  A  Yeah.
25  Q  And next to it, your signature, there is

31  (Pages 118 to 121)

# EXHIBIT B

Issued by the
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER IRREVOCABLE
LIFE INSURANCE TRUST,

|  |  |
|---|---|
| **Plaintiff,** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | |
| **JOHN HANCOCK LIFE INSURANCE COMPANY,** | Civil Action No. 11-cv-01873 (WFK) (LB) |
| | Action pending in the United States District Court, Eastern District of New York |
| **Defendant,** | |

TO:    Mr. Mordechai Rubin
        12 Joshua Court
        Monsey, NY 10952

☐    YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|
| | |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition shall be recorded by stenographic and sound-and-visual means and conducted before a person authorized to administer oaths in accordance with Rule 28(a) of the Federal Rules of Civil Procedure, and will continue day to day until completed.

| Place of deposition:    **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** | Date and time **January 31, 2012** **10:00 a.m.** |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See Schedule A annexed hereto.

| Place    **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** | Date and time **January 27, 2012** **5:00 p.m.** |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and time |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant) **Attorneys for Defendant** | Date: January 13, 2012 |
|---|---|

| Issuing officer's name, address and phone number: | Sean R. Flanagan Kelley Drye & Warren LLP 101 Park Avenue New York, New York  10178 (212) 808-7800 |
|---|---|

(See Rule 45, Federal Rules of Civil Procedure, Parts C, D & E on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                    SIGNATURE OF SERVER

ADDRESS OF SERVER

**RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, SUBDIVISIONS (c), (d) AND (e), as amended on December 1, 2006:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or

modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limits of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.** Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend and produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

<u>Schedule A</u>

**GENERAL INSTRUCTIONS**

For the purposes of these Requests, the following instructions shall apply:

1.     The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules 26.2, 26.3, 26.4, and all other applicable rules are incorporated by reference.

2.     In answering these Requests, you are required not only to furnish such information as you know of your own personal knowledge, but also to furnish information that is in the possession of your attorneys, investigators or anyone acting in your behalf or their behalf, except to the extent that such information is privileged.

3.     If your answer is qualified in any particular manner, set forth the details of such qualification.

4.     In the event you claim that any information called for in these Requests is immune from discovery on the ground of privilege, the information that is set forth in Local Rule 26.2 shall be provided in writing.

5.     A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein. Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things, (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

6.     Unless otherwise stated, these Requests seek the production of documents from the period January 1, 2004 to the present.

3

7.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this request is a continuing one and requires further and supplemental production by you as and whenever you make or locate additional documents or things between the time of initial production and the time of trial in this action.

## DEFINITIONS

1.     For the purposes of these Requests, the definitions and rules of construction set forth in Rule 26.3 and 26.4 of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules") shall apply.

2.     "You" means Mordechai Rubin and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf and all documents, files, e-mails, or electronically stored information of any kind in Your custody and control.

3.     "073 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit B, and any amendments, schedules, exhibits, addenda and modifications thereto.

4.     "075 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit D, and any amendments, schedules, exhibits, addenda and modifications thereto.

5.     "Berkowitz" means Chaim Berkowtiz, CPA, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

6.     "Empire" means Empire Insurance Brokerage, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors,

4

successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

7.      "Erno Wrubel" means Erno Wrubel and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

8.      "February Application" means the Application submitted by Sara Hollander and plaintiff, Shirley Wrubel on or about February 12, 2008 and attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

9.      "Goldberger" means Joel Goldberger and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

10.     "H. Jacobowitz" means Herman Jacobowitz, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

11.     "Halperin" means Mindy Halperin and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

12.     "Insured" means Sara Hollander and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including her Estate.

13.     "Jacob Hollander" means Jacob Hollander and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including his Estate.

14.     "John Hancock" means defendant John Hancock Life Insurance Company (USA), and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

5

15.    "LLC" means the Sara Hollander Family, LLC and any and all of its current and former mangers, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

16.    "M. Jacobowitz" means Mindy Jacobowitz, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

17.    "May Application" means the Application attached as Exhibit C to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

18.    "Trust" means the Sara Hollander Irrevocable Life Insurance Trust, and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

19.    "Wrubel" means plaintiff Shirley Wrubel, individually and as Trustee for the Sara Hollander Irrevocable Life Insurance Trust, and in any other capacity, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

## DOCUMENTS TO BE PRODUCED

1.    All files, documents, e-mails, or electronically stored information of any kind maintained by you in any way relating to or concerning the Trust, the LLC, the 073 Policy, the 075 Policy, Ms. Wrubel or the Insured.

2.    All documents, files, e-mails, or electronically stored information of any kind reflecting or concerning any communications, including but not limited to e-mails, letters and memoranda between or among (1) You, (2) the Insured or Jacob Hollander, (3) Wrubel,

6

and/or Erno Wrubel and their children, (4) Goldberger, (5) the Trust (including anyone acting on the Trust's behalf), (6) the LLC, (7) Halperin, (8) M. Jacobowitz, (9) Sam Feder, (10) Empire, (11) John Hancock, (12) H. Jacobowitz, and (13) any accountant or other third party, concerning the following topics:

       a.     the 073 Policy;

       b.     the 075 Policy;

       c.     the purchase, underwriting or placement of either the 075 or 073 Policies;

       d.     any version of any application for either Policy;

       e.     formation, purpose or actions taken on behalf of the Trust or the LLC;

       f.     effort to sell or assign the Policy, convey or assign any interest in the Trust or any share in the LLC;

       g.     net worth or income of the Insured;

       h.     Wrubel's role as Trustee; and

       i.     claims made for death benefits under either Policy.

3.     To the extent not already encompassed by the proceeding requests, all documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempt by any person to purchase life insurance from any source on the life of the Insured.

4.     All documents, files, e-mails, or electronically stored information of any kind reflecting on business, financial, and/or investment interest of the Insured and/or her family and/or statements reflecting any ownership interest in bonds, securities, real estate and/or bank accounts.

5.     All documents, files, e-mails, or electronically stored information of any kind reflecting any aspect of the net worth or income of the Insured or her family or any

7

documents which indicate the lack of net worth or annual income in the amounts claimed in the February and May Applications.

6.     Any documents, files, e-mails, or electronically stored information of any kind reflecting the Insured's interest in any I.R.A. or 401K account or right to receive any pension benefits.

7.     All documents, files, e-mails, or electronically stored information of any kind reflecting any business or other relationship with You and the Trust, the LLC, Wrubel, the Insured, Empire or Goldberger.

8.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any actions taken in connection with making a claim under the 073 or 075 Policy.

9.     All documents, files, e-mails, or electronically stored information of any kind reflecting or referring to any payments of premium, or financing premiums under the Policy, loan agreements used for payment of premium or source of funds used to pay premiums under the 073 and 075 Policies.

10.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempts to sell the Policy or reflecting any other attempts by a third party to purchase the Policy, the Trust or the shares in the LLC, or claim some portion of the proceeds under the Policy.

11.     All documents, files, e-mails, or electronically stored information of any kind reflecting communication with accountants, brokers or financial advisors of the Insured.

12.     All documents, files, e-mails, or electronically stored information of any kind reflecting or relevant to the Insured's federal and state income tax filings (or failure to file) from 2005 to the present.

13.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting any interest of the Insured in any real property or real estate investment.

14.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting the existence of any false or incorrect statements in either the February or May Applications.

15.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting the existence, extent of the Insured's estate.

16.     All documents, files, e-mails, or electronically stored information of any kind reflecting any aspect of the net worth or annual income of Jacob Hollander or any documents which indicate the lack of net worth or annual income in the amount claimed in the February or May Applications.

# OFFICE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF THE SARA HOLLANDER IRREVOCABLE
LIFE INSURANCE TRUST,

CIVIL ACTION#: 11-CV-01873
(WFK) (LB)

against                           *Plaintiff(s)*

JOHN HANCOCK LIFE INSURANCE COMPANY,

                                  *Defendant(s)*

## AFFIDAVIT OF SERVICE

State of New York      }
County of New York    }  ss.:

The undersigned, being duly sworn, deposes and says:

Deponent is not a party herein, is over 18 years of age and resides in Wayne, New Jersey

That on 1/13/2012 at 3:49 PM at 12 Joshua Court, Monsey, NY 10952

deponent served a(n) **Subpoena in a Civil Case**

on **Mr. Mordechai Rubin**,

by delivering a true copy to said witness personally;

deponent knew the person so served to be the witness described in said subpoena.

Description of Person Served:
Gender: Male
Skin: White
Hair: Black
Age: 22 - 35 Yrs.
Height: 5' 9" - 6' 0"
Weight: 161-200 Lbs.
Other:

At the time of said service, deponent paid (tendered) in advance $82.00 the authorized traveling expenses and one day's
witness fee.

Sworn to before me this
16th day of January 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Peter Feldman
License No.797824

# EXHIBIT C

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

| | | |
|---|---|---|
| WASHINGTON, DC | **101 PARK AVENUE** | FACSIMILE |
| LOS ANGELES, CA | **NEW YORK, NEW YORK  10178** | (212) 808-7897 |
| CHICAGO, IL | | www.kelleydrye.com |
| STAMFORD, CT | (212) 808-7800 | |
| PARSIPPANY, NJ | | |
| | | DIRECT LINE: (212) 808-7584 |
| BRUSSELS, BELGIUM | | EMAIL: sflanagan@kelleydrye.com |
| | | |
| AFFILIATE OFFICES | | |
| MUMBAI, INDIA | | |

January 27, 2012


**VIA FEDERAL EXPRESS**

Mr. Mordechai Rubin
12 Joshua Court
Monsey, New York 10952

Re:  *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life
     Insurance Trust  v. John Hancock Life Ins. Co.,*
     Civil Action No. 11-cv-01873 (WFK) (LB) E.D.N.Y.

Dear Mr. Rubin:

We represent the defendant, John Hancock (U.S.A.) ("John Hancock") in the above-referenced action.  Pursuant to a subpoena that we served on you, dated January 13, 2012 (the "Subpoena"), your deposition was scheduled for Tuesday, January 31, 2012.  Pursuant to Plaintiff's request, we are adjourning your deposition to February 28 at 10 am.

Additionally, the Subpoena required that you produce certain documents that you may have in your possession by January 27, 2012.  Pursuant to the subpoena, you are still required to produce any responsive documents.  If you are represented by counsel in this matter, please either have your attorney contact me immediately or provide me with your attorney's name and contact information and I will contact him.  If, however, you are not represented by counsel please contact me to discuss your production of documents.

Very truly yours,

Sean R. Flanagan

cc:   David Benhaim, Esq. (via Electronic Mail)
      Attorneys for Plaintiff


NY01/FLANS/1524466.1

# EXHIBIT D

Issued by the
### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIRLEY WRUBEL, AS TRUSTEE OF THE SARA HOLLANDER IRREVOCABLE LIFE INSURANCE TRUST, | |
| Plaintiff, | **AMENDED SUBPOENA IN A CIVIL CASE** |
| **V.** | |
| JOHN HANCOCK LIFE INSURANCE COMPANY, | Civil Action No. 11-cv-01873 (WFK) (LB) |
| | Action pending in the United States District Court, Eastern District of New York |
| Defendant, | |

TO:   Mr. Mordechai Rubin
12 Joshua Court
Monsey, NY 10952

☐   YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition shall be recorded by stenographic and sound-and-visual means and conducted before a person authorized to administer oaths in accordance with Rule 28(a) of the Federal Rules of Civil Procedure, and will continue day to day until completed.

| Place of deposition: | Date and time |
|---|---|
| **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** | **February 28, 2012** **10:00 a.m.** |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule A annexed hereto.

| Place | Date and time |
|---|---|
| **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** | **February 23, 2012** **5:00 p.m.** |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and time |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant) **Attorneys for Defendant** | Date: February 13, 2012 |
|---|---|

Issuing officer's name, address and phone number:
Sean R. Flanagan
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York  10178
(212) 808-7800

(See Rule 45, Federal Rules of Civil Procedure, Parts C, D & E on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
        DATE                                    SIGNATURE OF SERVER

        _____
        ADDRESS OF SERVER

RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, SUBDIVISIONS (c), (d) AND (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or

modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limits of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend and produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

### GENERAL INSTRUCTIONS

For the purposes of these Requests, the following instructions shall apply:

1.      The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules 26.2, 26.3, 26.4, and all other applicable rules are incorporated by reference.

2.      In answering these Requests, you are required not only to furnish such information as you know of your own personal knowledge, but also to furnish information that is in the possession of your attorneys, investigators or anyone acting in your behalf or their behalf, except to the extent that such information is privileged.

3.      If your answer is qualified in any particular manner, set forth the details of such qualification.

4.      In the event you claim that any information called for in these Requests is immune from discovery on the ground of privilege, the information that is set forth in Local Rule 26.2 shall be provided in writing.

5.      A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein.  Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things, (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

6.      Unless otherwise stated, these Requests seek the production of documents from the period January 1, 2004 to the present.

3

7.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this request is a continuing one and requires further and supplemental production by you as and whenever you make or locate additional documents or things between the time of initial production and the time of trial in this action.

### DEFINITIONS

1.    For the purposes of these Requests, the definitions and rules of construction set forth in Rule 26.3 and 26.4 of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules") shall apply.

2.    "You" means Mordechai Rubin and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf and all documents, files, e-mails, or electronically stored information of any kind in Your custody and control.

3.    "073 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit B, and any amendments, schedules, exhibits, addenda and modifications thereto.

4.    "075 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit D, and any amendments, schedules, exhibits, addenda and modifications thereto.

