## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

SHIRLEY WRUBEL, AS TRUSTEE OF
THE SARA HOLLANDER
IRREVOCABLE LIFE INSURANCE
TRUST,

        Plaintiff and
        Counterclaim-Defendant,

    v.

JOHN HANCOCK LIFE INSURANCE
COMPANY,

        Defendant and
        Counterclaim-Plaintiff.

CIVIL ACTION NO: 11-cv-01873 (WFK) (LB)

**DEFENDANT JOHN HANCOCK LIFE
INSURANCE COMPANY'S SECOND
AMENDED ANSWER AND AMENDED
AFFIRMATIVE DEFENSES AND
<u>COUNTERCLAIMS</u>**

Defendant and Counterclaim-Plaintiff John Hancock Life Insurance Company

(U.S.A.), incorrectly identified in the Complaint as John Hancock Life Insurance Company, by

its attorneys, Kelley Drye & Warren LLP, hereby answers Plaintiff's Complaint and alleges as

follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1 of the Complaint.

2.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 2 of the Complaint.

3.      Denies the allegations contained in Paragraph 3 of the Complaint except admits

that the former John Hancock Life Insurance Company, a Massachusetts insurance company,

now operates as John Hancock Life Insurance Company (U.S.A.), a Michigan insurance

company with its principal place of business in Boston, Massachusetts.

4.      Denies the allegations contained in Paragraph 4 of the Complaint except admits that John Hancock issued life insurance policy, number 93 745 073 (the "073 Policy") insuring the life of Sara Hollander.

5.      Denies the allegations contained in Paragraph 5 of the Complaint except admits that John Hancock issued life insurance policy, number 94 051 075 (the "075 Policy") insuring the life of Sara Hollander.

6.      Denies the allegations contained in Paragraph 6 of the Complaint, except admits that the 073 Policy was a policy with a face amount of $5 million insuring the life of Sara Hollander and that the 075 Policy was a policy with a face amount of $5 million insuring the life of Sara Hollander.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8.      Denies the allegations contained in Paragraph 8 of the Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint.

10.      Denies the allegations contained in Paragraph 10 of the Complaint, except admits that the Trustee submitted a Statement of Claim for Death Benefit on or about November 2, 2010 (the "Death Benefit Claim").

11.      Denies the allegations contained in Paragraph 11 of the Complaint, except admits that it is still investigating Plaintiff's Death Benefit Claim and Plaintiff has failed to fully cooperate with John Hancock's investigation concerning the insured's medical history and certain representations made by the insured in her applications for the Policies.

12.      Admits the allegations contained in Paragraph 12 of the Complaint, and asserts

that the insured died within two-years of the issuance of the Policies and the Plaintiff's claim is, therefore, within the Policies' contestability period. Accordingly, John Hancock, pursuant to the Policies, has a right to investigate the Death Benefit Claim. Additionally, Plaintiff, pursuant to the Policies, is obligated to cooperate with John Hancock's investigation. To date, John Hancock is still investigating the Death Benefit Claim and Plaintiff has refused to fully cooperate by not agreeing to return medical release forms and refusing to be interviewed by John Hancock's investigator.

13. Denies the allegations contained in Paragraph 13 of the Complaint.

14. Denies the allegations contained in Paragraph 14 of the Complaint.

15. Denies the allegations contained in Paragraph 15 of the Complaint.

16. Denies Plaintiff is entitled to any of the damages set forth in the "Wherefore" clause of the Complaint.

## AFFIRMATIVE DEFENSES

### THE FIRST AFFIRMATIVE DEFENSE

17. The Complaint fails to state a claim upon which relief can be granted.

### THE SECOND AFFIRMATIVE DEFENSE

18. Plaintiff's action is barred for failure to comply with the conditions of the Policy, to wit, cooperating with John Hancock in providing medical and financial information concerning the insured.

### THE THIRD AFFIRMATIVE DEFENSE

19. Plaintiff's action is barred for failing to meet a condition precedent.

### THE FOURTH AFFIRMATIVE DEFENSE

20. Plaintiff's injuries, if any, are the result of Plaintiff's own culpable conduct.

## THE FIFTH AFFIRMATIVE DEFENSE

21.     The Policies are illegal gambling contracts issued without valid insurable interest (unbeknownst to John Hancock) and are void *ab initio* as a matter of public policy.

