**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897

www.kelleydrye.com

NEIL MERKL

DIRECT LINE: (212) 808-7584

EMAIL: sflanagan@kelleydrye.com

April 26, 2012

**VIA ECF**

Magistrate Judge Lois Bloom
United States District Court for the
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life Insurance Trust v. John Hancock Life Insurance Company*, Docket No. 11-cv-01873 (WFK)(LB)

Dear Magistrate Judge Bloom:

      This firm represents the Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock"). We are writing Pursuant to Local Rule 37.3(c) to respectfully request an order to compel the production of documents from Axcessa LLC ("Axcessa") and the production of documents and deposition appearance by Mr. Joel Wertzberger ("Mr. Wertzberger") pursuant to FRCP 45.

**Background**

      This action was brought by Plaintiff, Shirley Wrubel, as Trustee (the "Plaintiff") of her mother Sara Hollander's Irrevocable Life Insurance Trust (the "Trust"), to recover $10 million in proceeds from two life insurance policies issued by John Hancock on Ms. Hollander's life (the "Policies"). John Hancock's principal defense is that Plaintiff and Ms. Hollander misrepresented that Ms. Hollander was worth $9 million at the time the applications for the Policies (the "Applications") were submitted.

      Although Plaintiff and Ms. Hollander represented in the Applications that the policies were purchased for estate planning, Plaintiff testified on January 11 that there is no estate for Ms. Hollander, no will, and no plan to marshall her mother's assets. Ms. Hollander was never employed, did not own real property, did not own any stocks, bonds or a 401k plan, and did not have an annual income of $200,000. At the time of her death the Insured had less than $25,000 in bank accounts and mutual funds. She lived in a rental apartment in Brooklyn, likely on social security. No bank records have been produced, notwithstanding, Plaintiff testified she collected her mother's bank records (from Dime and Chase) from her mother's home after her death. Plaintiff also has not produced any checks or check books or any documents reflecting accounts concerning securities, retirement, investments, bank accounts, bonds or real estate. No such documents have been produced by any non-party.

**KELLEY DRYE & WARREN** LLP

The Magistrate Judge Lois Bloom
March 2, 2012
Page Two

      Evidence produced by non-party JPMorgan Chase ("JPMC"), where the Plaintiff maintained the Trust's bank account used to pay premiums, shows that the Trust was funded by checks from seventeen (17) various individuals and corporations. These cancelled checks produced by JPMC suggest that the Trust fronted for a syndicate of investors and these policies were investor or "stranger owned life insurance policies" ("STOLI" policies). On March 9 and 22, 2012, John Hancock deposed Mr. Joel Goldberger, the broker who sold the Policies. Mr. Goldberger testified that he assisted the Plaintiff's son-in-law, Mr. Mordechai Rubin, with arranging and finding investors to fund premiums (the "Investors"). On April 19th, Mr. Kastner, from Protector Security Inc., testified that there were five (5) partners, in fact, who purchased the second policy as an investment pursuant to which each would get 20% of the profit made from the sale of the policy or 20% of the benefit if Ms. Hollander died.

      Mr. Goldberger testified that after Ms. Hollander died in December 2009, some of the Investors asked for their investment to be returned because she died within the two-year contestability period and they did not want to be involved in a litigation. Mr. Goldberger testified that Mr. Wertzberger, through his company Axcessa, bought some of these investors' shares in the Policies. Mr. Goldberger produced checks from Axcessa totaling approximately $85,000 made out to Mr. Goldberger to purchase these shares. John Hancock understands that Axcessa is a life-settlement company licensed by the State of New York and, as such, is required to keep documentation concerning its purchase of life insurance policies. John Hancock, therefore, subpoenaed Axcessa on March 16, 2012, to produce documents concerning its purchase of shares in the Policies (the "Axcessa Subpoena"). A copy of the Axcessa Subpoena is attached hereto as Exhibit A. Pursuant to the Axcessa Subpoena, Axcessa was required to produce documents on April 2, 2012, to John Hancock at an office in Brooklyn, New York. Mr. Wertzberger, as the principal owner of Axcessa was personally served with the Axcessa Subpoena.

