**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

DIRECT LINE: (212) 808-7811

EMAIL: nmerkl@kelleydrye.com

August 15, 2012

**VIA ECF**

Judge William F. Kuntz, II
United States District Court for the
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

> Re:  *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life Insurance Trust v. John Hancock Life Insurance Company*, Docket No. 11-cv-01873 (WFK)(LB)

Dear Judge Kuntz:

This firm represents Defendant John Hancock Life Insurance Company (U.S.A.).  We request a pre-motion conference to seek leave to file a motion for summary judgment dismissing the complaint and for judgment on John Hancock's counterclaims.

Plaintiff Shirley Wrubel is Trustee of her mother Sara Hollander's Irrevocable Life Insurance Trust, which owns two $5 million life insurance policies issued by John Hancock on her mother's life.  After Ms. Hollander died in December 2009, Plaintiff commenced this action to recover the $10 million under the policies.  John Hancock has counterclaimed seeking rescission of the policies as void based on the Plaintiff and her mother's material misrepresentations in the policy applications.

**Facts**

On or about February 12, 2008, Ms. Hollander and Plaintiff submitted a signed application for life insurance on Ms. Hollander's life.  They represented it was for "estate planning;" that Ms. Hollander had annual income of $200,000 and net worth of $9 million; the premiums would be paid from Ms. Hollander's income and savings; and that no one but the trust would have right, title, or a beneficial interest in the policy.  None of that was true.

In reliance on these statements, John Hancock underwriter Michael Rowe approved the $5 million policy in April; his contemporaneous notes show he requested confirmation that the insured's net worth was $9 million as the application stated. John Hancock also independently verified these statements through an outside vendor who conducted a telephone interview with Ms. Hollander.  Pursuant to John Hancock's financial underwriting guidelines, one of the first things an underwriter must do is determine that there is a reasonable relationship between the amount of life insurance applied for and the financial loss caused by the death of the insured.  This is done to minimize what is known as anti-selection risk and moral hazard.  John Hancock

**KELLEY DRYE & WARREN** LLP

Judge William F. Kuntz, II
August 15, 2012
Page Two

does not knowingly issue policies for which there is no legitimate personal need, and that could leave a person worth significantly more dead than alive. John Hancock's financial underwriting guidelines, therefore, provide a formula for an underwriter to use to estimate how much insurance may be purchased based on the insured's net worth. While the formula would allow a $5 million policy on a 77 year old with a $9 million net worth, it would not allow one for a 77 year old with less than $3 million.

After underwriting approval, John Hancock re-typed the application and delivered it to the Plaintiff with the policy. The re-typed application again confirmed the financial representations, and was again signed by Plaintiff and Ms. Hollander on May 7, 2008. *See Allianz Life Ins. Co. of America v. Estate of Bleich*, No. 08–668, 2012 WL 714686, at * 9 (D.N.J. Mar. 5, 2012).[1]

On or about May 7, 2008, Ms. Hollander and Plaintiff applied for a second $5 million policy using the same re-typed application, which they had just signed. Mr. Rowe's underwriting notes confirm the guidelines formula was applied to her stated net worth of $9 million. The written calculation in the underwriting notes show that the underwriters made the computation under the formula, and that an additional $5 million in insurance would be allowed. Another outside vendor confirmed the financial representations through Ms. Hollander's accountant by conducting an "inspection report and third party verification." Accordingly, on May 15, 2008, John Hancock issued the second $5 million policy for a total of $10 million.

Ms. Hollander died within the two-year contestability period. After 10 months, Plaintiff submitted her claim. Since the insured died within the contestability period, John Hancock began an investigation, but Plaintiff brought this action before the investigation was completed.

## John Hancock Is Entitled to Summary Judgment

Discovery has since established Ms. Hollander did not have a $9 million net worth. Plaintiff now admits this. When Ms. Hollander died, she left no estate; was never employed; and owned no real property, stocks or bonds. She lived in a rental apartment. Her Dime Savings Accounts had $9,036.02, and shows only social security income. Plaintiff produced no records of any tax returns or investments, except for two mutual funds shared with her husband in the amount of $19,841.53. Bank records confirm Ms. Hollander did not pay any of the premiums for either policy. The money came from 18 different third-party investors. The first policy appears to have been paid by a real estate investor who now claims to have owed Ms Hollander money from a real estate venture, although Plaintiff testified she knows nothing about this. The second policy was paid for by an investment syndicate put together by Plaintiff's son-in-law, and whose members had no relationship to Plaintiff or her mother. Plaintiff, notwithstanding she is the Trustee who opened the trust account and signed all the premium checks, testified she knew nothing about where the premium money came from.

