**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

DIRECT LINE: (212) 808-7811

EMAIL: nmerkl@kelleydrye.com

August 22, 2012

**VIA ECF**

Judge William F. Kuntz, II
United States District Court for the
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: *Shirley Wrubel, as Trustee of the Sara Hollander Irrevocable Life Insurance Trust v. John Hancock Life Insurance Company*, Docket No. 11-cv-01873 (WFK)(LB)

Dear Judge Kuntz:

We represent Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock"). We write in response to Plaintiff's letter, dated August 15, 2012 [Dkt. No. 49], seeking leave to move for partial summary judgment: (i) awarding it $5 million damages on the 073 Policy claim and (ii) dismissing John Hancock's Second and Fifth Affirmative Defenses. We address the issues in the order raised.

### **Conflict of Laws**

If there is no conflict, the Court applies the law of the forum state. *See Bell v. S. Bay European Corp.*, No. 06 Civ. 472 (PKC)(GWG), 2008 WL 4298542, at *2 (S.D.N.Y. Sept. 12, 2008), *aff'd* 378 Fed. App'x 47 (2d Cir. 2010). Here, the New York and New Jersey law concerning material misrepresentations in an application for a life insurance policy is essentially the same. *Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 09–03361(FLW), 2010 WL 3283550, at *6 (D.N.J. Aug. 18, 2010). Conflicts rulings should be issue by issue. *Gimbel v. Feldman*, No. 93–4761, 1996 WL 342006, at *4 (E.D.N.Y. June 17, 1996). When there is a conflict, this Court applies New York conflict rules in a diversity case. *See Bell*, 2008 WL 4298542, at *2.

Plaintiff's argument that New York law applies across the board because the Insured was domiciled in New York is wrong; there is no such blanket rule. New York applies a "grouping of contacts" analysis in contract cases by weighing different contacts including, "the place of contracting, the place of negotiation and performance, the location of the subject matter, and the domicile or place of business of contracting parties." *2004 Stuart Moldaw Trust v. XE L.I.F.E. LLC*, 642 F. Supp. 2d 226, 236 (S.D.N.Y. 2009), *aff'd* 374 F. App'x 78 (2d Cir. 2010). New York courts apply the "grouping of contacts" analysis to claims concerning rescission of insurance policies. *Brenner v. Hartford Life Ins. Co.*, 49 A.D.3d 296, 297, 853 N.Y.S.2d 57, 60 (1st Dep't 2008). Consistent with the grouping of contacts approach, New York gives effect to

**KELLEY DRYE & WARREN LLP**

Judge William F. Kuntz, II                                                                                              Page Two
August 15, 2012

choice of law provisions in insurance contracts when the designated state law is reasonably related to the transaction. In *Reger v. National Association of Bedding Manufacturers Insurance Trust Fund*, 83 Misc. 2d 527, 543 (Sup. Ct. Westchester County 1975) and *2004 Stuart Moldaw Trust* 642 F. Supp. 2d at 236, both relied on by Plaintiff, the Courts applied the state law designated in the policy. Here, the policies both state that New Jersey is the governing law. New Jersey law is reasonably related to the Policy. John Hancock is a Michigan company with its principal place of business in Massachusetts; it is licensed to sell insurance in New Jersey, but not New York. As a consequence it required Plaintiff to execute a Verification for New York State Residents in which plaintiff represented the applications were solicited, negotiated and executed in New Jersey. The Trust is a New Jersey Trust with its address at 8 Oak Street, Clifton, New Jersey. All correspondence was sent to the Trust in New Jersey. Plaintiff also signed two Contract Receipts that state that the policies were delivered in New Jersey.

### Insurable Interest

As discussed in John Hancock's August 15 letter [Dkt. No. 48], the policies should be rescinded based on the material misrepresentations contained in the applications.

The absence of any insurable interest is another independent reason for the policies to be rescinded or declared void. Under New Jersey law, insurance policies procured without insurable interest are considered gambling contracts and are void *ab initio* as a matter of public policy. *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3283550, at *8. This is the majority common law rule. *See Grigsby v. Russell*, 222 U.S. 149, 156-57 (1911). The policies state New Jersey is the governing law; the policies were issued under a New Jersey license, based on Plaintiff's representation it was a New Jersey transaction. New Jersey law, therefore, should control this issue, and the defense allowed under New Jersey law.

Under New York law, the defense is also available although the legal basis is different. Life insurance policies procured with no insurable interest also are against New York public policy, but insurers can only seek to rescind on that basis if the policy is challenged within the statutory two-year contestability period. *See New England Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74, 538 N.Y.S.2d 217, 535 N.E.2d 270 (1989). Here, John Hancock is within the two year period.