5.    "Berkowitz" means Chaim Berkowtiz, CPA, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

6.    "Empire" means Empire Insurance Brokerage, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors,

4

successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

7.     "Erno Wrubel" means Erno Wrubel and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

8.     "February Application" means the Application submitted by Sara Hollander and plaintiff, Shirley Wrubel on or about February 12, 2008 and attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

9.     "Goldberger" means Joel Goldberger and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

10.    "H. Jacobowitz" means Herman Jacobowitz, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

11.    "Halperin" means Mindy Halperin and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

12.    "Insured" means Sara Hollander and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including her Estate.

13.    "Jacob Hollander" means Jacob Hollander and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including his Estate.

14.    "John Hancock" means defendant John Hancock Life Insurance Company (USA), and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

5

15.    "LLC" means the Sara Hollander Family, LLC and any and all of its current and former mangers, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

16.    "M. Jacobowitz" means Mindy Jacobowitz, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

17.    "May Application" means the Application attached as Exhibit C to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

18.    "Trust" means the Sara Hollander Irrevocable Life Insurance Trust, and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

19.    "Wrubel" means plaintiff Shirley Wrubel, individually and as Trustee for the Sara Hollander Irrevocable Life Insurance Trust, and in any other capacity, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

## DOCUMENTS TO BE PRODUCED

1.    All files, documents, e-mails, or electronically stored information of any kind maintained by you in any way relating to or concerning the Trust, the LLC, the 073 Policy, the 075 Policy, Ms. Wrubel or the Insured.

2.    All documents, files, e-mails, or electronically stored information of any kind reflecting or concerning any communications, including but not limited to e-mails, letters and memoranda between or among (1) You, (2) the Insured or Jacob Hollander, (3) Wrubel,

6

and/or Erno Wrubel and their children, (4) Goldberger, (5) the Trust (including anyone acting on the Trust's behalf), (6) the LLC, (7) Halperin, (8) M. Jacobowitz, (9) Sam Feder, (10) Empire, (11) John Hancock, (12) H. Jacobowitz, and (13) any accountant or other third party, concerning the following topics:

    a.    the 073 Policy;

    b.    the 075 Policy;

    c.    the purchase, underwriting or placement of either the 075 or 073 Policies;

    d.    any version of any application for either Policy;

    e.    formation, purpose or actions taken on behalf of the Trust or the LLC;

    f.    effort to sell or assign the Policy, convey or assign any interest in the Trust or any share in the LLC;

    g.    net worth or income of the Insured;

    h.    Wrubel's role as Trustee; and

    i.    claims made for death benefits under either Policy.

3.    To the extent not already encompassed by the proceeding requests, all documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempt by any person to purchase life insurance from any source on the life of the Insured.

4.    All documents, files, e-mails, or electronically stored information of any kind reflecting on business, financial, and/or investment interest of the Insured and/or her family and/or statements reflecting any ownership interest in bonds, securities, real estate and/or bank accounts.

5.    All documents, files, e-mails, or electronically stored information of any kind reflecting any aspect of the net worth or income of the Insured or her family or any

documents which indicate the lack of net worth or annual income in the amounts claimed in the February and May Applications.

6.      Any documents, files, e-mails, or electronically stored information of any kind reflecting the Insured's interest in any I.R.A. or 401K account or right to receive any pension benefits.

7.      All documents, files, e-mails, or electronically stored information of any kind reflecting any business or other relationship with You and the Trust, the LLC, Wrubel, the Insured, Empire or Goldberger.

8.      All documents, files, e-mails, or electronically stored information of any kind referring or relating to any actions taken in connection with making a claim under the 073 or 075 Policy.

9.      All documents, files, e-mails, or electronically stored information of any kind reflecting or referring to any payments of premium, or financing premiums under the Policy, loan agreements used for payment of premium or source of funds used to pay premiums under the 073 and 075 Policies.

10.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempts to sell the Policy or reflecting any other attempts by a third party to purchase the Policy, the Trust or the shares in the LLC, or claim some portion of the proceeds under the Policy.

11.     All documents, files, e-mails, or electronically stored information of any kind reflecting communication with accountants, brokers or financial advisors of the Insured.

12.     All documents, files, e-mails, or electronically stored information of any kind reflecting or relevant to the Insured's federal and state income tax filings (or failure to file) from 2005 to the present.

13.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting any interest of the Insured in any real property or real estate investment.

14.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting the existence of any false or incorrect statements in either the February or May Applications.

15.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting the existence, extent of the Insured's estate.

16.     All documents, files, e-mails, or electronically stored information of any kind reflecting any aspect of the net worth or annual income of Jacob Hollander or any documents which indicate the lack of net worth or annual income in the amount claimed in the February or May Applications.

## AFFIDAVIT OF SERVICE

# UNITED STATES DISTRICT COURT
## Southern District of New York



Index Number: 11-CV-01873 (WFK)(LB)                                    Date Filed: _____

Plaintiff:
**SHIRLEY WRUBEL, AS TRUSTEE OF THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE TRUST**

vs.

Defendant:
**JOHN HANCOCK LIFE INSURANCE COMPANY**

For:
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178

Received by Lex-Serv, LLC   (DCA # 1413475) to be served on Mr. Mordechai Rubin, 12 Joshua Court, Monsey,
**NY 10952.**

I, Jeffrey Rubell, being duly sworn, depose and say that on the 13th day of February, 2012 at 3:19 pm, I:

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Amended Subpoena In A Civil Case and
a witness fee check in the amount of $70** with the date and hour of service endorsed thereon by me, to: **Mr.
Mordechai Rubin** at the address of: **12 Joshua Court, Monsey, NY 10952,** and informed said person of the
contents therein, in compliance with state statutes.

**Military Status:** Deponent asked person spoken to whether the recipient was presently in military service of the
United States Government or of the State of New York and was informed that recipient was not, nor was anyone a
dependent of someone in the military service of the United States Government or of the State of New York.
Recipient wore ordinary civilian clothes and no military uniform.

**Description** of Person Served: Age: 43,  Sex: M,  Race/Skin Color: White,  Height: 5'9",  Weight: 165,  Hair: Dark
Blonde,  Glasses: N

I certify that I am not a party herein, I am a resident of the State of New York and I am over the age of 18.

Subscribed and Sworn to before me on the ⁴ᵗʰ        day
of _February_, _2017_ by the affiant who is
personally known to me.

NOTARY PUBLIC

**Jeffrey Rubell**
1335175

**Lex-Serv, LLC   (DCA # 1413475)
211 East 43rd Street
Suite 1804
New York, NY 10017
(212) 661-1180**
Our Job Serial Number: LXS-2012000273

**SALVATORE INCHERCHERA**
**Notary Public, State of New York**
**No. 01IN6248434**
**Qualified in Richmond County**
**Commission Expires Sept. 19, 2015**

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.4t

# EXHIBIT E

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK  10178**

(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE: (212) 808-7584
EMAIL: sflanagan@kelleydrye.com

February 22, 2012

**VIA FEDERAL EXPRESS**

Mr. Mordechai Rubin
12 Joshua Court
Monsey, New York 10952

> Re:  *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life*
> *Insurance Trust  v. John Hancock Life Ins. Co.,*
> <u>Civil Action No. 11-cv-01873 (WFK) (LB) E.D.N.Y.</u>

Dear Mr. Rubin:

We represent the defendant, John Hancock (U.S.A.) ("John Hancock") in the above-referenced action.  This letter is to confirm that, pursuant to a subpoena that we served on you, dated January 13, 2012 (the "Subpoena"), your deposition will be held on February 28 at 10 am at our offices located at 101 Park Avenue.

Additionally, you are still required to produce any responsive documents.  If you are represented by counsel in this matter, please either have your attorney contact me immediately or provide me with your attorney's name and contact information and I will contact him.  If, however, you are not represented by counsel please contact me to discuss your production of documents.

Very truly yours,

Sean R. Flanagan

cc:   David Benhaim, Esq. (via Electronic Mail)
      Attorneys for Plaintiff

NY01/FLANS/1528174.1

# EXHIBIT F

Issued by the
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIRLEY WRUBEL, AS TRUSTEE OF THE SARA HOLLANDER IRREVOCABLE LIFE INSURANCE TRUST,<br><br>     **Plaintiff,**<br>  **v.**<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>     **Defendant,** | **SUBPOENA IN A CIVIL CASE**<br><br>Civil Action No. 11-cv-01873 (WFK) (LB)<br><br>Action pending in the United States District Court, Eastern District of New York |

**TO:** JPMorgan Chase Bank, N.A.
   c/o CT Corporation Systems
   111 8th Avenue
   New York, New York 10011

☐  YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| Place of deposition: | Date and time |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule A annexed hereto.**

| Place | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York  10178** | **December 29, 2011**<br>**10:00 a.m.** |

| YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. | |
|---|---|
| Premises | Date and time |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant)<br><br>*[signature]*     **Attorneys for Plaintiff** | Date: November 29, 2011 |
|---|---|
| Issuing officer's name, address and phone number:  James V. O'Gara<br>                 Kelley Drye & Warren LLP<br>                 101 Park Avenue<br>                 New York, New York  10178<br>                 (212) 808-7800 | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

NY01/FLANS/1515815.1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the *Proof of Service* is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of

clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

The words and phrases in this document request are defined as follows:

1.      "Account" means any bank account, checking account, savings account, money market account, Individual Retirement Account, educational savings account, escrow account, health savings account, flexible spending account, trust account, custodial account, brokerage account or any other similar type of account, regardless of whether such account is individually or jointly held or controlled.

2.      "055 Account" means account number 787129055 maintained for the Sara Hollander Irrevocable Life Insurance Trust.

3.      "And" as well as "or" shall be construed disjunctively as well as conjunctively, as necessary, in order to bring within the scope of the paragraphs and subparagraphs contained under the heading below entitled "REQUEST FOR DOCUMENTS TO BE PRODUCED" all documents which might otherwise be construed to be outside their scope.

4.      "Concern" and "Concerning" mean referring to, relating to, regarding, constituting, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, analyzing, evidencing, discussing or evaluating, directly or indirectly.

5.      "Documents" means all written, printed, typed, electronically stored, photographed or recorded matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, including, but not limited to, originals (or copies where originals are unavailable) of all writings, letters, minutes, correspondence, drafts, telegrams, telexes, facsimiles, e-mails, voicemails, bulletins, instructions, notes, sound or video recordings of any type, memoranda, inter-office communications, studies,

- 1 -

analyses, reports, catalogues, results of investigations, contracts, licenses, agreements, work papers, statistical records, ledgers, books of account, vouchers, invoices, charge slips, time sheets or logs, computer diskettes, CD-ROMs, computer tapes or data, stenographers' notebooks, diaries, desk calendars, or papers similar to any of the foregoing, however denominated. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request.

6.      The phrases "documents which relate to," "documents relating to" and "entries relating to" mean documents or entries containing, constituting, showing or relating to or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by these Requests.

7.      The term "funds" means money or legal tender of any sort recognized by any country.

8.      The terms "JPMorgan Chase," "you," and "your" refer to JPMorgan Chase Bank N.A., along with any predecessor or successor corporation, and any of JPMorgan Chase's members, associates, directors, officers, employees, agents, consultants, representatives, attorneys, accountants, or other staff.

9.      The term "LLC" refers to the Sara Hollander Family LLC as well as any of its employees, agents, consultants, attorneys, accountants, or other representatives.

10.     The term "person" refers to a natural person, a group of natural persons acting as individuals, a group of individuals acting in a collegial capacity (*e.g.*, as a committee, board of directors, etc.), a corporation, a partnership, a limited partnership, a limited liability

partnership, a joint venture, a limited liability corporation, a government or governmental agency and/or any other incorporated or incorporated business, government or entity.

11.    "Sara Hollander" refers to Sara Hollander, social security number 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 as well as any of her employees, agents, consultants, attorneys, accountants, or other representatives.

12.    "Shirley Wrubel" refers to Shirley Wrubel, as well as any of her employees, agents, consultants, attorneys, accountants, or other representatives.

13.    "Trust" refers to the Sara Hollander Irrevocable Life Insurance Trust, tax ID number, 26-6223017, as well as any of its employees, agents, consultants, attorneys, accountants, or other representatives.

14.    References to the singular form of any word shall include the plural and references to the plural form of any word shall include the singular.

## GENERAL INSTRUCTIONS

A.    You are requested to produce all documents designated below which are in your possession, custody or control, or in the possession, custody or control of your members, associates, directors, officers, employees, agents, consultants, accountants, or other representatives of JPMorgan Chase under your control.

B.    If you contend that it would be unreasonable or unduly burdensome to obtain and provide all of the documents or things called for in response to any items in this Request, then, in response to the appropriate item, you should produce all documents and things which are available to you without undertaking what you contend to be an unreasonable burden.

- 3 -

## REQUEST FOR DOCUMENTS TO BE PRODUCED

1.      All documents concerning the application of the 055 Account.

2.      All documents concerning an application for any account currently or previously maintained by, for, or on behalf of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

3.      All documents concerning any wire or other electronic funds transfer from or to any account currently or previously maintained by, for, or on behalf of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

4.      All documents concerning any wire or other electronic funds transfer from or to the 055 Account.

5.      All documents concerning any purchase, sale, or transfer of securities by the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

6.      All credit reports or credit references concerning the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

7.      All documents constituting/relating to any statement of account or account statement issued to the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

8.      All documents constituting/relating to any statement of account or account statement issued to the 055 Account.

9.      All documents relating to any deposit or withdrawal, in any form, into or out of, respectively, any account currently or previously maintained by, for, or on behalf of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

10.     All documents relating to any deposit or withdrawal, in any form, into or out of, the 055 Account.

NY01/FLANS/1515815.1

11.     Copies of any checks or drafts drawn on accounts currently or previously maintained by, or, or on behalf of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

12.     Copies of any checks or drafts drawn on the 055 Account.

13.     All documents relating to any Trust maintained for the benefit of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

14.     All documents relating to any Trust controlled by the LLC, Sara Hollander and/or Shirley Wrubel as trustees or co-trustees.