## THE FIFTH, SIXTH , SEVENTH AND EIGHT AFFIRMATIVE DEFENSE AND COUNTERCLAIMS

22.     Defendant/Counterclaim-Plaintiff John Hancock Life Insurance Company (U.S.A.) ("John Hancock"), by and through its undersigned counsel, as and for its counterclaims (the "Counterclaims") against Plaintiff/Counterclaim-Defendant Shirley Wrubel ("Plaintiff"), as Trustee of the Sara Hollander Irrevocable Life Insurance Trust (the "Trust"), alleges as follows:

## NATURE OF ACTION

1.     This is an action for declaratory relief and/or rescission of two life insurance policies issued by John Hancock to the Trust, Policy No's. 93 745 073 and 94 051 075 (the "Policies"). The Policies insured Sara Hollander's ("Ms. Hollander") life and named the Trust as owner and beneficiary.  The Policies were issued in reliance on material misrepresentations and fraudulent conduct.  Ms. Hollander's fraudulent misrepresentation of her income on the application for life insurance induced John Hancock to issue life insurance Policies that it never would have issued had it known Ms. Hollander's true income and net worth.  In the Life Insurance Applications, signed and dated February 12, 2008 and May 7, 2008 (the "Applications"), Ms. Hollander represented her annual personal income as $200,000 and her net worth to be $9,000,000.  However, upon investigation, John Hancock has learned that Ms. Hollander's annual personal income and her net worth was less than $50,000 – less than 1 percent of what she represented to John Hancock.  Had Ms. Hollander accurately represented her income and net worth to John Hancock, John Hancock would have never issued either of the two Policies.

4

2.      In addition, after commencement of this action John Hancock learned in discovery that Plaintiff and Ms. Hollander made additional material fraudulent misrepresentations in the applications for the Policies and during the underwriting process. They represented in the applications that the Plaintiff and Ms. Hollander were purchasing the Policies for estate planning purposes, and would be paying the premiums from Ms. Hollander's income and savings; they also represented that the premiums would not be financed, and that no third parties would receive any interest in the Policies. These statements were material, and also were false. In fact, there was, and is no estate planning for Ms. Hollander and the premiums were paid with money collected from third parties who, on information and belief, had no insurable interest in the life of Ms. Hollander, and, in some cases, were given as yet undisclosed interests in the Policies. The Policies would not have been issued if these facts had not been misrepresented, and the true facts disclosed.

### THE PARTIES

3.      John Hancock is a life insurance company organized under the laws of the state of Michigan and maintains a principal place of business in the state of Massachusetts. John Hancock is a citizen of the states of Michigan and Massachusetts within the meaning and intent of 28 U.S.C. § 1332.

4.      Plaintiff is a resident of Brooklyn, New York within the meaning and intent of 28 U.S.C. § 1332.

### JURISDICTION AND VENUE

5.      This action is brought as a declaratory judgment pursuant to 28 U.S.C. § 2201.

6.      John Hancock is a citizen of the states of Michigan and Massachusetts.

7.     The Trustee is a citizen of the state of New York and is subject to the jurisdiction and venue of this Court.

8.     The situs of the Trust is the state of New Jersey.  The Policies were both issued by John Hancock to the Trustee who represented that they were solicited and delivered in the state of New Jersey and state they are to be governed in accordance with the laws of the State of New Jersey.

9.     Plaintiff and Defendant are citizens of different states and, as is more fully set out below, the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees, and costs.  Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

10.    This Court is a proper venue for this declaratory judgment action pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to this claim occurrence in this judicial district.

11.    John Hancock seeks declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## FACTUAL BACKGROUND

A.     **The Policies' Applications**

12.    John Hancock is, and during all relevant times has been, engaged in the business of selling life insurance, and is licensed to sell life insurance in New Jersey.

13.    Plaintiff is the daughter of Ms. Hollander and is a resident of Brooklyn, New York.  Plaintiff as Trustee of the Trust is the owner of the Policies for the Trust.

14.   Ms. Hollander was insured under each of two $5 million John Hancock Policies for a total of $10 million.  The Applications for the respective Policies represented that this amount was for "estate planning" in response to application question 13(a) submitted for each of the Policies.