    (i)   **<u>Order Directing Axcessa to Produce Documents</u>**

      Axcessa did not object to the Axcessa Subpoena has not contacted John Hancock and has failed to produce any documents. John Hancock has been unable to communicate with Axcessa. We therefore respectfully request an order compelling Axcessa to produce documents responsive to the requests contained in the Axcessa Subpoena.

    (ii)   **<u>Order Directing Mr. Wertzberger to Produce Documents
and Appear For a Deposition</u>**

      Mr. Goldberger, during his deposition, testified that Mr. Rubin arranged for Mr. Wertzberger to buy certain investors out of their shares of the Policies. Mr. Goldberger further testified that Mr. Wertzberger paid Mr. Rubin $100,000 and the funds were to be used to pay the investors who wanted out of the Policies. On March 16, 2012, John Hancock subpoenaed Mr. Wertzberger (the "Wertzberger Subpoena"). A copy of the Wertzberger Subpoena is attached hereto as Exhibit B. The Wertzberger Subpoena was personally served on Mr. Wertzberger and required him to produce documents to John Hancock on April 2, 2012 and to appear for a deposition on April 5, 2012 in Brooklyn, New York. Mr. Wertzberger did not file any objection to the Wertzberger Subpoena has not contacted John Hancock and failed to produce documents on April 2. Mr. Wertzberger's April 5th deposition was adjourned in order for the parties to

**KELLEY DRYE & WARREN LLP**

The Magistrate Judge Lois Bloom
March 2, 2012
Page Three

attend a Court Ordered Conference before Judge Kuntz. A copy of the letter sent to Mr. Wertzberger is attached hereto as Exhibit C. In the letter adjourning his deposition, we requested that Mr. Wertzberger contact us with alternative dates for his deposition and requested that he produce documents. Mr. Wertzberger did not respond to our letter. Accordingly, on April 10, 2012, we attempted to re-serve a subpoena on Mr. Wertzberger. Our attempts, however, were unsuccessful. On April 13, 2012, we re-issued the subpoena requiring Mr. Wertzberger to attend a deposition in Brooklyn on May 1. A copy of the re-issued subpoena is attached as Exhibit D.

Given the fact that Mr. Wertzberger has not produced documents, we have adjourned his deposition in order to obtain the requested documents prior to his deposition. John Hancock has been engaged in extensive non-party discovery and, in so doing, has had to obtain an order compelling three non-parties to appear for a deposition and has had to taken deposition testimony of Plaintiff, Mr. Goldberger and B&M Resort LLC without all of their documents being produced requiring us to reserve our right to re-call these witnesses to continue their depositions after we have obtained all of their documents.

Accordingly, John Hancock respectfully requests that this Court issue an Order compelling Axcessa and Mr. Wertzberger to produce documents responsive to the Axcessa Subpoena and Wertzberger Subpoena to the office located at 32 Court Street, Suite 808, Brooklyn, New York within 5 days of this Court's Order and compel Mr. Wertzberger to appear for a deposition at 32 Court Street, Suite 808, Brooklyn, New York within 10 days from the date of this Court's Order.

(i) **Update on Discovery**

To date, John Hancock has taken seven depositions and is scheduled to take the deposition of Mr. Rubin and an investor, Bnei Levi, during the week of April 30, 2012. After these depositions, John Hancock will seek the deposition of: (i) Plaintiff's three sisters concerning issues related to the Insured's net worth; (ii) the continued deposition of Plaintiff concerning, among other things, the JPMC documents produced after her deposition; and (iii) the continued deposition of Mr. Goldberger concerning, among other things, inconsistencies in his testimony with other testimony from depositions taken after his deposition. In addition, John Hancock is in the process of obtaining bank records for other investors, Ms. Hollander's bank records from Dime Savings Bank and Ms. Hollander's tax records from the Internal Revenue Service.

Respectfully submitted,

/s/ *Sean R. Flanagan*

Sean R. Flanagan

cc: David BenHaim, Esq. (via ECF)
Mr. Wertzberger (via Federal Express w/ encl.)
Axcessa LLC (via Federal Express w/ encl.)