---

[1] Although the Plaintiff lives in New York, the policies are governed by New Jersey law. John Hancock, however, will demonstrate entitlement to rescission under both New York and New Jersey law. Under New Jersey law, moreover, John Hancock also may recover attorneys fees. *See* N.J.S.A. 17:33A–C (2012). This claim will also be resolved on summary judgment.

**KELLEY DRYE & WARREN LLP**

Judge William F. Kuntz, II
August 15, 2012
Page Three

      Rescission should be ordered where an insured makes a material misrepresentation in its application to the insurer. *See Ehrlich v. Berkshire Life Ins. Co.*, No. 00-cv-9233 (DLC), 2002 WL 368444, at *11-12 (S.D.N.Y. March 7, 2002); *Remsden v. Dependable Ins. Co.*, 71 N.J. 587, 589, 367 A.2d 421, 423 (1976); *Booker v. Blackburn*, 942 F. Supp. 1005, 1008-09 (D.N.J. 1996). Courts in this Circuit have granted insurers' motions for summary judgment in these cases. *See Mut. Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32-33 (2d Cir. 1988); *John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 2d 229, 239 (E.D.N.Y. 2008); *New England Life Ins. Co. v. Taverna*, No. 00-cv-2400, 2002 WL 718755, at *6-7 (E.D.N.Y. March 1, 2002); *Ehrlich*, 2002 WL 368444, at *11; *Friedman v. Prudential Life Ins. Co.*, 589 F. Supp. 1017, 1027-28 (S.D.N.Y. 1984); *accord Am. Gen. Life Ins. Co. v. Garcia*, No. 07-3179, 2009 WL 2905372, at * 4 (D.N.J. Sept. 10, 2009); *Mitchell v. Banner Life Ins. Co.*, No. 08-5984, 2011 WL 5878378, at *5 (D.N.J. Nov. 22, 2011); *Gluck v. Executive Risk Indemnity Inc.*, 680 F. Supp. 2d 406, 415 (E.D.N.Y. 2010). While the evidence of actual fraud in the applications is overwhelming, the insured's intent is irrelevant for purposes of rescission. All John Hancock must show is that the statement that she had a $9 million net worth was false and that the statement was material. *Friedman*, 589 F. Supp. at 1022.

      A misrepresentation is material, as a matter of law, if it " . . . influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." *TIG Ins. Co. v. Privilege Care Mktg., Inc.*, No. 03-03747, 2005 WL 994581, at *5 (D.N.J. Apr. 27, 2005). Here, the misrepresentations were material. John Hancock's underwriters testified that John Hancock would not have issued any policy had they known that Ms. Hollander was not worth $9 million; this is confirmed by documentary evidence in the form of the underwriting notes and guidelines which show that the underwriters took the stated $9 million into account when they approved the policy.

      Plaintiff has argued that John Hancock cannot seek to rescind the Policies because there were a number of so-called "red flags" that should have caused John Hancock to seek more information concerning Ms. Hollander's net worth. Plaintiff's "red flag" argument is meritless because, as a matter of law, John Hancock was entitled to rely on the plain statements made and signed by Plaintiff and Ms. Hollander in the application. John Hancock was under no obligation to investigate "red flags." *Ehrlich*, 2002 WL 368444, at *11; *Friedman*, 589 F. Supp. at 1024-26. Moreover, these so-called "red flags" never alerted John Hancock that Plaintiff was lying in the application nor that her mother did not have $9 million.

      Plaintiff also has retained a lawyer who they seek to qualify as an expert to testify that the case could have been underwritten differently, and John Hancock could have done a better job in detecting Plaintiff's fraud. This is not evidence, but legal argument couched as expert opinion that is directly contradicted by the law in New York and New Jersey. Similar expert opinions have been rejected on summary judgment. *See Ehrlich*, 2002 WL 368444, at *11. Plaintiff's putative expert is also wrong on the facts. John Hancock followed its underwriting guidelines and procedures and Plaintiff is unable to show any contradictory information that should have put John Hancock on notice of Plaintiff and her mother's lies.

**KELLEY DRYE & WARREN LLP**

Judge William F. Kuntz, II
August 15, 2012
Page Four

   Finally, since summary judgment is the procedural equivalent of trial, John Hancock will deposit the premiums paid with the court when the motion is briefed.  *Prudential Ins. Co. of Am. v. Dukoff*, 674 F. Supp 2d. 401, 412-13 (E.D.N.Y. 2009).

                Respectfully submitted,

                */s/ Neil Merkl*

                Neil Merkl

cc:  Ira Lipsius, Esq. (via ECF)
    David BenHaim, Esq. (via ECF)
    Magistrate Judge Lois Bloom (via ECF)