Plaintiff argues that under *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539, 940 N.E.2d 535, 914 N.Y.S.2d 709 (2010), an insurable interest exists as a matter of law under N.Y. Insurance Law Section 3205(b)(1) because Ms. Hollander "was fully involved in the procurement of the policy." In *Kramer*, the Court held that Section 3205(b)(1) did not bar insureds from taking out policies on their own lives and then assigning them to persons without insurable interest. Issues related to the assignment of policies does not attend the current matter. *Kramer* does not apply here because *Kramer* does not address fraudulent misrepresentations concerning the existence insurable interest discovered within the contestability period. *Cf. Kramer*, 15 N.Y.3d at 559, n.3. John Hancock's internal underwriting guidelines require the existence of an insurable interest before it will issue a life insurance policy independent of any statutory requirement. John Hancock does not knowingly sell gambling contracts. Plaintiff and Ms. Hollander lied on the application in this regard by representing that the policies were to be for "estate planning;" and the premiums would be paid from her "income and savings;" that no one other than Plaintiff or Ms. Wrubel would pay the premiums; and that no party other than the

**KELLEY DRYE & WARREN LLP**

Judge William F. Kuntz, II  Page Three
August 15, 2012

"owner" (the Plaintiff) would obtain any "right, title or other legal or beneficial interest" in the Policies. These statements were false. There was no estate to protect, and Ms. Hollander did not pay the premiums. The premiums were paid by third parties, one of whom testified there was a partnership agreement – since destroyed – wherein upon its issuance the ownership of the 075 Policy was to be shared among five investors. Had the misrepresentation made in the application not prevented John Hancock from learning about this unlawful arrangement John Hancock would not have issued the policy because it is not supported by the requisite insurable interest.

### Failure to Cooperate

Plaintiff refused to cooperate by refusing to provide releases to obtain the Insured's medical records, among other things. This information was obtained in discovery. John Hancock, therefore, will withdraw this affirmative defense, but should be permitted to offer evidence of Plaintiff's non-cooperation to the extent it is relevant to other defenses.

### Misrepresentation In The 073 Policy Application

Plaintiff seeks summary judgment for $5 million on the 073 Policy. Plaintiff argues John Hancock may not rely on admittedly false statements made in the Application to rescind the Policy because the application attached to the policy is unsigned. The argument is meritless under both New York and New Jersey law. Under the insurance statutes in New York and New Jersey, the applications attached to the policy must be "true copies" or "copies." N.Y. Ins. Law § 3204(a)(2); N.J.S.A. § 17B:24-3(a). Neither statute requires that the copy of application physically attached to the policy be signed. *See Smith v. Pruco Life Ins. of N.J.*, No. 10-cv-01483 (LDW)(ARL), 2012 WL 2804831, at *3 (E.D.N.Y. July 5, 2012); *Allianz Life Ins. Co. of Am. v. Estate of Bleich*, No. 08–668 (SDW)(MCA), 2012 WL 714686, at *9 (D.N.J. Mar. 5, 2012).

The facts are not in dispute. The Insured and Plaintiff, submitted an executed handwritten application, dated February 7, 2008. During the underwriting process, John Hancock retyped the 073 Policy application to accurately reflect the Insured's correct birth date, the name of the Trustee, and broker's license number. The 073 Policy was delivered to Plaintiff with an unsigned version of the typewritten application attached; a separate copy of the typewritten application identical to the one attached was delivered with a requirement that the Insured and Plaintiff sign and return the separate application copy to John Hancock. This was a condition precedent to the 073 Policy going into effect. *See Schmitt v. N. Am. Co. for Life and Health Ins. of N.Y.*, 30 A.D.3d 1007, 817 N.Y.S.2d 462 (4th Dep't 2006). Plaintiff testified she and her mother signed the typewritten application; the fully executed typewritten application was received by John Hancock on or about May 12, 2008.

Plaintiff's cases are inapposite. In *Minsker v. John Hancock Mutual Life Insurance Co.*, 254 N.Y. 333, 338, 173 N.E. 4 (1930), the signed application was attached to the policy and the Court held that "All applications, statements and agreements, if they are to have effect…must be physically indorsed thereon *or* attached [to the policy], so that the insured…may know all of its terms by reading or having it read." *Id*. (emphasis added). When John Hancock delivered the 073 Policy the unsigned typewritten application was attached to the policy. In *Tannenbaum v. Provident Mut. Life Ins. Co. of Philadelphia*, 53 A.D. 86, 105, 386 N.Y.S.2d 409 (1st Dep't. 1976), the Court held that the insured could not rely a supplemental statement that was not attached to the policy. *Id*. In *Zachary Trading Inc. v. Northwestern Mut. Life Ins. Co.*, 668 F.

**KELLEY DRYE & WARREN LLP**

Judge William F. Kuntz, II                                                                                          Page Four
August 15, 2012

Supp. 343, 346 (S.D.N.Y. 1987) the Court found that, "the insured has the duty to examine the policy application and correct any incorrect or incomplete answers"; the insured's failure to correct the misrepresentations entitled the insurer to rescission. *Id.* at 346-47.

                                                Respectfully submitted,

                                                */s/ Neil Merkl*

                                                Neil Merkl

cc:     Ira Lipsius, Esq. (via ECF)
          David BenHaim, Esq. (via ECF)
          Magistrate Judge Lois Bloom (via ECF)