15.     All documents relating to any certificate of deposit purchased by or established for the benefit of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

16.     All documents relating to any insurance, annuity or any other product purchased by or established for the benefit of the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

17.     All documents exchanged by and between JPMorgan Chase Bank and the Trust, the LLC, Sara Hollander and/or Shirley Wrubel.

NY01/FLANS/1515815.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Service of Subpoena with accompanying subpoena was sent via electronic mail and federal express this 29th day of November 2011, to the following counsel at the following address:

David BenHaim, Esq.
Lispsius-BenHaim Law, LLP
80-02 Kew Gardens Road
Kew Gardens, NY 11415

*Attorneys for Plaintiff Shirley Wrubel, as*
*Trustee of the Sara Hollander Irrevocable Life*
*Insurance Trust*

I certify that the foregoing statements made by me are true.  If any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: November 29, 2011

Sean R. Flanagan

# EXHIBIT G

Issued by the
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER IRREVOCABLE
LIFE INSURANCE TRUST,

                Plaintiff,                  **SUBPOENA IN A CIVIL CASE**

    V.

JOHN HANCOCK LIFE INSURANCE        Civil Action No. 11-cv-01873 (WFK) (LB)
COMPANY,

                Defendant,       * Case Pending in the United States District Court,
                                   Eastern District of New York

TO:   B & M Resort LLC
       543 Bedford Avenue
       Brooklyn, NY 11211

☐   YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|
| | |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The deposition shall be recorded by stenographic and sound-and-visual means and conducted before a person authorized to administer oaths in accordance with Rule 28(a) of the Federal Rules of Civil Procedure, and will continue day to day until completed, on the matters set forth on Schedule B, annexed hereto, in accordance with Fed. R. Civ. P. 30(b)(6).

| Place of deposition: | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York 10178** | **February 14, 2012**<br>12:30 p.m. |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule A annexed hereto.

| Place | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York 10178** | February 9, 2012<br>5:00 p.m. |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and time |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant)<br>**Attorneys for Defendant** | Date: January 24, 2012 |
|---|---|
| Issuing officer's name, address and phone number:   Sean R. Flanagan<br>                                   Kelley Drye & Warren LLP<br>                                   101 Park Avenue<br>                                   New York, New York 10178<br>                                   (212) 808-7800 | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C, D & E on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

NY01/FLANS/1523480.2

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

**RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, SUBDIVISIONS (c), (d) AND (e), as amended on December 1, 2006:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or

modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limits of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.** Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend and produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

## GENERAL INSTRUCTIONS

For the purposes of these Requests, the following instructions shall apply:

1.     The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules 26.2, 26.3, 26.4, and all other applicable rules are incorporated by reference.

2.     In answering these Requests, you are required not only to furnish such information as you know of your own personal knowledge, but also to furnish information that is in the possession of your attorneys, investigators or anyone acting in your behalf or their behalf, except to the extent that such information is privileged.

3.     If your answer is qualified in any particular manner, set forth the details of such qualification.

4.     In the event you claim that any information called for in these Requests is immune from discovery on the ground of privilege, the information that is set forth in Local Rule 26.2 shall be provided in writing.

5.     A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein.  Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things, (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

6.     Unless otherwise stated, these Requests seek the production of documents from the period January 1, 2004 to the present.

7. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this request is a continuing one and requires further and supplemental production by you as and whenever you make or locate additional documents or things between the time of initial production and the time of trial in this action.

## DEFINITIONS

8. For the purposes of these Requests, the definitions and rules of construction set forth in Rule 26.3 and 26.4 of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules") shall apply.

9. "You" means B&M Resort LLC, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

10. "073 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit B, and any amendments, schedules, exhibits, addenda and modifications thereto.

11. "075 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit D, and any amendments, schedules, exhibits, addenda and modifications thereto.

12. "Berkowitz" means Chaim Berkowtiz, CPA, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

13. "Empire" means Empire Insurance Brokerage, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors,

successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

14.    "Erno Wrubel" means Erno Wrubel and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

15.    "February Application" means the Application submitted by Sara Hollander and plaintiff, Shirley Wrubel on or about February 12, 2008 and attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

16.    "Freda Weiss" means Freda Weiss and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

17.    "Goldberger" means Joel Goldberger and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

18.    "H. Jacobowitz" means Herman Jacobowitz, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

19.    "Halperin" means Mindy Halperin and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

20.    "Hanna Ostriker" means Hanna Ostriker and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

21.    "Insured" means Sara Hollander and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including her Estate.

22.    "Jacob Hollander" means Jacob Hollander and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including his Estate.

23. "John Hancock" means defendant John Hancock Life Insurance Company (USA), and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

24. "LLC" means the Sara Hollander Family, LLC and any and all of its current and former mangers, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

25. "Lola Felderbaum" means Lola Felderbaum and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

26. "M. Jacobowitz" means Mindy Jacobowitz, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

27. "May Application" means the Application attached as Exhibit C to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

28. "Mordechai Rubin" means Mordechai Rubin and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf and all documents, files, e-mails, or electronically stored information of any kind in Your custody and control.

29. "Sam Feder" means Sam Feder, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

30. "Trust" means the Sara Hollander Irrevocable Life Insurance Trust, and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents,

representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

31.    "Wrubel" means plaintiff Shirley Wrubel, individually and as Trustee for the Sara Hollander Irrevocable Life Insurance Trust, and in any other capacity, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

## DOCUMENTS TO BE PRODUCED

1.    All documents, files, e-mails, or electronically stored information of any kind concerning the facts and circumstances surrounding the making and negotiation of the check(s) annexed as Exhibit A.

2.    All files, documents, e-mails, or electronically stored information of any kind maintained by you in any way relating to or concerning the Trust, the LLC, the 073 Policy, the 075 Policy, Ms. Wrubel or the Insured.

3.    All documents, files, e-mails, or electronically stored information of any kind reflecting or concerning any communications, including but not limited to e-mails, letters and memoranda between or among (1) You, (2) the Insured and/or Jacob Hollander, (3) Wrubel, and/or Erno Wrubel and their children, (4) Goldberger, (5) the Trust (including anyone acting on the Trust's behalf), (6) the LLC, (7) Hanna Ostriker, (8) Freda Weiss, (9) Lola Felderbaum, (10) Halperin, (11) M. Jacobowitz, (12) Sam Feder, (12) Empire, (14) John Hancock, (15) H. Jacobowitz, and (16) any accountant or other third party, concerning the following topics:

    a.    the 073 Policy;

    b.    the 075 Policy;

    c.    the purchase, underwriting or placement of either the 075 or 073 Policies;

    d.     any version of any application for either Policy;

    e.     payment of premium under the Policy;

    f.     effort to purchase any interest in the Policy, convey or assign any interest in the Trust or any share in the LLC;

    g.     any loan made to the Trust; and

    h.     claims made for death benefits under either Policy.

4.     To the extent not already encompassed by the proceeding requests, all documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempt by any person to purchase life insurance from any source on the life of the Insured.

5.     All documents, files, e-mails, or electronically stored information of any kind reflecting any business or relationship with You and the Trust, the LLC, Wrubel, the Insured Empire, Goldberger or Mordechai Rubin.

6.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any actions taken in connection with making a claim under the 073 Policy or 075 Policy.

7.     Any documents, files, e-mails, or electronically stored information of any kind reflecting or referring to any payments of premium, or financing premiums under the Policy, loan agreements used for payment of premium or source of funds used to pay premiums under the 073 and 075 Policies.

8.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempts to sell the Policy or reflecting any other attempts by a third party to purchase the Policy, the Trust or the shares in the LLC, or claim some portion of the proceeds under the Policy.

9.     All documents, files, e-mails, or electronically stored information of any kind reflecting communication with accountants, brokers or financial advisors of the Insured.

## Schedule B

### TOPICS FOR EXAMINATION

1.   Any life insurance policy on the life of Sara Hollander or interest in such Policy;.

2.   The circumstances surrounding the making and negotiation of the check(s) attached as Exhibit A to this subpoena, including the reasons for the payment, and what if anything was given for the payment;

3.   Your relationship and any communications with the following: Sara Hollander Irrevocable Life Insurance Trust; Joel Goldberger; Herman Jacobowitz; Mordechai Rubin; Hanna Ostriker; Freda Weiss; Lola Felderbaum; Chaim Berkowitz; Mindy Halperin; Mindy Jacobowitz; Sirley Wrubel; or any other person regarding (i) any payments of money for or in connection with any insurance policy on the life of Sara Hollander, or (ii) any payment to the Trust.

## EXHIBIT A

09-Dec-11                                              07Dec11-1488
THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION
GROUP ID G07Dec11-1488
Sequence number 009570426468  Posting date 22-JUL-08



JPMC - JH Sub 0093

NY01/FLANS/1523480.2                     11

United States District Court
Eastern District of New York

Shirley Wrubel, as Trustee of
The Sara Hollander Irrevocable
Life Insurance Trust,

                                      Plaintiff(s)

                    -against-

John Hancock Life Insurance
Company,

                                   Defendant(s)

**AFFIDAVIT OF SERVICE**

Civil Action No. 11-cv-01873 (WFK)(LB)

State of New York )
                 ss:
County of Albany )

Mary M. Bonville, being duly sworn, deposes and says:

Deponent is over the age of eighteen and is a resident of New York State and is not a party to this action. That on January 25, 2012 at approximately 3:40 PM deponent served the following specific papers pursuant to Section 303 of the Limited Liability Company Law: Subpoena in a Civil Case, that the party served was B & M Resort LLC, a domestic limited liability company, by personally serving two copies of the aforesaid papers at the office of the NYS Secretary of State located at 99 Washington Avenue, 6th Floor, in the City of Albany, New York by delivering to and leaving the papers with Chad Matice, a white male with black hair, being approximately 21-35 years of age; height of 5'9" - 6'0", weight of 180-200 lbs., being an authorized person in the Corporation Division of the Department of State and empowered to receive such service. That at the time of making such service, deponent paid the fee prescribed by Law in the amount of $40.00.

                                  _Mary M. Bonville_
                                       Mary M. Bonville

Sworn to before me this 26ᵗʰ day of January, 2012

_Ruth A. Dennehey_
Ruth A. Dennehey
Notary Public — State of New York
Qualified in Albany County
Registration No. 01DE4729775
Commission Expires: 11-30-2014

# EXHIBIT H

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK  10178**

————

(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

————

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE: (212) 808-7584
EMAIL: sflanagan@kelleydrye.com

February 10, 2012

**VIA FEDERAL EXPRESS**

B&M Resort LLC
543 Bedford Avenue
Brooklyn, NY 11211

      Re:    *Shirley Wrubel, as trustee of The Sara Hollander Irrevocable Life Insurance Trust v. John Hancock Life Insurance Company* Civil Action No. 11-cv-01873 (WFK)(LB) Pending in the United States District Court, <u>Eastern District of New York</u>

Dear Sir:

      We represent the defendant, John Hancock Life Insurance Company in the above-referenced action.  Please be advised that pursuant to the Plaintiff's request, your deposition, currently scheduled for Tuesday, February 14, 2012 at 12:30 pm, has been adjourned to Friday, March 2, 2012 at 10:00 am at our offices located at 101 Park Avenue, New York, New York.

      If you have any questions or concerns about the foregoing, please do not hesitate to contact me.

Very truly yours,

Sean R. Flanagan

cc:    David Benhaim, Esq.  (via Electronic Mail)
       Attorneys for Plaintiff

# EXHIBIT I

**Issued by the**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER IRREVOCABLE
LIFE INSURANCE TRUST,

                   Plaintiff,

     **v.**

JOHN HANCOCK LIFE INSURANCE
COMPANY,

               Defendant,

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 11-cv-01873 (WFK) (LB)

Action pending in the United States District Court,
Eastern District of New York

TO:   Mr. Herman Jacobowitz
       c/o David Benhaim, Esq.
       Lipsius-Benhaim Law LLP
       80-02 Kew Gardens Road
       Kew Gardens, NY 11415

☐  YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|
| | |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The deposition shall be recorded by stenographic and sound-and-visual means and conducted before a person authorized to administer oaths in accordance with Rule 28(a) of the Federal Rules of Civil Procedure, and will continue day to day until completed.

| Place of deposition: | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York  10178** | Date and time<br>**January 26, 2012**<br>**10:00 a.m.** |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Schedule A annexed hereto.**

| Place | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York  10178** | Date and time<br>**January 23, 2012**<br>**5:00 p.m.** |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and time |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant)<br><br>                         **Attorneys for Defendant** | Date: January 6, 2012 |
|---|---|

Issuing officer's name, address and phone number:     **Sean R. Flanagan**
                                                **Kelley Drye & Warren LLP**
                                              **101 Park Avenue**
                                              **New York, New York  10178**
                                            **(212) 808-7800**

(See Rule 45, Federal Rules of Civil Procedure, Parts C, D & E on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
              DATE                          SIGNATURE OF SERVER

                                            ADDRESS OF SERVER

RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, SUBDIVISIONS (c), (d) AND (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or

modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limits of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena issued from that person may be deemed a contempt of court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend and produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

### GENERAL INSTRUCTIONS

For the purposes of these Requests, the following instructions shall apply:

1.      The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules 26.2, 26.3, 26.7, and all other applicable rules are incorporated by reference.

2.      In answering these Requests, you are required not only to furnish such information as you know of your own personal knowledge, but also to furnish information that is in the possession of your attorneys, investigators or anyone acting in your behalf or their behalf, except to the extent that such information is privileged.