1.   **The Application for Policy No. 93 745 073**

15.   On or about February 12, 2008, Ms. Hollander applied for a life insurance policy with John Hancock to insure her life by submitting a written Application (the "February Application"); the February Application states it was signed by Ms. Hollander and Plaintiff in Clifton, New Jersey on February 12, 2008, and gave the address of the Trust as 8 Oak Street, Clifton, New Jersey.  (A Copy of the February Application is attached hereto as Exhibit A)

16.   In the February Application, Ms. Hollander, as the proposed insured, and Plaintiff, as the Trustee of the Trust created by the insured, declared "that the statements and answers in this application and any form that is made part of this application are complete and true to the best of [their] knowledge and [they] believe that they are correctly recorded."

17.   In response to Question 5, which asks "Is there, or will there be an understanding or agreement providing for a party other than the Owner . . . to obtain any right, title, or other legal or beneficial in any policy issued on the life of the Proposed Life Insured as a result of the Application", Ms. Hollander and Plaintiff answered "No".

18.   In response to Question 6(a) Ms. Hollander and Plaintiff stated the "source of funding for the policies applied for" was "income and savings".

19.   In response to Question 6(b), "Will the Owner, now or in the future, be paying premiums funded by an individual and/or entity other than the proposed Life Insured. . .," Ms. Hollander and Plaintiff answered "No".

20.     Had Question 6(b) been answered "Yes", Ms. Hollander and Ms. Wrubel would have been required to answer Question 7 which requested details on how the premium would be financed.  The question was not answered.

21.     In response to Question 13(d) and (e) of the February Application, Ms. Hollander represented that she had a personal income of $200,000 and a net worth of $9 million.

22.     On February 12, 2008, Ms. Wrubel and Ms. Hollander executed a Trust Certification which provided the situs of the Trust was New Jersey and represented:

> Beneficial interests under the Trust can and will only be established for persons who (i) are related to the Proposed Life Insured by blood or by law, (ii) have a substantial interest in the Proposed Life Insured engendered by love and affection, or (iii) hold a lawful and substantial economic interest in the continued life of the Proposed Life Insured.

23.     In executing the February Application and Trust Certification, Ms. Hollander and Plaintiff knew that they were required to provide truthful, accurate and honest answers to the questions present on the insurance applications.

24.     During the underwriting process, Ms. Hollander's accountant/lawyer submitted a memorandum to John Hancock explaining that the trust structure employed by Ms. Hollander was part of a "common estate planning technique" to ensure the availability of funds to pay estate tax and reduce the risk of contentiousness among family members.

25.     In executing the February Application and Trust Certification, Ms. Hollander and Plaintiff knew and intended that John Hancock would rely upon all the answers recorded on the insurance application and referenced documents in determining whether Ms. Hollander was insurable and otherwise qualified for the policy of life insurance applied for.  All representations in the February Applications and the Trust Certification, and accompanying

documents were material and were made for the purpose of inducing John Hancock to issue the 073 Policy.

26.     The handwritten February Application was re-typed by John Hancock because the agent who signed the February Application was not an authorized John Hancock representative in New Jersey at the time the February Application was signed, and to correct the birth date of Ms. Hollander, and change the response to question (3a), "the Sara Hollander Irrevocable Trust" to "Shirley Wrubel, Trustee of the Sara Hollander Irrevocable Trust, dated February 11, 2008". This re-typed application was delivered to Ms. Hollander and Plaintiff and signed and executed by them on receipt of the 073 Policy on May 7 as a precondition to its taking effect (the "May Application"). (A Copy of the retyped May Application is attached hereto as Exhibit B.)

27.     Based upon the Plaintiff's and Ms. Hollander's representations in the Trust Certification, and the February and May Applications, John Hancock agreed to issue Policy number 93 745 073, which stated its issue date was April 16, 2008. (A Copy of the 073 Policy as delivered to Plaintiff is attached hereto as Exhibit C.)