3.      If your answer is qualified in any particular manner, set forth the details of such qualification.

4.      In the event you claim that any information called for in these Requests is immune from discovery on the ground of privilege, the information that is set forth in Local Rule 26.2 shall be provided in writing.

5.      A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein.  Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things, (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

6.      Unless otherwise stated, these Requests seek the production of documents from the period January 1, 2004 to the present.

3

7.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this request is a continuing one and requires further and supplemental production by you as and whenever you make or locate additional documents or things between the time of initial production and the time of trial in this action.

## DEFINITIONS

1.     For the purposes of these Requests, the definitions and rules of construction set forth in Rule 26.3 and 26.7 of the Civil Rules of the United States District Court for the Eastern District of New York (the "Local Rules") shall apply.

2.     "073 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit B, and any amendments, schedules, exhibits, addenda and modifications thereto.

3.     "075 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit D, and any amendments, schedules, exhibits, addenda and modifications thereto.

4.     "Berkowitz" means Chaim Berkowtiz, CPA, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

5.     "Empire" means Empire Insurance Brokerage, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

6.     "February Application" means the Application submitted by Sara Hollander and plaintiff, Shirley Wrubel on or about February 12, 2008 and attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

4

7.    "Goldberger" means Joel Goldberger and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

8.    "H. Jacobowitz" or "You" means Herman Jacobowitz, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

9.    "Halperin" means Mindy Halperin and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

10.    "Insured" means Sara Hollander and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including her Estate.

11.    "John Hancock" means defendant John Hancock Life Insurance Company (USA), and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

12.    "LLC" means the Sara Hollander Family, LLC and any and all of its current and former mangers, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

13.    "M. Jacobowitz" means Mindy Jacobowitz, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

14.    "May Application" means the Application attached as Exhibit C to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

5

15.    "Trust" means the Sara Hollander Irrevocable Life Insurance Trust, and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

16.    "Wrubel" means plaintiff Shirley Wrubel, individually and as Trustee for the Sara Hollander Irrevocable Life Insurance Trust, and in any other capacity, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

## DOCUMENTS TO BE PRODUCED

17.    All files maintained by you in any way relating to or concerning the Trust, the LLC, the 073 Policy, the 075 Policy, Ms. Wrubel or the Insured.

18.    All documents reflecting or concerning any communications, including but not limited to e-mails, letters and memoranda between or among (1) You, (2) the Insured or her husband, (3) Wrubel, and/or her husband and her children, (4) Goldberger, (5) the Trust (including anyone acting on the Trust's behalf), (6) the LLC, (7) Halperin, (8) M. Jacobowitz, (9) Sam Feder, (10) Empire, (11) John Hancock, and (12) any accountant or other third party, concerning the following topics:

      a.    the 073 Policy;

      b.    the 075 Policy;

      c.    the purchase, underwriting or placement of either the 075 or 073 Policies;

      d.    any version of any application for either Policy;

      e.    formation, purpose or actions taken on behalf of the Trust or the LLC;

6

   f.  effort to sell or assign the Policy, convey or assign any interest in the Trust or any share in the LLC;

   g.  net worth or income of the Insured;

   h.  Wrubel's role as Trustee; and

   i.  claims made for death benefits under either Policy.

19. To the extent not already encompassed by the proceeding requests, all documents referring or relating to any attempt by any person to purchase life insurance from any source on the life of the Insured.

20. All documents of any kind reflecting on business, financial, and/or investment interest of the Insured and/or her family and/or statements reflecting any ownership interest in bonds, securities and/or real estate.

21. All documents of any kind reflecting any aspect of the net worth or income of the Insured or her family or any documents which indicate the lack of net worth or annual income in the amounts claimed in the February and May Applications.

22. Any documents reflecting the Insured's interest in any I.R.A. or 401K account or right to receive any pension benefits.

23. All documents reflecting any business or other relationship with You and the Trust, the LLC, Wrubel, the Insured, Empire or Goldberger.

24. All documents referring or relating to any actions taken in connection with making a claim under the 073 or 075 Policy.

25. All documents reflecting or referring to any payments of premium, or financing premiums under the Policy, loan agreements used for payment of premium or source of funds used to pay premiums under the 073 and 075 Policies.

7

26.     All documents referring or relating to any attempts to sell the Policy or reflecting any other attempts by a third party to purchase the Policy, the Trust or the shares in the LLC, or claim some portion of the proceeds under the Policy.

27.     All documents reflecting communication with accountants, brokers or financial advisors of the Insured.

28.     All documents reflecting or relevant to the Insured's federal and state income tax filings (or failure to file) from 2005 to the present.

29.     Any and all documents reflecting any interest of the Insured in any real property or real estate investment.

30.     Any and all documents reflecting the existence of any false or incorrect statements in either the February or May Applications.

31.     Any and all documents reflecting the existence, extent of the Insured's estate.

## TOPICS FOR EXAMINATION

1.      The creation of the Trust.

2.      Wrubel's role as Trustee in the Trust.

3.      Your role with the Trust.

4.      Any communications between You and Wrubel, Hollander, Berkowitz, Goldberger, Empire, Halperin, M. Jacobowitz and/or the Trust concerning the Insured's net worth and/or the creation of the Trust or the LLC on the Policies.

5.      All matters described in the Document requests.

6.      All matters relating to the Policies, the applications, the purchase of the Policies, claims under the Policy, payment of premium under the Policies and attempts to sell the policies, and any person expressing an interest in purchasing the Policies.

7.      The finances, net worth and income of the Insured and all matters pertaining to her financial condition.

8.      The assets and liabilities of the Insured's Estate.

9

# EXHIBIT J

## Flanagan Sean

**From:** David Benhaim [dbenhaim@lipsiuslaw.com]
**Sent:** Wednesday, January 04, 2012 4:38 PM
**To:** Flanagan Sean
**Subject:** Wrubel v JH; 4421.0002

Sean,

I handed over 2 copies of the IRS 4506 forms signed by Shirley Wrubel to Vinny from Delux for delivery to you.

I also spoke to Shirley about holding the deposition at 9:30 am on 1/11 and she advised that she cannot make it until 10:30. She is willing to stay later, if necessary.

We will be accepting service of a subpoena of deposition notices for Jacobowitz and Goldberger and will shortly provide you with available dates for those depositions.

We earlier stated that the Trust possessed additional documentation concerning the nature of the business relationship between Jacobowitz and Hollander. We have now learned that those documents are solely in the possession and control of Jacobowitz and not Wrubel. As we anticipate these documents will be responsive to the subpoena on Jacobowitz, we have begun making arrangements for the production of those records from Jacobowitz.

Additionally, earlier today you stated that JH produced a CD with audio. I advised that I did not recall seeing one and you kindly offered a replacement.  Since our conversation I found your cover letter that accompanied the CD but not the CD itself. We would like to send someone tomorrow to pick up a replacement cd. Will 12 noon work?

Regards,
David


**David BenHaim, Esq.**
**Lipsius - BenHaim Law LLP**

80-02 Kew Gardens Rd., Suite 1030  | Kew Gardens, NY 11415

Tel: 212.981.8446                    | Fax: 212.695.6602

CONFIDENTIALITY NOTICE: The information contained in this e-mail is confidential, may be legally privileged, and is intended only for the use of the party named above. If the reader of this e-mail is not the intended recipient, you are advised that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by telephone at 212.981.8440 and destroy this e-mail.

1

# EXHIBIT K

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE: (212) 808-7584
EMAIL: sflanagan@kelleydrye.com

Feburary 10, 2012

**VIA FEDERAL EXPRESS**

David Benhaim, Esq.
LIPSIUS-BENHAIM LAW LLP
80-02 Kew Gardens Road
Kew Gardens, New York 11415

> Re:   *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life*
> *Insurance Trust  v. John Hancock Life Ins. Co.,*
> <u>Civil Action No. 11-cv-01873 (WFK) (LB) E.D.N.Y.</u>

Dear David:

As discussed in my voice message to you, please be advised that due to the Court order staying discovery in this action until February 26, 2012, Mr. Jacobowitz's deposition, currently scheduled for February 22, 2012 at 10 am has been adjourned to March 1, 2012. It is our understanding that you are representing Mr. Jacobowitz in this matter and therefore, we are sending this notice to you.  If this understanding is incorrect, please let me know immediately so that we can contact Mr. Jacobowitz.

Additionally, we request that Mr. Jacobowitz produce any documents in his possession that are responsive to the document requests in the subpoena on February 27, 2012.

If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Sean R. Flanagan

# EXHIBIT L

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

——————

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

——————

BRUSSELS, BELGIUM

——————

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

NEIL MERKL

DIRECT LINE: (212) 808-7811

EMAIL: nmerkl@kelleydrye.com

March 2, 2012



**VIA ECF**

Magistrate Judge Lois Bloom
United States District Court for the
   Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life
      Insurance Trust v. John Hancock Life Insurance Company,
      Docket No. 11-cv-01873 (WFK)(LB)*

Dear Magistrate Judge Bloom:

        This firm represents the Defendant John Hancock Life Insurance Company
(U.S.A.) ("John Hancock"). We are writing Pursuant to Local Rule 37.3(c) to request an order to
compel the production of documents from and deposition appearance by non-parties Mordechai
Rubin, Herman Jacobowitz and B&M Resort LLC pursuant to FRCP 37(a) and for the costs John
Hancock incurred related to Mr. Rubin's and B&M Resort LLC's failure to appear for their
respective depositions under FRCP 45(e).

<u>Background</u>

        This action was brought by Plaintiff, Shirley Wrubel, as Trustee (the "Plaintiff")
of her mother Sara Hollander's Irrevocable Life Insurance Trust (the "Trust"), to recover $10
million in proceeds from two life insurance policies issued by John Hancock on Ms. Hollander's
life (the "Policies"). John Hancock issued the policies in reliance on, among other things,
representations that the Insured's net worth was $9 million and that she had investment income
of $200,000. The insured also represented that she would pay the policy premiums with money
from her income and savings, and that the insurance was purchased as part of her estate plan to
pay her estate taxes. John Hancock's principal defense is that Plaintiffs' misrepresentations void
the Policies.

        Plaintiff is the sole trustee and ostensible owner of both Policies. She was
deposed on January 11. She testified her mother left no estate; Plaintiff knows of no will. Her
mother was never employed, did not own real property at the time of her death, did not own any
stocks, bonds or a 401k plan, and did not have an annual investment income of $200,000 or $9
million. At the time of her death the Insured had less than $25,000 in bank accounts and mutual
funds. She lived in a rental apartment in Brooklyn, likely on social security. No documents
substantiating her wealth or income have been produced by the Plaintiff – and no documents

**KELLEY DRYE & WARREN LLP**

The Magistrate Judge Lois Bloom
March 2, 2012
Page Two

concerning the Trust account opened by the Plaintiff used to pay premiums have been produced by Plaintiff.

(i)     **Order Directing Mordechai Rubin to Produce Documents and Appear**

The Plaintiff disclaimed knowledge of the source of the funds used to pay the premiums at her deposition – an amount in excess of $500,000. She testified her son-in-law Mordechai Rubin would be knowledgeable about the Trust's bank account and how the premiums were paid. She relied on him to handle insurance matters. John Hancock, therefore, subpoenaed Mr. Rubin on January 13, 2012 both for his testimony and to produce documents concerning the facts surrounding the Policies purchased, existence of an estate, the trust account and Ms. Hollander's net worth. On January 27, 2012, the deposition was adjourned to February 28, 2012, because of the stay requested by Plaintiff's counsel. Mr. Rubin was personally served with a second subpoena requiring his appearance on Feb. 28, 2012. He did not appear notwithstanding that on February 22, 2012, we also wrote and reminded him of the date. He has not responded to subsequent attempts to contact him. We are advised Plaintiff's counsel also attempted to contact him by telephone, but are unaware of the substance of the conversation. We therefore request an order compelling Mr. Rubin to appear and produce the documents requested by the subpoena and awarding costs of $400 for the expenses incurred by John Hancock for the services of a videographer and court reporter. A copy of the subpoena and proof of service is attached hereto as Exhibit A.

(ii)    **Order Directing B&M Resort LLC to Produce Documents and Appear**

On November 29, 2012, John Hancock subpoenaed the Trust's bank account records from JPMorgan Chase Bank, N.A. ("JPMC"). JPMC produced copies of cancelled checks deposited into the Trust account from various individuals and corporations, among them Mr. and Mrs. Brach, B&M Resort LLC, Azras Yisorel, Inc. ("Azras Yisorel") and Protector Security Associates, Inc. ("PSA"). None of these people have any apparent connection to the Plaintiff or the Insured, but these funds were the sole source of the premium payments. These cancelled checks, moreover, suggest that the Trust fronted for a syndicate of investors and these policies were investor or "stranger owned life insurance policies" ("STOLI" policies). Had John Hancock known this, this would have been an additional reason it would not have issued the Policies. Such policies are void as a matter of law in most states.

Accordingly, John Hancock has attempted to identify these third party investors to take their depositions. On January 24, 2012, John Hancock issued a subpoena to non-party B&M Resort LLC, seeking the production of documents and a deposition on February 14, 2012. A copy of the subpoena and proof of service is attached hereto as Exhibit B. On February 10, 2012, my colleague, Sean Flanagan, received a call from B&M Resort LLC concerning the subpoena that was issued. During this call, Mr. Flanagan informed B&M Resort LLC that there was a stay in this action, pursuant to Plaintiff's counsel's request. Therefore, the February 14, 2012, deposition would need to be adjourned. The parties agreed that B&M Resort LLC's deposition would be scheduled for today, March 2, 2012, at 10 am. During this conversation, B&M Resort LLC admitted that the check attached to the subpoena was a valid check and that it was signed by the owner of the company. He did not recall why the check was issued but believed that it might have been part of a "syndicate." He agreed to look for documents and

**KELLEY DRYE & WARREN LLP**

The Magistrate Judge Lois Bloom
March 2, 2012
Page Three

produce anything that he had related to the Policies. B&M Resort LLC, has failed to produce any documents. Mr. Flanagan confirmed the parties' February 10, 2012, conversation and re-scheduling of a deposition in a letter to B&M Resort, dated February 10, 2012. A copy of the February 10, 2012 letter to B&M Resort LLC is attached hereto as Exhibit C. Since Mr. Flanagan's discussion with B&M Resort LLC on February 10, 2012, B&M Resort LLC has been unresponsive to any attempt to contact them.