**2.     The Application for Policy No. 94 051 075**

28.     On or about May 7, 2008, Ms. Hollander and Plaintiff applied for a second life insurance policy with John Hancock to insure her life using the May Application. The May Application which represents that it was signed by Ms. Hollander and Ms. Wrubel in Clifton, New Jersey on May 7, 2008, was used by Ms. Hollander and Ms. Wrubel as their Application for the 075 Policy, effectively repeating the representations described in paragraphs 15 – 27, above, made in the prior application. A signed copy is attached to the 075 Policy. (A Copy of the 075 Policy as delivered to Plaintiff is attached hereto as Exhibit D.)

29.     In the May Application, Ms. Hollander, as the proposed insured, and Plaintiff as the Trustee and the proposed owner, declared "that the statements and answers in this application and any form that is made part of this application are complete and true to the best of [their] knowledge and [they] believe that they are correctly recorded."

30.     At that time they executed the May Application, Ms. Hollander and Plaintiff knew that they were required to provide truthful, accurate and honest answers to the questions present on the insurance applications.

31.     In executing the May Application, Ms. Hollander and Plaintiff knew and intended that John Hancock would rely upon all the answers recorded on the insurance applications and referenced documents in determining whether Ms. Hollander was insurable and otherwise qualified for the policy of life insurance applied for.  All representations in the May Application and Trust Certification, and accompanying documents were material and were made for the purpose of inducing John Hancock to issue the 075 Policy.

32.     Based upon Hollander's representations in the May Application and Trust Certification, John Hancock agreed to issue Policy number 94 051 075 as of May 15, 2008. (See, Exhibit D)

### 3.     Plaintiff Represents The Policies Are Delivered in New Jersey

33.     On April 14, 2008 Plaintiff executed a "Verification for New York State Residents," which provided:

> By these signatures, the undersigned attest and confirm that the answers to the above questions are true and that the solicitation, negotiation, including the applicant's signature on the application for the life insurance or annuity contract being applied for, took place outside the State of New York; and acknowledge that any issued policy or contract will be delivered outside the State of New York.  Completion of this form notwithstanding, the Company will not issue a life insurance policy or annuity contract to a New York

resident unless the Agent is able to convincingly demonstrate that his/her action in this case do not constitute "doing an insurance business" in New York.

34.     On May 7 Plaintiff executed a contract receipt for the 073 Policy confirming that the Policy was delivered to her in Clifton, New Jersey.

35.     On May 20 Plaintiff executed a contract receipt for the 075 Policy confirming that the Policy was delivered to her at Clifton, New Jersey.

**B.     Plaintiff Has Failed to Cooperate Pursuant to the Policies**

36.     The Policies, when issued, contained "Incontestability" provisions which stated, in part:  "This policy shall be incontestable after it has been in force during the lifetime of the Life Insured for two Policy Years from the Issue Date, except for policy termination, or any provision for reinstatement or policy change requiring evidence of insurability."  See, Exhibits C and D at § 22.

37.     The "Life Insured," under the Polices, was defined as Sara Hollander.  See, Exhibits C and D at 1.

38.     A "Policy Year," pursuant to the Policies, was determined from the Policy Date which "is the date from which charges for the first Monthly Deduction are calculated."  See, Exhibits C and D at § 3.

39.     The "Issue Date" was defined in the Policies as "the date shown in the Policy Specifications of this policy from which the Suicide and Incontestability provisions are applied."  See, Exhibits C and D at § 3.

40.     Policy number 93 745 073 was delivered May 7, 2008 and lists its issue date as April 16, 2008.  Policy number 93 051 075 lists its issue date as May 15, 2008 and was delivered on May 20, 2008.  See, Exhibits C and D at § 1.

41.     Accordingly, the contestability periods under the Policies were to expire on April 16, 2010 and May 15, 2010, respectively.

42.     Upon information and belief, Ms. Hollander died on December 13, 2009, within the two-year contestability periods under the Policies.

43.     On or about November 2, 2010, Plaintiff submitted a claim for benefits for each of the Policies.

44.     As a result of Ms. Hollander's death within the contestability period, John Hancock has a right to investigate the circumstances of Ms. Hollander's death, and the representations she and Plaintiff made on the Applications.

45.     Plaintiff, in turn, has a duty under the issuance of the Policies and common law to act in good faith and to cooperate with John Hancock's investigation.