Today, March 2, 2012, B&M Resort LLC failed to appear for the scheduled deposition. We therefore request an order directing B&M Resort LLC to appear and produce documents requested by the subpoena and awarding costs of $200 for the expenses incurred by John Hancock for the services of a court reporter.

**(iii)   <u>Deposition and Document Production of Herman Jacobowitz</u>**

Plaintiff, in her initial disclosures and her deposition, identified Herman Jacobowitz as someone with knowledge of the Insured's business interests and how the policy premiums were paid for. Accordingly, John Hancock subpoenaed Mr. Jacobowitz on January 6, 2012. The original date was adjourned from January 23, 2012, to March 1, 2012, as a consequence of the stay as requested by Plaintiff. No objections were served in response to the subpoena duces tecum, but no documents have been produced. Plaintiff's counsel, who also represents Mr. Jacobowitz, advised that he would not appear at the March 1 deposition, but has not yet provided an alternate date or produced any documents. We have attempted to contact counsel every day this week concerning the scheduling of Mr. Jocobowitz's production of documents and deposition. Counsel, however, has not responded to our requests. While we have no objection to a reasonable adjournment of the deposition date, we ask that Mr. Jacobowitz produce all documents requested by the subpoena within the next 10 days, and that March dates for his deposition be furnished.

**(iv)   <u>Update on Other Non-Party Depositions</u>**

John Hancock had subpoenaed the depositions of non-parties, Joel Goldberger ("Mr. Goldberger"), Empire Insurance Business ("EIB"), Azras Yisorel, and PSA for Monday, February 27, Wednesday February 29 and Friday March 2, 2012, respectively. We have been in contact with Mr. Goldberger's and EIB's counsel and have adjourned their depositions, at his request, to March 9, 2012. We have also been in contact with Azras Yisorel, who is not represented by counsel, and counsel for PSA and have agreed, due to their requests, to adjourn their depositions. Azras Yisorel is now scheduled for March 26, 2012, and counsel for PSA will has agreed to provide us alternative dates for his client's deposition and the production of documents on Monday, March 5, 2012.

Respectfully submitted,

*/s/ Neil Merkl*

Neil Merkl

cc:   Ira S. Lipsius, Esq. (via ECF)
      David BenHaim, Esq. (via ECF)

**KELLEY DRYE & WARREN LLP**

The Magistrate Judge Lois Bloom
March 2, 2012
Page Four


Mr. Mordechai Rubin (via Federal Express w/ encl.)
B&M Resort LLC (via Federal Express w/ encl.)

# EXHIBIT A

Issued by the
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER IRREVOCABLE
LIFE INSURANCE TRUST,

|  |  |
|---|---|
| **Plaintiff,** | **AMENDED SUBPOENA IN A CIVIL CASE** |
| **V.** |  |
| JOHN HANCOCK LIFE INSURANCE COMPANY, | Civil Action No. 11-cv-01873 (WFK) (LB) |
| **Defendant,** | Action pending in the United States District Court, Eastern District of New York |

TO:   Mr. Mordechai Rubin
      12 Joshua Court
      Monsey, NY 10952

☐  YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition shall be recorded by stenographic and sound-and-visual means and conducted before a person authorized to administer oaths in accordance with Rule 28(a) of the Federal Rules of Civil Procedure, and will continue day to day until completed.

| Place of deposition: | Date and time |
|---|---|
| **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** | **February 28, 2012** **10:00 a.m.** |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See Schedule A annexed hereto.

| Place | Date and time |
|---|---|
| **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** | **February 23, 2012** **5:00 p.m.** |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and time |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant) **Attorneys for Defendant** | Date: February 13, 2012 |
|---|---|
| Issuing officer's name, address and phone number:   Sean R. Flanagan **Kelley Drye & Warren LLP** **101 Park Avenue** **New York, New York  10178** **(212) 808-7800** |  |

(See Rule 45, Federal Rules of Civil Procedure, Parts C, D & E on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

### PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

        DATE                                SIGNATURE OF SERVER

                                              ADDRESS OF SERVER

---

**RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, SUBDIVISIONS (c), (d) AND (e), as amended on December 1, 2006:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or

modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limits of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.** Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend and produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

<u>**Schedule A**</u>

**GENERAL INSTRUCTIONS**

For the purposes of these Requests, the following instructions shall apply:

1.      The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules 26.2, 26.3, 26.4, and all other applicable rules are incorporated by reference.

2.      In answering these Requests, you are required not only to furnish such information as you know of your own personal knowledge, but also to furnish information that is in the possession of your attorneys, investigators or anyone acting in your behalf or their behalf, except to the extent that such information is privileged.

3.      If your answer is qualified in any particular manner, set forth the details of such qualification.

4.      In the event you claim that any information called for in these Requests is immune from discovery on the ground of privilege, the information that is set forth in Local Rule 26.2 shall be provided in writing.

5.      A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein.  Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things, (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

6.      Unless otherwise stated, these Requests seek the production of documents from the period January 1, 2004 to the present.

3

7.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this request is a continuing one and requires further and supplemental production by you as and whenever you make or locate additional documents or things between the time of initial production and the time of trial in this action.

## DEFINITIONS

1.    For the purposes of these Requests, the definitions and rules of construction set forth in Rule 26.3 and 26.4 of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules") shall apply.

2.    "You" means Mordechai Rubin and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf and all documents, files, e-mails, or electronically stored information of any kind in Your custody and control.

3.    "073 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit B, and any amendments, schedules, exhibits, addenda and modifications thereto.

4.    "075 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit D, and any amendments, schedules, exhibits, addenda and modifications thereto.

5.    "Berkowitz" means Chaim Berkowtiz, CPA, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

6.    "Empire" means Empire Insurance Brokerage, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors,

4

successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

7.    "Erno Wrubel" means Erno Wrubel and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

8.    "February Application" means the Application submitted by Sara Hollander and plaintiff, Shirley Wrubel on or about February 12, 2008 and attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

9.    "Goldberger" means Joel Goldberger and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

10.    "H. Jacobowitz" means Herman Jacobowitz, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

11.    "Halperin" means Mindy Halperin and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

12.    "Insured" means Sara Hollander and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including her Estate.

13.    "Jacob Hollander" means Jacob Hollander and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including his Estate.

14.    "John Hancock" means defendant John Hancock Life Insurance Company (USA), and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

5

15.    "LLC" means the Sara Hollander Family, LLC and any and all of its current and former mangers, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

16.    "M. Jacobowitz" means Mindy Jacobowitz, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

17.    "May Application" means the Application attached as Exhibit C to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

18.    "Trust" means the Sara Hollander Irrevocable Life Insurance Trust, and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

19.    "Wrubel" means plaintiff Shirley Wrubel, individually and as Trustee for the Sara Hollander Irrevocable Life Insurance Trust, and in any other capacity, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

## DOCUMENTS TO BE PRODUCED

1.    All files, documents, e-mails, or electronically stored information of any kind maintained by you in any way relating to or concerning the Trust, the LLC, the 073 Policy, the 075 Policy, Ms. Wrubel or the Insured.

2.    All documents, files, e-mails, or electronically stored information of any kind reflecting or concerning any communications, including but not limited to e-mails, letters and memoranda between or among (1) You, (2) the Insured or Jacob Hollander, (3) Wrubel,

6

and/or Erno Wrubel and their children, (4) Goldberger, (5) the Trust (including anyone acting on the Trust's behalf), (6) the LLC, (7) Halperin, (8) M. Jacobowitz, (9) Sam Feder, (10) Empire, (11) John Hancock, (12) H. Jacobowitz, and (13) any accountant or other third party, concerning the following topics:

      a.    the 073 Policy;

      b.    the 075 Policy;

      c.    the purchase, underwriting or placement of either the 075 or 073 Policies;

      d.    any version of any application for either Policy;

      e.    formation, purpose or actions taken on behalf of the Trust or the LLC;

      f.    effort to sell or assign the Policy, convey or assign any interest in the Trust or any share in the LLC;

      g.    net worth or income of the Insured;

      h.    Wrubel's role as Trustee; and

      i.    claims made for death benefits under either Policy.

3.    To the extent not already encompassed by the proceeding requests, all documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempt by any person to purchase life insurance from any source on the life of the Insured.

4.    All documents, files, e-mails, or electronically stored information of any kind reflecting on business, financial, and/or investment interest of the Insured and/or her family and/or statements reflecting any ownership interest in bonds, securities, real estate and/or bank accounts.

5.    All documents, files, e-mails, or electronically stored information of any kind reflecting any aspect of the net worth or income of the Insured or her family or any

documents which indicate the lack of net worth or annual income in the amounts claimed in the February and May Applications.

6.      Any documents, files, e-mails, or electronically stored information of any kind reflecting the Insured's interest in any I.R.A. or 401K account or right to receive any pension benefits.

7.      All documents, files, e-mails, or electronically stored information of any kind reflecting any business or other relationship with You and the Trust, the LLC, Wrubel, the Insured, Empire or Goldberger.

8.      All documents, files, e-mails, or electronically stored information of any kind referring or relating to any actions taken in connection with making a claim under the 073 or 075 Policy.

9.      All documents, files, e-mails, or electronically stored information of any kind reflecting or referring to any payments of premium, or financing premiums under the Policy, loan agreements used for payment of premium or source of funds used to pay premiums under the 073 and 075 Policies.

10.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempts to sell the Policy or reflecting any other attempts by a third party to purchase the Policy, the Trust or the shares in the LLC, or claim some portion of the proceeds under the Policy.

11.     All documents, files, e-mails, or electronically stored information of any kind reflecting communication with accountants, brokers or financial advisors of the Insured.

8

12.     All documents, files, e-mails, or electronically stored information of any kind reflecting or relevant to the Insured's federal and state income tax filings (or failure to file) from 2005 to the present.

13.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting any interest of the Insured in any real property or real estate investment.

14.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting the existence of any false or incorrect statements in either the February or May Applications.

15.     Any and all documents, files, e-mails, or electronically stored information of any kind reflecting the existence, extent of the Insured's estate.

16.     All documents, files, e-mails, or electronically stored information of any kind reflecting any aspect of the net worth or annual income of Jacob Hollander or any documents which indicate the lack of net worth or annual income in the amount claimed in the February or May Applications.

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
### Southern District of New York

Index Number: 11-CV-01873 (WFK)(LB)                              Date Filed: _____

Plaintiff:
**SHIRLEY WRUBEL, AS TRUSTEE OF THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE TRUST**

vs.

Defendant:
**JOHN HANCOCK LIFE INSURANCE COMPANY**

For:
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178

Received by Lex-Serv, LLC   (DCA # 1413475) to be served on **Mr. Mordechai Rubin, 12 Joshua Court, Monsey, NY 10952.**

I, Jeffrey Rubell, being duly sworn, depose and say that on the **13th day of February, 2012 at 3:19 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Amended Subpoena In A Civil Case and a witness fee check in the amount of $70** with the date and hour of service endorsed thereon by me, to: **Mr. Mordechai Rubin** at the address of: **12 Joshua Court, Monsey, NY 10952,** and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** Deponent asked person spoken to whether the recipient was presently in military service of the United States Government or of the State of New York and was informed that recipient was not, nor was anyone a dependent of someone in the military service of the United States Government or of the State of New York. Recipient wore ordinary civilian clothes and no military uniform.

**Description** of Person Served: Age: 43, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 165, Hair: Dark Blonde, Glasses: N

I certify that I am not a party herein, I am a resident of the State of New York and I am over the age of 18.

Subscribed and Sworn to before me on the 14th day
of February, 2012 by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

**Jeffrey Rubell**
1335175

**Lex-Serv, LLC   (DCA # 1413475)**
211 East 43rd Street
**Suite 1804**
New York, NY 10017
(212) 661-1180
Our Job Serial Number: LXS-2012000273

**SALVATORE INCHERCHERA**
**Notary Public, State of New York**
**No. 01IN6248434**
**Qualified in Richmond County**
**Commission Expires Sept. 19, 2015**

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.4t

**EXHIBIT B**

Issued by the
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER IRREVOCABLE
LIFE INSURANCE TRUST,

                    **Plaintiff,**              SUBPOENA IN A CIVIL CASE

          **v.**

JOHN HANCOCK LIFE INSURANCE          Civil Action No. 11-cv-01873 (WFK) (LB)
COMPANY,
                                      * Case Pending in the United States District Court,
                    **Defendant,**        Eastern District of New York

TO:    B & M Resort LLC
       543 Bedford Avenue
       Brooklyn, NY 11211

☐ YOU ARE COMMANDED to appear in the United States Court at the place, date, and time specified below to testify in the above case.

| Place of testimony: | Date and time |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The deposition shall be recorded by stenographic and sound-and-visual means and conducted before a person authorized to administer oaths in accordance with Rule 28(a) of the Federal Rules of Civil Procedure, and will continue day to day until completed, on the matters set forth on Schedule B, annexed hereto, in accordance with Fed. R. Civ. P. 30(b)(6).

| Place of deposition: | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York  10178** | **February 14, 2012**<br>**12:30 p.m.** |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule A annexed hereto.

| Place | Date and time |
|---|---|
| **Kelley Drye & Warren LLP**<br>**101 Park Avenue**<br>**New York, New York  10178** | **February 9, 2012**<br>**5:00 p.m.** |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and time |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing officer signature and title (indicate if attorney for plaintiff or defendant)<br>**Attorneys for Defendant** | Date: **January 24, 2012** |
|---|---|

Issuing officer's name, address and phone number:          Sean R. Flanagan
                                                          Kelley Drye & Warren LLP
                                                          101 Park Avenue
                                                          New York, New York  10178
                                                          (212) 808-7800

(See Rule 45, Federal Rules of Civil Procedure, Parts C, D & E on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

NY01/FLANS/1523480.2

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE                                    SIGNATURE OF SERVER

ADDRESS OF SERVER

**RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, SUBDIVISIONS (c), (d) AND (e), as amended on December 1, 2006:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or

modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limits of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.** Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend and produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

### GENERAL INSTRUCTIONS

For the purposes of these Requests, the following instructions shall apply:

1.    The provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rules 26.2, 26.3, 26.4, and all other applicable rules are incorporated by reference.