46.     On or about November 18, 2010, John Hancock requested an interview with Plaintiff.  Plaintiff refused to be interviewed by John Hancock.

**C.     Ms. Hollander and Plaintiff Misrepresented Insured's Net Worth**

47.     The February Application and the May Application (the "Applications"), along with the Policies, provide for a two year contestable period, which gives John Hancock the right to review the information given by Ms. Hollander and Plaintiff at the time of the application if a loss occurs within the first two years of the Policies from the date of issue or reinstatement.  Ms. Hollander died on December 13, 2009 – within the first two years of the Policies issuance.

48.     During John Hancock's investigation, John Hancock learned that Plaintiff and Ms. Hollander misrepresented the Insured's income and net worth in the Applications.

49.     Pursuant to John Hancock's underwriting policy, had it known of Ms. Hollander's true income and net worth, it would not have issued the Policies.

**D.    Ms. Hollander and Plaintiff Misrepresented the Purpose And Source of Funding for the Policies And Failed to Disclose Third Party Interest**

50.     During discovery in this Action, Plaintiff testified that Ms. Hollander did not have an estate plan or will, that there were no plans to marshall assets, that there never were plans to create an estate, and that after her death, Plaintiff searched Ms. Hollander's belongings and found no evidence that she had net assets in excess of $25,000.

51.     Accordingly, the representation that the Policies were purchased for "estate planning" purposes was not true when made.  There is no estate.  There never was an estate plan.

52.     Upon information and belief, the sources of all premium payments made under the Policies were from third party investors, and Ms. Hollander never had the wherewithal or intention of making the premium payments described in the Policies and Illustrations from her savings and income as represented in the Applications for the Policies.

53.     From May 17, 2008 through November 23, 2009, during the term of the Policies, the Trust paid $316,104.00 towards the 073 Policy and $319,689.83 of premiums towards the 075 Policy.

54.     All of the premiums for both Policies, upon information and belief, were paid from the Trust's bank account at JPMorgan Chase Bank, N.A. ("JPMC") number 851387209 (the "Trust's Account").

55.     Pursuant to JPMC's records, checks totaling $563,624.57 were deposited into the Trust's Account by the following third-party investors and other(s) as yet unknown between May 2008 and November 2009:

      (a)     Azras Yisorel, Inc.;
      (b)     B & M Resort LLC;
      (c)     Boro Park Chasudim Rabim, Bnei Levi;
      (d)     Boyoner Gemalis Chesed;
      (e)     Classon NY Inc.;
      (f)     Congregation Ahavas Shulem Dnadverne;
      (g)     Congregation A.Y.;
      (h)     Congregation Kipas Halvuah;
      (i)     Congregation YL South 8;
      (j)     G.M.H.;
      (k)     Gemach Sarah Perl Inc.;
      (l)     Granite Equity Holdings Corp.;
      (m)     Hershel and Esther Brach;
      (n)     Kipas H., Protector Security Inc.;
      (o)     Source One Trading Inc.;
      (p)     T.V.O.K.;
      (q)     Yeshiva Ohel Shaim Inc.; and
      (r)     Kern Eizer

(collectively (a)-(r) referred to herein as the "Investors").

56.     JPMC's records show that the same month in which Investors deposited funds into the Trust's Account, the Trust would issue a check from the Trust's Account to John Hancock for the same amount of money deposited by the Investors.

57.     Upon information and belief, the Investors did not have any insurable interest in Ms. Hollander and made the payments as part of an as yet unknown scheme to obtain undisclosed interests in the Policies.

**E.     The Misrepresentations Were Material**

58.     John Hancock does not knowingly issue Policies unless the policy amount is supported by the financial criteria set forth in its underwriting guidelines, which require a reasonable relationship between the value of the policy and the loss at death of the life insured.

59.     John Hancock does not knowingly issue policies that are financed by loans, unless the loans are fully disclosed to John Hancock and fall within John Hancock's approved underwriting standards.

60.     Although the Policies permit policy owners to assign a legitimately procured life insurance policy, John Hancock does not knowingly issue policies for the purpose of transferring them, directly or indirectly, to an investor at the time of purchase.