2.    In answering these Requests, you are required not only to furnish such information as you know of your own personal knowledge, but also to furnish information that is in the possession of your attorneys, investigators or anyone acting in your behalf or their behalf, except to the extent that such information is privileged.

3.    If your answer is qualified in any particular manner, set forth the details of such qualification.

4.    In the event you claim that any information called for in these Requests is immune from discovery on the ground of privilege, the information that is set forth in Local Rule 26.2 shall be provided in writing.

5.    A complete original or copy of each document or thing must be produced, even though only a portion of such document or thing is responsive to one of the numbered requests contained herein. Documents shall not be edited, cut, redacted (except where a claim of privilege is asserted with respect to a portion of a document) or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents. Things, (e.g., computer data tapes) shall not be altered or modified, unless otherwise directed.

6.    Unless otherwise stated, these Requests seek the production of documents from the period January 1, 2004 to the present.

7.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this request is a continuing one and requires further and supplemental production by you as and whenever you make or locate additional documents or things between the time of initial production and the time of trial in this action.

## DEFINITIONS

8.      For the purposes of these Requests, the definitions and rules of construction set forth in Rule 26.3 and 26.4 of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules") shall apply.

9.      "You" means B&M Resort LLC, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

10.     "073 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit B, and any amendments, schedules, exhibits, addenda and modifications thereto.

11.     "075 Policy" means the life insurance policy alleged in paragraph 11 of the Complaint and attached to Defendant's Answer, Affirmative Defenses and Counterclaims as Exhibit D, and any amendments, schedules, exhibits, addenda and modifications thereto.

12.     "Berkowitz" means Chaim Berkowitz, CPA, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

13.     "Empire" means Empire Insurance Brokerage, and any and all of its current and former officers, directors, employees, agents, representatives, predecessors,

successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

14.  "Erno Wrubel" means Erno Wrubel and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

15.  "February Application" means the Application submitted by Sara Hollander and plaintiff, Shirley Wrubel on or about February 12, 2008 and attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

16.  "Freda Weiss" means Freda Weiss and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

17.  "Goldberger" means Joel Goldberger and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

18.  "H. Jacobowitz" means Herman Jacobowitz, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

19.  "Halperin" means Mindy Halperin and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

20.  "Hanna Ostriker" means Hanna Ostriker and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

21.  "Insured" means Sara Hollander and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including her Estate.

22.  "Jacob Hollander" means Jacob Hollander and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf, including his Estate.

23.   "John Hancock" means defendant John Hancock Life Insurance Company (USA), and any and all of its current and former officers, directors, employees, agents, representatives, predecessors, successors, parents, subsidiaries, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

24.   "LLC" means the Sara Hollander Family, LLC and any and all of its current and former mangers, fiduciaries, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

25.   "Lola Felderbaum" means Lola Felderbaum and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

26.   "M. Jacobowitz" means Mindy Jacobowitz, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

27.   "May Application" means the Application attached as Exhibit C to Defendant's Answer, Affirmative Defenses and Counterclaims, dated July 11, 2011.

28.   "Mordechai Rubin" means Mordechai Rubin and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf and all documents, files, e-mails, or electronically stored information of any kind in Your custody and control.

29.   "Sam Feder" means Sam Feder, and his current and former agents, representatives, attorneys, and anyone else acting or purporting to act on his behalf.

30.   "Trust" means the Sara Hollander Irrevocable Life Insurance Trust, and any and all of its current and former trustees, fiduciaries, officers, directors, employees, agents,

representatives, predecessors, successors, attorneys, affiliates and assigns, and any of their officers, directors, employees, agents and representatives.

       31.      "Wrubel" means plaintiff Shirley Wrubel, individually and as Trustee for the Sara Hollander Irrevocable Life Insurance Trust, and in any other capacity, and her current and former agents, representatives, attorneys, and anyone else acting or purporting to act on her behalf.

## DOCUMENTS TO BE PRODUCED

       1.      All documents, files, e-mails, or electronically stored information of any kind concerning the facts and circumstances surrounding the making and negotiation of the check(s) annexed as Exhibit A.

       2.      All files, documents, e-mails, or electronically stored information of any kind maintained by you in any way relating to or concerning the Trust, the LLC, the 073 Policy, the 075 Policy, Ms. Wrubel or the Insured.

       3.      All documents, files, e-mails, or electronically stored information of any kind reflecting or concerning any communications, including but not limited to e-mails, letters and memoranda between or among (1) You, (2) the Insured and/or Jacob Hollander, (3) Wrubel, and/or Erno Wrubel and their children, (4) Goldberger, (5) the Trust (including anyone acting on the Trust's behalf), (6) the LLC, (7) Hanna Ostriker, (8) Freda Weiss, (9) Lola Felderbaum, (10) Halperin, (11) M. Jacobowitz, (12) Sam Feder, (12) Empire, (14) John Hancock, (15) H. Jacobowitz, and (16) any accountant or other third party, concerning the following topics:

          a.     the 073 Policy;

          b.     the 075 Policy;

          c.     the purchase, underwriting or placement of either the 075 or 073 Policies;

d.     any version of any application for either Policy;

e.     payment of premium under the Policy;

f.     effort to purchase any interest in the Policy, convey or assign any interest in the Trust or any share in the LLC;

g.     any loan made to the Trust; and

h.     claims made for death benefits under either Policy.

4.     To the extent not already encompassed by the proceeding requests, all documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempt by any person to purchase life insurance from any source on the life of the Insured.

5.     All documents, files, e-mails, or electronically stored information of any kind reflecting any business or relationship with You and the Trust, the LLC, Wrubel, the Insured Empire, Goldberger or Mordechai Rubin.

6.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any actions taken in connection with making a claim under the 073 Policy or 075 Policy.

7.     Any documents, files, e-mails, or electronically stored information of any kind reflecting or referring to any payments of premium, or financing premiums under the Policy, loan agreements used for payment of premium or source of funds used to pay premiums under the 073 and 075 Policies.

8.     All documents, files, e-mails, or electronically stored information of any kind referring or relating to any attempts to sell the Policy or reflecting any other attempts by a third party to purchase the Policy, the Trust or the shares in the LLC, or claim some portion of the proceeds under the Policy.

9.      All documents, files, e-mails, or electronically stored information of any kind reflecting communication with accountants, brokers or financial advisors of the Insured.

### Schedule B

## TOPICS FOR EXAMINATION

1.   Any life insurance policy on the life of Sara Hollander or interest in such Policy;.

2.   The circumstances surrounding the making and negotiation of the check(s) attached as Exhibit A to this subpoena, including the reasons for the payment, and what if anything was given for the payment;

3.   Your relationship and any communications with the following: Sara Hollander Irrevocable Life Insurance Trust; Joel Goldberger; Herman Jacobowitz; Mordechai Rubin; Hanna Ostriker; Freda Weiss; Lola Felderbaum; Chaim Berkowitz; Mindy Halperin; Mindy Jacobowitz; Sirley Wrubel; or any other person regarding (i) any payments of money for or in connection with any insurance policy on the life of Sara Hollander, or (ii) any payment to the Trust.

## EXHIBIT A

09-Dec-11                                                                    07Dec11-1488

THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION
GROUP ID G07Dec11-1488
Sequence number 009670425466  Posting date 22-JUL-08



JPMC - JH Sub 0093

United States District Court
Eastern District of New York

_____

Shirley Wrubel, as Trustee of
The Sara Hollander Irrevocable
Life Insurance Trust,                    **AFFIDAVIT OF SERVICE**

                        Plaintiff(s)      Civil Action No. 11-cv-01873 (WFK)(LB)

            -against-

John Hancock Life Insurance
Company,

                        Defendant(s)
_____

State of New York )
                   ss:
County of Albany )

Mary M. Bonville, being duly sworn, deposes and says:

Deponent is over the age of eighteen and is a resident of New York State and is not a party to this action. That on January 25, 2012 at approximately 3:40 PM deponent served the following specific papers pursuant to Section 303 of the Limited Liability Company Law: Subpoena in a Civil Case, that the party served was B & M Resort LLC, a domestic limited liability company, by personally serving two copies of the aforesaid papers at the office of the NYS Secretary of State located at 99 Washington Avenue, 6th Floor, in the City of Albany, New York by delivering to and leaving the papers with Chad Matice, a white male with black hair, being approximately 21-35 years of age; height of 5'9" - 6'0", weight of 180-200 lbs., being an authorized person in the Corporation Division of the Department of State and empowered to receive such service. That at the time of making such service, deponent paid the fee prescribed by Law in the amount of $40.00.

                                        _____
                                                Mary M. Bonville

Sworn to before me this 26th day of January, 2012

_____
Ruth A. Dennehey
Notary Public — State of New York
Qualified in Albany County
Registration No. 01DE4729775
Commission Expires: 11-30-2014

**EXHIBIT C**

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK  10178**

(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE: (212) 808-7584
EMAIL: sflanagan@kelleydrye.com

February 10, 2012

**VIA FEDERAL EXPRESS**

B&M Resort LLC
543 Bedford Avenue
Brooklyn, NY 11211

> Re:  *Shirley Wrubel, as trustee of The Sara Hollander Irrevocable Life
> Insurance Trust v. John Hancock Life Insurance Company* Civil Action
> No. 11-cv-01873 (WFK)(LB) Pending in the United States District Court,
> Eastern District of New York

Dear Sir:

We represent the defendant, John Hancock Life Insurance Company in the above-referenced action.  Please be advised that pursuant to the Plaintiff's request, your deposition, currently scheduled for Tuesday, February 14, 2012 at 12:30 pm, has been adjourned to Friday, March 2, 2012 at 10:00 am at our offices located at 101 Park Avenue, New York, New York.

If you have any questions or concerns about the foregoing, please do not hesitate to contact me.

Very truly yours,

Sean R. Flanagan

cc:  David Benhaim, Esq.  (via Electronic Mail)
Attorneys for Plaintiff

## Flanagan Sean

**From:**        trackingupdates@fedex.com
**Sent:**        Monday, February 13, 2012 7:25 AM
**To:**          Flanagan Sean
**Subject:**     FedEx Shipment 798047446341 Delivered

This tracking update has been requested by:

Company Name:      Kelley Drye & Warren
Name:              Sean Flanagan
E-mail:            sflanagan@kelleydrye.com

Our records indicate that the following shipment has been delivered:

Purchase order number:     90080
Reference:                 040638-0053
Ship (P/U) date:           Feb 10, 2012
Delivery date:             Feb 13, 2012 7:20 AM
Sign for by:               Signature not required
Delivery location:         BROOKLYN, NY
Delivered to:              Residence
Service type:              FedEx First Overnight
Packaging type:            FedEx Envelope
Number of pieces:          1
Weight:                    0.50 lb.
Special handling/Services: Deliver Weekday
                           Residential Delivery
Tracking number:           798047446341

Shipper Information              Recipient Information
Sean Flanagan                   B&M Resort LLC
Kelley Drye & Warren            543 BEDFORD AVE
101 Park Avenue                 BROOKLYN
New York                        NY
NY                              US
US                              11211
10178

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 6:25 AM CST on
02/13/2012.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

1

To track the latest status of your shipment, click on the tracking number above, or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

Eastern District of New York - Live Database Version 5.1.1                    Page 1 of 2

## Motions

1:11-cv-01873-WFK-LB Wrubel v. John Hancock Life Insurance Company

### U.S. District Court

### Eastern District of New York

**Notice of Electronic Filing**

The following transaction was entered by Merkl, Neil on 3/2/2012 at 4:08 PM EST and filed on 3/2/2012

**Case Name:**          Wrubel v. John Hancock Life Insurance Company
**Case Number:**        1:11-cv-01873-WFK-LB
**Filer:**              John Hancock Life Insurance Company
**Document Number:** 19

**Docket Text:**
**Letter MOTION to Compel** *the Production of Documents and Deposition Appearance,* **Letter MOTION for Sanctions** *for Failure to Appear for Depositions Under Fed. R. Civ. P. 45(e)* **by John Hancock Life Insurance Company. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C) (Merkl, Neil)**


**1:11-cv-01873-WFK-LB Notice has been electronically mailed to:**

Ira S. Lipsius    ilipsius@lipsiuslaw.com, blevine@lipsiuslaw.com, clipsius@lipsiuslaw.com, dbenhaim@lipsiuslaw.com

James V. O'Gara , III    jogara@kelleydrye.com

Neil Matthew Merkl    Nmerkl@kelleydrye.com, docketing@kelleydrye.com, skim@kelleydrye.com

Sean Richard Flanagan    sflanagan@kelleydrye.com

**1:11-cv-01873-WFK-LB Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=3/2/2012] [FileNumber=6725045-0] [
0e1961fcf58cf1172809ac1a4fc6cd716bd0e826a0730a2dcb424a8bb248e19df51ca5
d46365978ee39db279b961709eabeb929be15d0516aeb9714ba5fbedab]]
**Document description:** Exhibit A
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=3/2/2012] [FileNumber=6725045-1] [
8d302a58da49602faf1863572df0ba7f91f980a82b4e6327401ad5bddf35d622d297ba
7f68b21c58557ff529fb7e81e1d95c886ab1b3427f0ce6aaebaa3883b1]]

# EXHIBIT M

# LB

## LIPSIUS –BENHAIM LAW, LLP

80-02 Kew Gardens Road
Kew Gardens, NY 11415
212.981.8440
Facsimile 888-442-0284
www.lipsiuslaw.com

DAVID BENHAIM
Direct Line: 212-981-8446
Email: dbenhaim@lipsiuslaw.com

March 5, 2012

Honorable Lois Bloom
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   **Wrubel v. John Hancock**
             <u>**Docket No. 11-cv-01873 (WF)(LB)**</u>

Dear Judge Bloom:

      We represent the plaintiff in the above-referenced matter. We write in response to that portion of the letter by counsel for John Hancock dated March 2, 2012 which seeks an order to compel compliance by Herman Jacobowitz to a subpoena served by John Hancock. The letter is misleading when it states, "We have attempted to contact counsel every day this week concerning the scheduling of Mr. Jacobowitz's production of documents and deposition. Counsel, however, has not responded to our requests" in that it suggests that I have been ignoring John Hancock's "attempts" to contact me.