61.     John Hancock does not knowingly issue policies that are not supported by an insurable interest.

62.     While John Hancock permits its policies to be issued to lawfully created trusts that perform legitimate tax or other distributive functions within a lawful estate plan, it does not sell policies to trusts that are used to conceal the ownership or other interests of third parties that do not have an insurable interest in the life of the insured.  For that reason, John Hancock reviews the trust documents during the underwriting process and requires execution of the trust certification, as it did here.

63.     Had the questions to Questions 5, 6, 7 and 13 been answered truthfully, John Hancock would not have issued the Policies.  Nor would the Policies have been issued if the Trust Certification or New York Residency Certification had not been executed and submitted.

64.     Had John Hancock known that there was no estate plan and that the Policies were not being purchased for legitimate estate planning purposes, the Policies would not have been issued.

**AS TO THE FIFTH AFFIRMATIVE DEFENSE AND FIRST
COUNTERCLAIM DECLARATORY RELIEF/RESCISSION
OF POLICY DUE TO MATERIAL MISREPRESENTATIONS
CONCERNING HOLLANDER'S FINANCIAL CONDITION**

65.     John Hancock repeats and realleges the allegations in paragraphs 1 through 64, as if fully set forth herein.

66.     Ms. Hollander and Plaintiff made material misrepresentations concerning the Insured's financial condition in the Applications, the purpose of the insurance and how she was going to pay the premiums.  These misrepresentations were material to the acceptance of the risk and the hazard assumed by John Hancock.

67.     John Hancock would not in good faith have issued the Policies if Ms. Hollander's true financial condition had been known.

68.     As a result of these material misrepresentations, the Policies are void *ab initio* and should be rescinded.

69.     Accordingly, John Hancock is entitled to a declaratory judgment that the Policies are null and void *ab initio*, that John Hancock has no obligation to pay benefits under the Policies, and that the Policies are rescinded.

**AS TO THE SIXTH AFFIRMATIVE DEFENSE AND SECOND
COUNTERCLAIM RESCISSION OF POLICY DUE TO FRAUDULENT INDUCEMENT**

70.     John Hancock repeats and realleges the allegations in paragraphs 1 through 69, as if fully set forth herein.

71.     John Hancock was fraudulently induced to enter into the Policies through material misrepresentations and omissions.  Specifically, John Hancock was fraudulently induced to believe that Hollander had a personal income and assets as represented in the responses to Question 13(d) and (e) of the Applications, when, in fact, she did not.

72.     Upon learning that it had been fraudulently induced to enter into the insurance contract at issue, John Hancock has promptly taken action to rescind the transaction via the filing of this action.

73.     Accordingly, John Hancock is entitled to a declaratory judgment that the Policies did not take effect due to fraudulent inducement and that the Policies be rescinded and/or are void *ab initio* as a result of the fraudulent inducement.

## AS TO THE SEVENTH AFFIRMATIVE DEFENSE AND THIRD COUNTERCLAIM RESCISSION OF POLICY AS A RESULT OF MISREPRESENTATION

74.     John Hancock repeats and realleges the allegations in paragraph 1 through 73, as if fully set forth herein.

75.     Plaintiff and Ms. Hollander made material misrepresentations in the Applications and other materials they submitted to John Hancock, including but not limited to her responses to questions 5, 6, 7 and 13.

76.     Plaintiff and Ms. Hollander made false statements that each of the policies were purchased for "estate planning purposes" in an amount "based on her assets" when in fact there was no estate plan, no will and Ms. Hollander did not have sufficient assets to make necessary any estate planning or that otherwise could have supported issuing two $5 million Policies under John Hancock's underwriting standards.

77.     Plaintiff and Ms. Hollander falsely represented that they would pay the premiums from Ms. Hollander's income and savings, and that the premiums would not be funded by anyone other than Ms. Hollander.

78.     On information and belief, none of the premiums for the Policies were paid by Ms. Hollander from her income and savings; nor could they have been because she did

not have the income or savings sufficient to pay the premiums. All the premiums were paid for with funds from third party investors.

79.     Plaintiff and Ms. Hollander misrepresented that none of the premiums would be paid using a loan.

80.     Plaintiff misrepresented that there was not and would not be any understanding or agreement providing for a party besides the Trust to obtain an interest in the Policies.

81.     On information and belief, the Policies were purchased with the undisclosed intention that their benefits would be shared with third party investors.