      I have, in fact, spoken to counsel for John Hancock on Monday, February 27, 2012 and advised that Mr. Jacobowitz will not be appearing on March 1, 2012 for his deposition but very much wants to present his testimony at a mutually convenient date and time. In fact, when I met John Hancock's counsel on February 23, 2012, I proposed having Mr. Jacobowitz deposed first. I further emailed counsel on Wednesday, February 29, 2012 and advised counsel that "I will provide you with alternate dates as soon as I have them."

      While I have been unable to reach Mr. Jacobowitz since February 23, 2012 in order to schedule an alternate response date, John Hancock's counsel's suggestion that I have not responded to attempts to contact me is misleading.

                  Very truly yours,

                  LIPSIUS-BENHAIM LAW, LLP

                  David BenHaim

# EXHIBIT N

**Flanagan Sean**

| | |
|---|---|
| **From:** | David Benhaim [dbenhaim@lipsiuslaw.com] |
| **Sent:** | Wednesday, March 07, 2012 10:53 AM |
| **To:** | Flanagan Sean |
| **Subject:** | Wrubel; 4421.0002 |

Sean,

Since Mr. Jacobowitz is not responding to my attempts to reschedule his deposition, I have advised him that I can no longer represent him. I no longer represent Mr. Jacobozwitz.

**David BenHaim, Esq.**
**Lipsius - BenHaim Law LLP**

80-02 Kew Gardens Rd., Suite 1030 | Kew Gardens, NY 11415

Tel: 212.981.8446          | Fax: 212.695.6602

CONFIDENTIALITY NOTICE: The information contained in this e-mail is confidential, may be legally privileged, and is intended only for the use of the party named above. If the reader of this e-mail is not the intended recipient, you are advised that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by telephone at 212.981.8440 and destroy this e-mail.

1

# EXHIBIT O

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

SHIRLEY WRUBEL, *as Trustee for the Sara*
*Hollander Irrevocable Life Insurance Trust,*

                     Plaintiff,                       **ORDER**
                                                          **11 CV 1873 (WFK)(LB)**

        -against-

JOHN HANCOCK LIFE INSURANCE
COMPANY,

                     Defendant.

------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Defendant moves pursuant to Rules 37(a) and 45(e) of the Federal Rules of Civil

Procedure to compel non-parties Rubin, Jacobowitz, and B&M Resort, LLC to produce

documents and to appear for their depositions. (Docket entry 19.) Defendant served Rubin and

B&M Resort, LLC with subpoenas issued from the United States District Court for the Southern

District of New York. (Docket entries 19-1 and 19-2.) The subpoenas commanded Rubin and

B&M Resort, LLC to produce documents and to appear for their depositions at the offices of

Kelley, Drye & Warren LLP in New York, New York.[1] (Id.)

      Under Rule 37(a)(2) of the Federal Rules of Civil Procedure, "[a] motion for an order [to

compel] to a nonparty must be made in the court where the discovery is or will be taken."

Moreover, Rule 45 of the Federal Rules of Civil Procedure provides that a subpoena "for

attendance at a deposition [must issue] from the court for the district where the deposition is to

---

[1] Although defendant states that Jacobowitz was also served with a subpoena to produce documents and appear for a deposition, defendant does not provide a copy of the subpoena. For the purposes of this Order, the Court assumes that the subpoena served on Jacobowitz was also issued by the United States District Court for the Southern District of New York and commanded Jacobowitz to appear for a deposition at the law offices of Kelley, Drye & Warren LLP. Plaintiff's counsel states that he is attempting to reach Jacobowitz to schedule his deposition. (Docket entry 20.)

be taken," and "[t]he *issuing court* may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(a)(2)(B) and (e) (emphasis added). As defendant seeks to compel discovery from non-parties Rubin, Jacobowitz, and B&M Resort, LLC that will be taken in the United States District Court for the Southern District of New York, defendant's motion here is denied without prejudice. To the extent defendant seeks to enforce the non-party subpoenas under Rule 45(e), defendant's motion is denied because this Court did not issue the subpoenas.

SO ORDERED.


_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: March 7, 2012
       Brooklyn, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE          Misc. Case Number: M8-85
TRUST

                    Plaintiff,

            v.

JOHN HANCOCK LIFE INSURANCE
COMPANY

                    Defendant.

**12 MISC 00077**



MEMORANDUM OF LAW IN SUPPORT OF JOHN HANCOCK'S MOTION TO
COMPEL NON-PARTIES HERMAN JACOBOWITZ, MORDECHAI RUBIN,
AND B&M RESORT LLC, TO COMPLY WITH SUBPOENAS DUCES TECUM

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

Neil Merkl
Sean R. Flanagan

*Attorneys for Defendant John
Hancock Life Insurance Company
(U.S.A.)*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

SUMMARY OF ARGUMENT..........................................................................................1

PROCEDURAL HISTORY ...............................................................................................3

   A.    JOHN HANCOCK ISSUES A SUBPOENA TO MR. RUBIN........................5

   B.    JOHN HANCOCK SUBPOENAS B&M RESORT LLC..................................6

   C.    JOHN HANCOCK ISSUES A SUBPOENA TO MR. JACOBOWITZ............................7

ARGUMENT......................................................................................................................8

   I.    THE SUBPOENAED PARTIES SHOULD BE COMPELLED
      TO PRODUCE DOCUMENTS AND APPEAR FOR A DEPOSITION ..........................8

   II.    MR. RUBIN AND B&M RESORT MUST PAY FOR COSTS
      INCURRED BY JOHN HANCOCK AS A RESULT OF THEIR
      FAILURE TO APPEAR FOR THEIR DEPOSITIONS ..................................................10

CONCLUSION ...............................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Application of the Kingdom of Morocco,*
   Misc. Case No. M8-85, 2009 WL 159786 (S.D.N.Y. April 16, 2009)...........................9

*Beruasvili v. Hobart Corp.,* No. CV 2009-1646 (ENV) (MDO),
   2006 WL 228199 (E.D.N.Y. Aug. 8, 2006).................................................. 9

*Concord Boat Corp. v. Brunswick Corp.,*
   169 F.R.D. 44 (S.D.N.Y. 1996)................................................................9

*Degen v. United States,*
   517 U.S. 820 (1999) ...........................................................................9

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ...........................................................................8

*In re Refco Sec. Litig.,*
   759 F.Supp.2d 342 (S.D.N.Y. 2011) .......................................................8

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) ...........................................................................9

*PaineWebber Inc. v. Acstar Ins. Co.,*
   211 F.R.D. 247 (S.D.N.Y. 2002)...........................................................10

*Redvanly v. NYNEX Corp.,*
   152 F.R.D. 460 (S.D.N.Y. 1993)............................................................8

*Securities and Exchange Commission v. Sassano,*
   274 F.R.D. 495 (S.D.N.Y. 2011)............................................................8

*Strougo v. BEA Assocs.,*
   199 F.R.D. 515 (S.D.N.Y. 2001)............................................................8

*Wertheim Schroder & Co. v. Avon Products, Inc.,*
   1995 WL 6259 (S.D.N.Y. 1995) ...........................................................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ....................................................................................................8

Fed. R. Civ. P. 26(b) ...............................................................................................9

Fed. R. Civ. P. 26(b)(1) ..........................................................................................8

Fed. Civ. P. 37(a)....................................................................................................1

Fed. R. Civ. P. 45 ...................................................................................................9

Fed. R. Civ. P. 45(c)(2)(B)......................................................................................1

Fed. R. Civ. P. 45(e)................................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE
TRUST

            Plaintiff,

       v.

JOHN HANCOCK LIFE INSURANCE
COMPANY

            Defendant.

Misc. Case Number: M8-85

## MEMORANDUM OF LAW IN SUPPORT OF JOHN HANCOCK'S MOTION TO COMPEL NON-PARTIES HERMAN JACOBOWITZ, MORDECHAI RUBIN AND B&M RESORT LLC, TO COMPLY WITH SUBPOENAS DUCES TECUM

### PRELIMINARY STATEMENT

Defendant John Hancock Life Insurance Company (U.S.A.), incorrectly identified in the Complaint as John Hancock Life Insurance Company ("John Hancock"), submits this memorandum of law in support of its motion under Rule 37(a), 45(c)(2)(B) and Rule 45(e) of the Federal Rules of Civil Procedure to enforce *subpoenas duces tecums* served upon non-parties Mr. Herman Jacobowitz ("Mr. Jacobowitz"), Mr. Mordechai Rubin ("Mr. Rubin") and B&M Resort LLC ("B&M Resort") (collectively, the "Non-Parties") on January 6, 2012, January 13, 2012 and January 24, 2012, respectively.

### SUMMARY OF ARGUMENT

The documents and depositions at issue in this motion to compel relate to John Hancock's defenses in the above-captioned action, which is currently pending in the United States District Court for the Eastern District of New York. Plaintiff, Shirley Wrubel, as Trustee

of the Sara Hollander Irrevocable Life Insurance Trust (the "Plaintiff"), has sued John Hancock to recover the proceeds of two $5 million life insurance policies (the "Policies") purportedly owned by the Trust which insured the life of the Plaintiff's mother, Sara Hollander (the "Insured").  At the time the Plaintiff and the Insured submitted their applications for the Policies (the "Applications"), the Insured and Plaintiff misrepresented to John Hancock that the Insured had a net worth of $9 million and income from investments totaling $200,000.  John Hancock, in reliance on these statements, among others, issued the Policies in April and May, 2008.  The Insured died in December 2009 – within the two year contestability period provided for in the Policies.

Plaintiff submitted a death claim under the Policies in October 2010.  John Hancock denied the claims on the grounds that the Insured and Plaintiff materially misrepresented, among other things, the Insured's net worth and investment income.  Plaintiff has failed to produce any documents to establish that the Insured's net worth was ever $9 million or that her mother had $200,000 in investment income.  Furthermore, Plaintiff has been unable to: (i) identify the source of the funds used to pay over $500,000 in premiums for the Policies; (ii) identify any assets her mother owned; (iii) explain why her mother established the Trust; or (iv) why her mother applied for $10 million in insurance.  Instead, Plaintiff has referred John Hancock to the Insured's alleged business partner, Mr. Jacobowitz, Plaintiff's son-in-law Mr. Rubin, and to other non-parties that have deposited checks into the Trust's bank account that was used to pay premiums on the Policies.  Accordingly, John Hancock has been required to engage in extensive non-party discovery.

Here, the Non-Parties, as more fully set forth in the accompanying Declaration of Sean R. Flanagan (the "Flanagan Decl.") and the exhibits attached thereto, have been duly served

with *subpoenas duces tecums*. They have, however, failed to object to the subpoenas, failed to produce documents requested in the subpoenas and failed to appear for depositions pursuant to the subpoenas. Indeed, the Non-Parties have been unresponsive to John Hancock's attempts to communicate with them concerning these discovery issues. John Hancock, therefore, seeks an order of this Court compelling non-parties Mr. Jacobowitz, Mr. Rubin and B&M Resort to comply with the *subpoenas duces tecums* served on January 6, 2012, January 13, 2012 and January 24, 2012, respectively, (the "Subpoenas"). (Flanagan Decl., ¶ 1.)

Moreover, Mr. Rubin's and B&M Resort's failure to appear for their depositions, pursuant to their subpoenas, has caused John Hancock to incur fees for court reporters and videographers. Under Fed. R. Civ. P. 45(e), these costs are recoverable for a non-parties' unexcused failure to comply with a subpoena. Accordingly, the Court should grant John Hancock's request to recover these fees from Mr. Rubin and B&M Resort.

As detailed in the Flanagan Declaration, John Hancock's need for this discovery is essential to its defenses and John Hancock has attempted to resolve this discovery dispute with the Non-Parties, but to no avail. (Flanagan Decl., ¶¶ 16, 17, 22, 23, 24 and 26.) John Hancock's motion is warranted given that as of the date of this motion the Non-Parties have not produced a single document. Moreover, Mr. Rubin and B&M Resort have both failed to appear for their deposition which was scheduled pursuant to their respective subpoenas and Mr. Jacobowitz has failed to provide alternative dates in which he will produce documents and appear for a deposition.