82.     John Hancock would not have issued the Policies but for the written representation that the Policies were solicited, negotiated and delivered to a bona fide New Jersey Trust.

83.     Each of the statements and misrepresentations described in paragraphs 15 to 35 was material in and of itself and also in combination with the others insofar as each materially affected acceptance of the risk by John Hancock and the decision by John Hancock to issue the Policies. Had any of these questions been answered truthfully and the required information disclosed, John Hancock would not have issued either Policy.

84.     Accordingly, John Hancock is entitled to a declaratory judgment that the Policies are null and void ab initio, that John Hancock has no obligation to pay benefits under the Policies, and/or that the Policies are rescinded.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE
AND FOURTH COUNTERCLAIM -FRAUD**

85.     John Hancock repeats and realleges the allegations in paragraphs 1 through 83, as if fully set forth herein.

86.     Plaintiff and Ms. Hollander made the false statements alleged above knowing they were false and did so deliberately in concert with others with the intent that John Hancock would rely on them to issue the Policies.

87.     Plaintiff and Ms. Hollander knew that they were required to provide truthful information to John Hancock.

88.     The representations above were all material, each by itself and in combination with the others.  Had any or all of these questions been answered truthfully the Policies would not have been issued.

89.     John Hancock has been deceived by Plaintiff's fraud and will and has incurred damages as a result of Plaintiff and Ms. Hollander's wrongful conduct, including costs and expense associated with issuance of the Policies.

90.     John Hancock seeks declaration that the Policies are void *ab initio*, or, that they be rescinded by reason of Plaintiff's fraud.

## AS AND FOR A FIFTH COUNTERCLAIM FOR DECLARATORY RELIEF AND DAMAGES

91.     John Hancock repeats and realleges the allegations in paragraphs 1 through 89, as if fully set forth herein.

92.     On information and belief, Plaintiff did not pay any of the premiums for either of the Policies; the premiums were paid by third party investors who had no legitimate insurable interest in the life of Ms. Hollander as part of a fraudulent scheme described in paragraphs 50 to 57, above.

93.     By virtue of the foregoing and fraud in the procurement of the Policy, John Hancock should be granted a declaration that it need not return any of the premiums collected for either policy or, alternatively, is entitled to any damages incurred from the fraud or

violation of law in an amount to be determined at trial as an offset to any amount of premiums to be returned.

94.     John Hancock is prepared to pay to the Court the amount of premiums collected, should the Court so direct, until the Court rules on the foregoing.

## AS AND FOR A SIXTH COUNTERCLAIM
## UNDER THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT

95.     John Hancock repeats and realleges the allegations in paragraphs 1 through 93, as if fully set forth herein.

96.     Plaintiff and Ms. Hollander presented false and misleading statements regarding Plaintiff's financial condition, purpose and source of funding for the policy in Plaintiff's Insurance Applications.

97.     On information and belief, Plaintiff and Ms. Hollander's wrongful conduct as described above and in the Fraud Counterclaims, also constituted violations of the New Jersey Insurance Fraud Prevention Act entitling John Hancock to relief under the Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Hancock respectfully requests judgment:

(a)     Dismissing the Complaint on the merits;

(b)     Declaring that the Policies were never effective and are not effective, and are null and void *ab initio* and are of no force and effect, and that John Hancock owes no obligations under the Policies.

(b)     Declaring that Plaintiff and her successors in interest have not, do not, and will not have any valid right or interest of claim to any benefit under or from the Policies.

(c)     Determining and declaring what amount of premiums John Hancock is entitled to return.

(d)     Ordering the Policies be rescinded, and are and have been null and

void *ab initio*, and that John Hancock has no obligation to pay benefits or otherwise render any performance under the Policies.

(e)    Awarding damages occasioned by the wrongful acts of Plaintiff in an amount to be determined at trial.

Dated: New York, New York
      April 10, 2012

KELLEY DRYE & WARREN LLP

By:   */s/ Neil Merkl*

Neil Merkl
James V. O'Gara
Sean R. Flanagan
101 Park Avenue
New York, New York 10178
(212) 808-7800

*Attorneys for Defendant*
*John Hancock Life Insurance*
*Company (U.S.A.)*