## PROCEDURAL HISTORY

On December 10, 2010, Plaintiff brought this action in the New York State Supreme Court, Kings County to recover a $10 million death claim under the Policies.

3

(Flanagan Decl., ¶ 2.)  On April 15, 2011, John Hancock removed this action to the United States District Court for the Eastern District of New York.  This case is currently pending before United States District Judge William F. Kuntz, and discovery is being adjudicated by United States Magistrate Judge Lois Bloom.  (Flanagan Decl., ¶ 2.)

On July 11, 2011, John Hancock filed its answer, affirmative defenses and counterclaims against Plaintiff.  John Hancock's principal defense is that the Insured's and Plaintiff's misrepresentations void the Policies.  (Flanagan Decl., ¶ 4.)  The evidence produced in this action demonstrates that John Hancock issued the Policies in reliance on, among other things, material misrepresentations that the Insured's net worth was $9 million and that she had investment income of $200,000.  (Flanagan Decl., ¶ 5.)  Discovery in this case has also shown that the insured misrepresented that she would pay the premiums for the Policies with money from her income and savings, and that the insurance was purchased as part of her estate plan to pay her estate taxes.  (Flanagan Decl., ¶ 6.)  Evidence produced also demonstrates that the premiums were most likely paid by third party investors who purchased shares in the Policies which was contrary to the representations made in the Applications.  (Flanagan Decl., ¶ 14.)

Plaintiff is the sole trustee and apparent owner of both Policies.  Plaintiff, however, has failed to produce any documents substantiating the Insured's wealth or income. (Flanagan Decl., ¶ 2.)  Plaintiff has also failed to produce any documents concerning the Trust's bank account opened by the Plaintiff which was used to pay premiums.  (Flanagan Decl., ¶ 5.) Plaintiff was deposed on January 11, 2012.  (See, Flanagan Decl., Ex. A.)  During her deposition, she testified that her mother left no estate; Plaintiff knows of no will.  (See, Flanagan Decl., Ex. A at 41-57.)  Her mother was never employed, did not own real property at the time of her death, did not own any stocks, bonds or a 401k plan, and did not have an annual investment income of

4

$200,000 or a net worth of $9 million. (See, Flanagan Decl., Ex. A at 41-57.) Instead, at the time of her death the Insured had less than $25,000 in bank accounts and mutual funds. (See, Flanagan Decl., Ex. A at 58.) The Insured lived in a rental apartment in Brooklyn, likely on social security. (See, Flanagan Decl., Ex. A at 64-65.)

**A.    John Hancock Issues a Subpoena to Mr. Rubin**

The Plaintiff disclaimed knowledge of the source of the funds used to pay the premiums at her deposition – an amount in excess of $500,000. (Flanagan Decl., ¶ 7.) She testified her son-in-law Mr. Rubin would be the person most knowledgeable about the Trust's bank account and how the premiums were paid, including the source of the funds. (Flanagan Decl., ¶ 7.) She testified that she relied on him to handle insurance matters. (Flanagan Decl., ¶ 7.) John Hancock, therefore, subpoenaed Mr. Rubin on January 13, 2012 both for his testimony and to produce documents concerning the facts surrounding the Policies purchased, existence of an estate, the trust account and Ms. Hollander's net worth. (Flanagan Decl., ¶ 8.) On January 27, 2012, the deposition was adjourned to February 28, 2012, because of a stay in the discovery that was requested by Plaintiff's counsel (the "Stay"). Mr. Rubin was personally served with an amended subpoena requiring his appearance on February 28, 2012. (Flanagan Decl., ¶ 11.) He did not produce any documents and did not appear for his deposition, notwithstanding that on February 22, 2012, John Hancock wrote and reminded him of the date. (Flanagan Decl., ¶¶ 11, 13.) Consequently, John Hancock incurred costs for the court reporter and videographer of $400. (Flanagan Decl., ¶ 13.)

Mr. Rubin has not responded to subsequent attempts to contact him. John Hancock is advised Plaintiff's counsel also attempted to contact Mr. Rubin by telephone, but John Hancock is not aware of the substance of the conversation.

5

**B.**    <u>John Hancock Subpoenas B&M Resort LLC</u>

John Hancock also subpoenaed the Trust's bank account records from JPMorgan Chase Bank, N.A. ("JPMC").  (Flanagan Decl., ¶ 14.)  JPMC produced copies of cancelled checks deposited into the Trust account from various individuals and corporations, among them B&M Resort.  (Flanagan Decl., ¶ 14.)  None of these individuals or corporations have any apparent connection to the Plaintiff or the Insured, but these funds were the sole source of the premium payments.  (Flanagan Decl., ¶ 14.)  These cancelled checks, moreover, suggest that the Trust fronted for a syndicate of investors and these policies were investor or "stranger owned life insurance policies" ("STOLI" policies).  (Flanagan Decl., ¶ 14.)  Had John Hancock known this, this would have been an additional reason it would not have issued the Policies.

Accordingly, John Hancock has attempted to identify these third party investors to take their depositions.  On January 24, 2012, John Hancock issued a subpoena to non-party B&M Resort, seeking the production of documents and a deposition on February 14, 2012.  (Flanagan Decl., ¶ 15.)  On February 10, 2012, John Hancock received a call from B&M Resort concerning the subpoena that was issued.  (Flanagan Decl., ¶ 16.)  During this call, B&M Resort was informed that there was a Stay in this action, pursuant to Plaintiff's counsel's request.  (Flanagan Decl., ¶ 16.)  Therefore, the February 14, 2012, deposition would need to be adjourned.  The parties agreed that B&M Resort's deposition would be scheduled for March 2, 2012, at 10 am.  During this conversation, B&M Resort admitted that the check attached to the subpoena was a valid check and that it was signed by the owner of the company.  (Flanagan Decl., ¶ 16.)  He did not recall why the check was issued but believed that it might have been part of a "syndicate."  (Flanagan Decl., ¶ 16.)  He agreed to look for documents and produce anything that he had related to the Policies.  (Flanagan Decl., ¶ 16.)  B&M Resort, failed to

6

produce any documents.  (Flanagan Decl., ¶ 17.)  This February 10, 2012, conversation was
confirmed in a letter to B&M Resort, dated February 10, 2012.

Since this discussion, B&M Resort has been unresponsive to any attempt to
contact them.  (Flanagan Decl., ¶ 26.)  B&M Resort has failed to produce any documents in
response to the subpoena.  (Flanagan Decl., ¶ 17.)  On March 2, 2012, B&M Resort failed to
appear for the scheduled deposition.  As a result, John Hancock incurred fees for the court
reporter totaling $200.  (Flanagan Decl., ¶ 17.)

**C.**     **John Hancock Issues a Subpoena to Mr. Jacobowitz**

Plaintiff, in her initial disclosures and her deposition, identified Mr. Jacobowitz as
someone with knowledge of the Insured's business interests and how the policy premiums were
paid for.  Accordingly, John Hancock subpoenaed Mr. Jacobowitz on January 6, 2012, through
his counsel, David Benhaim (the "Jacobowitz Subpoena"), who also represents the Plaintiff.
(See, Flanagan Decl. Exs. I and J.)  Mr. Benhaim began gathering documents in anticipation of
their production in response to the Jacobowitz Subpoena.  (See, Flanagan Decl. Ex. J.)  The
original date for Mr. Jacobowitz to produce documents and appear for a deposition was
adjourned to February 27, 2012, to March 1, 2012, as a consequence of the Stay.  (Flanagan
Decl., ¶ 21.)  No objections were served in response to the *subpoena duces tecum*, and no
documents have been produced.

On February 23, 2012, Plaintiff's counsel, who also represents Mr. Jacobowitz,
advised John Hancock that Mr. Jacobowitz would not appear at the scheduled March 1, 2012
deposition.  (Flanagan Decl., ¶ 22.)  Mr. Benhaim said that he would provide John Hancock with
alternative dates for Mr. Jacobowitz's deposition and production of documents.  (Flanagan Decl.,
¶ 22.)  After attempting to obtain an alternative date from Mr. Jacobowitz's counsel for over a

7

week, John Hancock wrote a letter to Magistrate Bloom on March 2, 2012, requesting assistance

in obtaining non-party discovery.  (Flanagan Decl., ¶ 22.)

On March 5, 2012, Mr. Benhaim responded to John Hancock's letter by stating

that he has been unable to get in touch with Mr. Jacobowitz, but will offer alternative dates when

he is able to talk to his client.  (Flanagan Decl., ¶ 23.)  Two days later, on March 7, 2012, Mr.

Benhaim informed John Hancock that he was unable to contact Mr. Jacobowitz and is therefore,

no longer representing him.  (Flanagan Decl., ¶ 24.)

## ARGUMENT

**I.    THE SUBPOENAED PARTIES WERE DULY SERVED AND
       SHOULD BE COMPELLED TO PRODUCE DOCUMENTS AND
       APPEAR FOR A DEPOSITION**

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery

of any matter, not privileged, that is relevant to the subject matter of the litigation.  Fed. R. Civ.

P. 26(b)(1).  It is well settled that the rules pertaining to depositions and discovery are to be

liberally construed.  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Redvanly v. NYNEX Corp.*,

152 F.R.D. 460, 464 (S.D.N.Y. 1993) (favoring liberal disclosure in our system of justice).  "In

federal actions, discovery should be broad, and all relevant materials which are reasonably

calculated to lead to the discovery of admissible evidence should be discoverable."  *Strougo v.*

*BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (internal quotations and citations omitted).

It is well settled that "discovery should not simply be denied on the ground that

the person or entity from whom it is sought is not a party to the action."  *Wertheim Schroder &*

*Co. v. Avon Products, Inc.*, 1995 WL 6259, *6 (S.D.N.Y. 1995).  Rather, subpoenas issued to a

non-party, under Rule 45, are subject to the same broad standards that also govern Rule 26(b)(1).

*Securities and Exchange Commission v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011)(citing,

*In re Refco Sec. Litig.*, 759 F.Supp.2d 342, 345 (S.D.N.Y. 2011).  When considering the

8

relevancy of documents for discovery purposes, any document that is or may become an issue in the litigation is relevant. *See Degen v. United States*, 517 U.S. 820, 825 (1999); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Here, while the Non-Parties are not parties to this litigation, given their knowledge of the Insured's net worth and investments and their role in obtaining the Policies and paying the premiums, there can be no doubt that they have documents and information which are relevant to this case. This information would include, *inter alia*, communications with the Plaintiff and the Insured concerning the applications, the Insured's net worth, her investments, the payment of premiums and whether there was an agreement between investors to obtain shares in the Policies. All of which the Plaintiff has claimed that she has no knowledge of. Thus, the documents that the Non-Parties have in their possession that are responsive to the Subpoenas and the information obtained from them through their deposition testimony would be directly relevant and essential to John Hancock's defenses in this action.

Moreover, when a non-party is duly served with a subpoena, pursuant to Fed. R. Civ. P. 45, "it operates as enforceable mandates of the court on whose behalf they serve." *Application of the Kingdom of Morocco*, Misc. Case No. M8-85, 2009 WL 1059786, *2 n. 2 (S.D.N.Y. April 16, 2009)(citing, *Beruashvili v. Hobart Corp.*, No. CV 2009-1646 (ENV)(MDO) 2006 WL 2289199, *1 (E.D.N.Y. Aug. 8, 2006)). Here, the Non-Parties were duly served with subpoenas issued out of this Court. None of the Non-Parties have complied with the Subpoenas. Accordingly, this Court should compel the Non-Parties to produce documents that are responsive to the document requests and appear for a deposition.

Furthermore, the burden of proof rests on the party contesting relevancy to show that a requested document is not relevant. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)(citations omitted); *see also* Fed. R. Civ. P. 26(b). Here, the Non-Parties

9

have made no effort to object to the document requests or the depositions. Instead they have failed to produce a single document, or even attempt to communicate with John Hancock concerning their production of documents. Moreover, the Non-Parties have failed to either appear for their deposition or request an alternative date. (Flanagan Aff., ¶¶ 13, 17 and 22.) Thus, the Court should compel the Non-Parties to produce documents responsive to the requests and appear for a deposition.

## II.   MR. RUBIN AND B&M RESORT MUST PAY FOR COSTS INCURRED BY JOHN HANCOCK AS A RESULT OF THEIR FAILURE TO APPEAR FOR THEIR DEPOSITIONS

Under Rule 45 of the Federal Rules of Civil Procedure, "an issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(e). A non-party's disobedience, without adequate excuse, and its failure to comply with a subpoena are grounds for a Court to grant sanctions. *PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (failure to appear for a deposition as required by subpoena punished as contempt). Here, Mr. Rubin and B&M Resort have failed to appear for their depositions, pursuant to a duly served subpoena. Moreover, Mr. Rubin and B&M Resort have failed to set forth any excuse as to why they failed to appear for their depositions. John Hancock's counsel was available to take their depositions and, as a result of Mr. Rubin's and B&M Resort's failure to appear, John Hancock incurred costs of $600 for the court reporter's and videographer's time.

Accordingly, Mr. Rubin and B&M Resorts should be required to pay John Hancock the reasonable costs of their depositions.

10

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant the instant motion and issue an Order compelling non-parties Mr. Jacobowitz, Mr. Rubin and B&M Resort to comply with and respond to the Subpoenas within 10 days from the date of this Court's Order and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York.
      March 8, 2012

KELLEY DRYE & WARREN LLP

By:_____
    Neil Merkl
     Sean R. Flanagan
  101 Park Avenue
  New York, NY 10178
  (212) 808-7800
  (212) 808-7897

*Attorneys for John Hancock Life Insurance (U.S.A.)*

11